| DISTRICT COURT, CITY AND COUNTY OF DENVER, STATE OF COLORADO<br>Court Address:  1437 Bannock Street<br>Denver, CO 80202 | |
|---|---|
| Plaintiff:  DNC and TCPA List Sanitizer, LLC d/b/a TCPA Litigator List,<br><br>v.<br><br><br>Defendants: Gary Tucker, Esq., GLegal, LLC, Jeffrey Cohen, Esq., Cohen Law, LLC and Christopher Yost, Esq. | ▲   **COURT USE ONLY**   ▲ |
| *Attorney for Plaintiff*:<br><br>John A. Cimino #14032<br>Cimino Law Office, LLC<br>5500 East Yale Ave., #201A<br>Denver, CO 80222<br>Phone:  720 434 0434<br>Fax:  NONE<br>Email:  JC925Ave@yahoo.com | Case No.:<br><br><br>Div: |
| PLAINTIFF'S COMPLAINT FOR DAMAGES WITH REQUEST FOR A JURY TRIAL | |

COMES NOW, Plaintiff, DNC and TCPA List Sanitizer, LLC d/b/a TCPA Litigator List, by and through its counsel, John A. Cimino of Cimino Law Office, LLC and for its Complaint against Gary Tucker, Esq., Jeffrey Cohen, Esq., and Christopher Yost, Esq. respectfully states and alleges as follows:

## I.    PARTIES

1.    Plaintiff, DNC and TCPA List Sanitizer, LLC d/b/a TCPA Litigator List is a Colorado limited liability company owned by Michael O'Hare and Tatiana O'Hare with its principal place of business at 985 Pico Point Colorado Springs, CO 80905.  At all times relevant to this complaint, Plaintiff was a Colorado entity authorized to do business in this state.

1

2. Michael O'Hare is one of the owners of plaintiff and its member and authorized agent. He resides in Colorado Springs, Colorado (hereinafter "owner" or "owners").

3. Tatiana O'Hare is one of the owners of plaintiff, its member and authorized representative. She is also the wife of Michael O'Hare (hereinafter "owner" or "owners").

4. Gary Tucker, Esq., is an individual and an attorney licensed to practice law in the State of Colorado, with a principal place of business located at 6957 West River Trail, Marana, Arizona 85658.

5. Defendant Tucker is the sole owner of his law firm GLegal, LLC.

6. Defendant GLegal, LLC is a Colorado limited liability company doing business in the state of Colorado.

7. At all times mentioned herein defendant Tucker was acting as Plaintiff's attorney.

8. Defendant Jeffrey Cohen, Esq., is an individual and an attorney licensed to practice law in the State of Colorado, with a principal place of business at 1600 Broadway, Suite 1660, Denver, Colorado 80202.

9. Defendant Cohen is the sole owner of his law firm known as Cohen, LLC.

10. Defendant Cohen, LLC is a Colorado limited liability company doing business in the state of Colorado.

11. At all times mentioned herein defendant Cohen was acting as Plaintiff's attorney.

12. Christopher Yost, is an individual and an attorney licensed to practice law in the State of Colorado and is currently employed at Adams and Reese, 11990 Grant Street, Suite 550, Northglenn, Colorado 80233.

13. At all times mentioned herein defendant Yost was acting as Plaintiff's attorney.

14.     Upon and belief, Christopher Yost, Esq., is an independent contractor and not an employee of the law firm Cohen, LLC.

15.     Mr. Yost represented Plaintiff in the matters at issue in this complaint.

## II.     JURISDICTION AND VENUE PARTIES

16.     This Court has jurisdiction over the subject matter of this action pursuant to Colorado Revised Statutes (C.R.S.) § 13-1-124, which grants Colorado district courts general jurisdiction over civil actions. Furthermore, this action involves claims of legal malpractice and other claims arising under the laws of the State of Colorado, thereby invoking this Court jurisdiction.

17.     This Court has personal jurisdiction over each defendant because each defendant is either a resident of Colorado or has engaged in professional activities within the State of Colorado giving rise to the Plaintiff's claims.

18.     Specifically, Defendants' Gary Tucker, Esq., Jeffrey Cohen, Esq., and Christopher Yost, Esq., are attorneys licensed to practice in the State of Colorado, with principal places of business in Denver County, Colorado.

19.     Venue is proper in the City and County of Denver, Colorado, under C.R.S. § 13-16-102 and C.R.S. § 13-16-104, because one or more of the Defendants conducts business in the City and County of Denver, State of Colorado.

## III.     FACTUAL ALLEGATIONS

20.     Mr. Tucker was retained by Plaintiff on May 20, 2021 to represent it in a breach of terms of service contract and breach of a non-disclosure agreement claims to be brought against various defendants including Adam Young and others parties.

21.     The fee agreement between plaintiff and defendant Tucker is attached as Exhibit 1.

3

22.     Plaintiff paid defendant Tucker approximately $56,000 in attorney fees.

23.     On October 13, 2021, defendant Tucker filed a complaint on behalf of Plaintiff styled "TCPA Litigator List, LLC v. Adam Young, et. al." which was assigned case number 2021 CV 31668 in El Paso District Court, State of Colorado (hereinafter "El Paso district court matter" or "underlying litigation").

24.     A true and accurate copy of the complaint is attached as Exhibit 2.

25.     The complaint contained several typographical errors.

26.     The complaint signed and filed by Defendant Tucker alleged that "Young somehow downloads the list in violation of the TCPA Litigator List terms and conditions by exploiting a glitch in the program" on April 5, 2020.

27.     This allegation that the purchasers downloaded the list by exploiting a glitch in the program was the basis for the claims asserted in the complaint drafted and filed by Defendant Tucker.

28.     The complaint did not clearly specify that Plaintiff had two primary claims against the parties in the underlying matter.

29.     The first claim was that one or more of the parties in the underlying litigation (hereinafter "purchasers") breached the "terms of service" agreement they executed when they purchased and downloaded data from Plaintiff's website.

30.     The second claim plaintiff sought to pursue against the parties in the underlying litigation was its claim that those parties breached the non-disclosure agreement.

31.     All potentially liable party defendants were identified in the first complaint drafted and filed by defendant Tucker.

32.     For unknown reasons and without Plaintiff's knowledge or permission, Defendant Tucker drafted and filed a first amended complaint on December 21, 2021 removing potentially liable defendants who were included in the originally filed October 13, 2021 complaint.

33.     A true and accurate copy of the first amended complaint is attached as Exhibit 3.

34.     On April 5, 2020, the purchaser and defendant in the underlying TCPA lawsuit, registered an account on Plaintiff's website and downloaded Plaintiff's database.

35.     A few days later, the purchaser expressed interest in purchasing Plaintiff's entire company.

36.     Plaintiff was willing to and did discuss the sale of its business to the purchasers.

37.     The prospective purchaser insisted that the Plaintiff sign a nondisclosure agreement.

38.     Plaintiff did sign the nondisclosure agreement with the understanding that the agreement would protect Plaintiff's rights and not allow the taking or disclosing of otherwise proprietary, secret company information, including the database and other trade secrets belonging to Plaintiff.

39.     The anticipated sale of Plaintiff's company to the purchasers was never consummated because Adam Young, one of the potential purchasers never made an offer acceptable to plaintiff.

40.     The defendant and prospective purchaser in the underlying litigation, Adam Young and his associated businesses in the underlying TCPA case, were plaintiff's competitors.

41.     Plaintiff believed that the purchasers not only violated the terms of service but that one or more of the purchasers violated the nondisclosure agreement.

42. The complaint drafted and filed by Defendant Tucker in the underlying litigation was negligently drafted.

43. It did not clearly set forth the two primary contractual claims that Plaintiff believed it had against the purchasers.

44. Unbeknownst to plaintiff, Defendant Tucker drafted and filed a first amended complaint with the court on December 21, 2021, removing Adam Young from the complaint as a breach of contract defendant.

45. Defendant Tucker did not send the first amended complaint to the Plaintiff for review before filing it with the court.

46. In his first amended complaint, Defendant Tucker failed to allege that Adam Young, in the underlying litigation, violated the terms and conditions after unlawfully downloading Plaintiff's trade secret list.

47. By omitting the straightforward and provable claim of misappropriation of trade secrets for establishing a competing company, TCPA Shield, Plaintiff's justiciable claims were lost.

48. Defendant Tucker negligently amended the complaint when he removed parties who had allegedly breached the terms of service and nondisclosure agreements with Plaintiff, specifically Adam Young.

49. Defendant Tucker referred the owners to Defendant Cohen, stating he was an excellent trial attorney.

50. Defendant Tucker did not refer Plaintiff to any other attorneys.

51. Defendant Tucker and Defendant Cohen were personal friends.

52. Defendant Tucker highly recommended Defendant Cohen to Plaintiff.

6

53.     Defendant Tucker claimed that from his experience working with Cohen for 15 years, he believed Cohen to be the best trial court litigator in Denver, Colorado.

54.     On December 16, 2022, Plaintiff's owners, Michael O'Hare and his wife, Tatiana O'Hare (hereinafter "owners"), met with Defendant Cohen at his Denver, Colorado law office to discuss retaining Defendant Cohen.

55.     During the December 16, 2022, meeting with defendant Cohen, defendant Cohen assured the owners that he would fix the errors made by Defendant Tucker in the underlying litigation.

56.     Defendant Tucker was negligent in referring plaintiff to defendant Cohen, because defendant Tucker knew that his friend, defendant Cohen, would never criticize defendant Tucker's legal services provided to plaintiff.

57.     Defendant Cohen had a conflict of interest because he would never and did never recommend to the Plaintiff that it sue defendant Tucker for negligence in representing the Plaintiff, even though the court stated on the record that defendant Tucker was grossly negligent.

58.     Defendant Cohen knew that the court said defendant Tucker was grossly negligent.

59.     Defendant Cohen agreed to represent Plaintiff, knowing that the damage caused by Defendant Tucker was unrepairable.

60.     Defendant Cohen, as an experienced litigator, should have known that the damage caused by defendant Tucker was grossly negligent and not repairable.

61.     Defendant Cohen never recommended to plaintiff that it sue defendant Tucker for professional negligence.

62.     On December 22, 2022, the owners signed a fee agreement with Defendant Cohen and his law office, Cohen, LLC.

63.     A true and accurate copy of the Cohen fee agreement between Plaintiff, Cohen, LLC and defendant Cohen is attached hereto and incorporated herein by this reference as Exhibit 4.

64.     Defendant Cohen's fee agreement, at p. 3, under "Condition of Engagement" states in pertinent part: "We will keep you reasonably informed of progress and developments by contacting you directly. We will also respond to any questions you pose to Cohen, LLC directly."

65.     Defendants Cohen and Yost breached this section of the fee agreement.

66.     Defendants Cohen and Yost rarely responded to Plaintiff's emails.

67.     The plaintiff did not learn of Tucker's negligence in removing the breach of contract claim in the first amended complaint until January 2023, when the court sanctioned the Plaintiff.

68.     Once the Plaintiff found out about the defective first amended complaint and that it contained errors, the Plaintiff insisted that the defendants Cohen and Yost file a second amended complaint.

69.     On or about February 15, 2023, Defendant Christopher Yost drafted a 16-page amended complaint.

70.     The defendants negligently failed to file the amended complaint, which Defendant Yost drafted on February 15, 2023, because the defense attorneys in the underlying litigation told defendant Cohen and Yost they would object to any further amendments.

8

71.     Plaintiff reviewed the complaint drafted by defendant Yost and believed defendant Yost had filed it with the court.

72.     Plaintiff learned weeks later that the defendants failed to file February 15, 2023, amended complaint (which would have added Adam Young back in as a defendant in the underlying litigation).

73.     Rather than file a second amended complaint with a motion to amend to correct the errors made by Defendant Tucker in the first amended complaint, Defendants Yost and Cohen were afraid of the defense lawyer's opposition to the amendment, which was communicated to them by the defense attorneys in the underlying litigation.

74.     As a result, neither Yost nor Cohen filed a motion to amend the first amended complaint, which, in the interests of justice, would more likely than not have been granted.

75.     Defendants' failure to file a motion to amend the Tucker first amended complaint, for reasons unknown to Plaintiff, was negligent.

76.     A sanctions hearing was held on April 17 and April 18, 2023.

77.     Defendant Cohen did not call Michael O'Hare as a witness at that hearing.

78.     Defendants were negligent in failing to call owner Michael O'Hare to testify at the sanctions hearing held on April 17, 2023.

79.     Owner Michael O'Hare was in the best position to explain to the court the discovery issues.

80.     At the sanctions hearing, Defendant Cohen negligently failed to blame Defendant Tucker for his negligence in representing Plaintiff.

81.     Defendant Cohen failed to blame defendant Tucker because the two were personal friends.

9

82.    Defendant Cohen did not address the misrepresentation of a certain recording that the defense used to erode the credibility of Plaintiff and bolster their conspiratorial theory at the April 17, 2023 sanctions hearing.

83.    Cohen had the opportunity to present the truth about the recording in Plaintiff's April 10, 2022 affidavit and again during the sanctions hearing on April 17, 2023.

84.    On April 25, 2023, the court in the underlying case entered an "Order Regarding Defendant Motions to Terminate and Compel."  That order is attached as Exhibit 5.

85.    In that April 25, 203 order the court found that the "gross negligence of Mr. Tucker warrant sanctions."

86.    The court did not terminate case entirely in its April 25, 2023 order but held that Mr. Frankovitz could not testify "altogether at trial."

87.    Without expert witness Frankovitz or any other expert witness, plaintiff's case was doomed.

88.    Defendant Tucker withdrew as counsel for Plaintiff on May 4, 2023.

89.    Only after the case was dismissed did defendant Cohen submit the Plaintiff's affidavit referencing the contents of the recording in an effort to mitigate further court sanctions against plaintiff in the underlying litigation.

90.    Defendants Cohen and Tucker violated the attorney-client privilege of which Plaintiff was entitled by releasing attorney-client privileged emails regarding the recording not to remedy Plaintiff's case but to defend defendant Tucker at the Rule C,R,C,P, Rule 26(a) violation hearing.

10

91. Defense counsel in the underlying litigation, Ci Ci Cheng, used these correspondences to create a conspiratorial narrative about Plaintiff and ultimately convinced the judge that Plaintiff was reckless in prosecuting the underlying case.

92. Defendant Cohen, in his fee agreement with Plaintiff at p. 1, Part 2, negligently represented to Plaintiff and its owners that Cohen's estimated attorney fee would be $180,000.00 plus costs of $15,000.00.

93. This was a false representation of fact.

94. Defendant Cohen charged Plaintiff $415,046.30 in attorney fees and costs.

95. Plaintiff, by and through its owner, Michael O'Hare, trusted in the expertise of Gary Tucker, Esq., Jeffrey Cohen, Esq., and Christopher Yost, Esq.

96. Defendant Cohen's promise to Plaintiff that he would amend the complaint to refocus on the defendant's terms and conditions violations was never filed even though it was drafted by defendant Yost.

97. Defendants' combined failure to file a motion to amend the previously amended complaint was negligent and below the applicable standard of care.

98. This failure to amend Plaintiff's complaint restricted plaintiff to the weak legal theory of unauthorized download.

99. The court's explicit reference to the arguments Defendant Cohen promised but failed to present underscores a direct link between his inaction and the adverse outcomes which damaged Plaintiff.

100. Defendant Tucker recommended Jason Frankowitz as a computer expert to review the facts in the underlying litigation and prepare an expert witness report.

101.    The reliance on Jason Frankovitz for forensic expertise, the expert chosen by Defendant Tucker, backfired spectacularly.

102.    Defendants failed to adequately inform Mr. Frankovitz about all the relevant facts and issues in the underlying case which prevented him from preparing a complete expert report.

103.    Frankovitz's theory of GET URL manipulation not only lacked factual basis but also misdirected the case into a technical quagmire.

104.    This misstep provided the defense with a playbook to challenge Plaintiff's claims on procedural grounds, seeking to expose the absence of limiting code as evidence of Plaintiff's supposed deception.

105.    The truth, discovered too late, was that the necessary code to restrict downloads was not implemented until after the alleged unauthorized download occurred, a fact that could have been easily verified had defendants Tucker or Cohen sought to review the GitHub repository records or listened attentively to Plaintiff's concerns and the historical evidence available.

106.    The defense's strategy in the underlying litigation to demand exhaustive production of source code, anticipating non-compliance, set a trap into which Defendant Tucker and later Defendant Cohen unwittingly walked.

107.    Their failure to question the expansive and unrealistic demands for source code, coupled with defendant Tucker's erroneous assurances and defendant Cohen's oversight of the looming deadline, facilitated the defense's motion for sanctions.

108.    This strategic miscalculation not only shifted the focus of the case but also set the stage for the Plaintiff's legal and financial downfall.

109.    The court's eventual sanction, based largely on the perceived mishandling of evidence by plaintiff, was caused solely by defendants' negligence and failure to uphold the fiduciary duties owed to plaintiff.

110.    In mid-January 2023, Plaintiff submitted an eight-page report to Cohen and Tucker instructing them on countering the source code production demand.

111.    Cohen and Tucker failed to follow the Plaintiff's instructions.

112.    The shift towards a technical debate over source code and the absence of limiting code became the battleground on which the case was lost.

113.    This focus diverted attention from the substantive relevant legal issues, transforming the litigation into a technical discovery dispute ill-suited to defendant Tucker and Cohen's expertise.

114.    According to Judge Bain, in his April 23, 2023 order, who presided over the proceedings and hearings in the underlying case on April 17, 2023, and April 18, 2023, defendant Cohen told the judge that "Plaintiff should not be punished for its attorneys' mistakes since Mr. O'Hare delivered all of the recordings to his attorney in April 2022."

115.    On May 3, defendant Cohen submitted a CAR 21 petition to the Colorado Supreme Court seeking review of Judge Bain's April 25, 2023 ruling.

116.    The petition was another futile exercise in the underlying case that, by this point, was lost.

117.    The appeal cost the Plaintiff at least ten thousand dollars in unnecessary fees.

118.    On May 3, 2023, defendant Cohen telephoned Judge Bain's court clerk and asked for an immediate status conference regarding his forthwith motion to stay proceedings that was filed on May 3, 2024.

13

119. On May 4, 2023, the court held a status conference at defendant Cohen's request.

120. In its May 4, 2023 order, the court criticized defendant Cohen for stating that "he had been so busy since last weekend that he had not had time to determine where this document [the April 5, 2020 document] came from or why it was being disclosed this late."

121. The court in its May 4, 2023 order denied defendant Cohen's motion to stay proceedings and ordered that the trial commence on May 20, 2023.  That order is attached as Exhibit 6.

122. On May 8, 2023, the judge dismissed four of Plaintiff's five claims. That order is attached as Exhibit 7.

123. On May 11, 2023, Defendant Cohen submitted a sur-reply to the defendant's reply to the court's May 4, 2023, order.

124. The report was filed an hour before another hearing for termination was to be held.

125. In its May 12, 2023, order, the trial court judge specifically found that Plaintiff committed a Rule 37 late disclosure violation so egregious that he had no other option but to vacate the trial.  That order is attached as Exhibit 8.

126. The defendant in the underlying case filed a motion for fees and costs and a hearing on that motion was held on September 16, 2023.

127. On January 12, 2024, the court in the underlying case entered an order awarding defendant in the underlying case attorney fees of $500,000.00.  A copy of the January 12, 2024 order is attached as Exhibit 9.

128. Judge Bain in his order stated, in part:

"The problem with plaintiff's insistence on the second theory is that at no time

during this litigation did plaintiff's first attorney or second set of attorneys amend

the complaint to add this claim. The only breach of contract claim in the first

amended complaint revolved around the non-disclosure agreement the parties had

entered into during their acquisition negotiations.  Nor did plaintiffs expert Mr.

Frankovitz, address this theory in his expert report, at least not until April 17,

2023 after the manipulation theory had fallen apart."

<u>COUNT I – LEGAL MALPRACTICE AGAINST ALL DEFENDANTS'</u>

129. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

130. At all relevant times, Defendants Gary Tucker, Esq., Jeffrey Cohen, Esq., and Christopher Yost, Esq. owed Plaintiff a duty of care consistent with the standard of practice expected of legal professionals in the State of Colorado. This duty encompassed providing competent and diligent legal representation, adhering to the ethical standards of the profession, effectively communicating with the Plaintiff, and acting at all times in the Plaintiff  best interests.

131. Defendants breached their duty of care to the Plaintiff through a series of actions and inactions that fell significantly below the standard of care expected of reasonably competent attorneys under similar circumstances, one more of which caused plaintiff substantial damages.

132. These breaches include, but are not limited to:

a. Failing to file critical amendments to the complaint that would have clarified and emphasized the Defendant violations of terms and conditions, directly impacting the strength and focus of Plaintiff case.

15

b.     Neglecting to adequately challenge and respond to the defense demands for exhaustive and overly broad production of source code, leading to procedural disputes and sanctions that were avoidable.

c.     Mismanaging key aspects of the discovery process, including the failure to secure necessary forensic expertise to substantiate claims related to unauthorized downloads and misappropriation of trade secrets.

d.     Withdrawing (abandoning the client) from representation without adequately protecting the Plaintiff interests, including the failure to refund unearned retainer fees and ensure a seamless transition to subsequent legal representation.

e.     Failing to communicate essential information, deadlines, and strategic decisions to the Plaintiff, leaving him uninformed and unprepared for critical phases of the litigation.

f.     Failing to properly investigate and collect electronically stored information ("ESI") evidence in support of the misappropriation claims alleged in the complaint which he drafted.

g.     Failing to investigate and preserve the source code that would be relevant evidence of the "glitch" in plaintiff's program which was allegedly exploited by one or more of the defendants in the underlying litigation.

h.     Failing to institute a litigation hold on ESI.

i.     Failing to ascertain what ESI evidence had been preserved to support the claims asserted in the complaint he drafted and filed in the underlying litigation.

j.     Failing to fulfill the obligation to institute and monitor a litigation hold for ESI.

k.      Failing to investigate or preserve ESI regarding the alleged software "glitch" until November 2022 when the defendants (in the underlying litigation) pressed for production of the source code belonging to plaintiff from April 2020.

l.      Due to Tucker's lack of digital technology, he was unable to assess the validity of Frankovitz's reports.  Nor did he ask basic questions that the defense asked Frankovitz in his deposition, like what information and research did you rely on to produce this report.  In addition, defendant Tucker failed to define the proper scope of Frankovitz's report.  The plaintiff was led to believe that the report would include supporting documentation about the second theory in the case regarding the terms and conditions.

m.      On November 8, 2022, defendants in the underlying litigation served a request for production of the April 2020 source code and the current source code.

n.      Defendant Tucker negotiated a deal with the defense counsel against his client's explicit instructions to produce the plaintiff's source code.   In and around that time, Tucker wrote that his client's source code from April 5, 2020 was "properly preserved."  This was a fabrication because his client told the defendant that the last back up was after April 5, 2020.

o.      In a December 7, 2022 email to his colleague Kate Fritz, Esq., defendant Tucker wrote that Mr. O'Hare "indicated" there is no code from April 2020.

p.      Despite knowing that Mr. O'Hare did not have code dated April 2020, on December 20, 2022, defendant Tucker negligently drafted and served a discovery response to the request for production of documents served in the underlying litigation upon plaintiff and incorrectly represented that plaintiff did have source code in existence on April 5, 2020.

q.      Defendant Tucker negligently failed to review the response he drafted with the plaintiff to confirm its truthfulness.

r.      On December 19, 2022, Mr. O'Hare notified defendant Tucker by email stating that the earliest source code plaintiff had was from February 6, 2021.

s.      None of the defendants ever told the defense lawyers in the underlying litigation that plaintiff did not have source code dated April 2020.

t.      The defense lawyers in the underlying litigation filed a motion to compel production of the April 2020 source code against plaintiff in the underlying litigation on December 30, 2022.

u.      A motion to compel hearing was held on January 19, 2023 in the underlying litigation.

v.      At the hearing the district court judge told defendant Tucker to just tell the defendant in the underlying litigation that you do not have the April 2020 source code, if he did not have it.

w.      None of the defendants ever told the defense lawyers or the judge in the underlying litigation that the April 2020 source code did not exist.

x.      Defendants' professional negligence resulted in the entry of an April 25, 2023 order that prohibited plaintiff's expert from testifying altogether at trial as well as the entry of other sanctions against the plaintiff.

y.      That order also prohibited the instruction into evidence a copycat, reconstructed competing website allegedly created by the defendants in the underlying litigation which should have exonerated the plaintiff.

18

z.      In the April 25, 2023 order, the trial court judge found defendant Tucker to be grossly negligent.

aa.     A true and accurate copy of the April 25, 2023 order is attached and incorporated herein as Exhibit 9.

bb.     The court terminated the litigation in an order dated May 12, 2023 stating in part that plaintiff "disregarded the law completely."

cc.     The May 12, 2023 order is attached as Exhibit 10.

dd.     On January 12, 2024, the court awarded the defendants in the underlying litigation costs and attorney's fees in the sum of $640,415 as a direct result of defendants' negligence. (Attorney Fees: $500,000.00 and Bill of Costs $140,415.00)

ee.     Defendant Tucker negligently referred plaintiff to only one lawyer, his friend, defendant Jeffrey Cohen.

ff.     Failing to file a second amended complaint to correct the deficiencies in the prior complaints drafted and filed by defendant Tucker.

133.    As a direct and proximate result of defendants' breaches of their duty of care and negligence, plaintiff suffered substantial damages, including but not limited to a $640,415.00 sanctions imposed by the court, the dismissal of the underlying case with prejudice, and additional financial burdens associated with securing alternative legal representation and attempting to mitigate the fallout from Defendants' malpractice by hiring appellate counsel to appeal the adverse judgment entered against plaintiff in the underlying litigation.

134.    Plaintiff was forced to file a chapter 11, Subchapter V bankruptcy to protect it from the judgment and financial ruin.

19

135.    The plaintiff incurred a substantial amount of attorney's fees and costs with another law firm, Allen & Vellone, in an effort to mitigate its damages.

136.    Defendants' actions and inactions constitute legal malpractice as they failed to exercise the degree of skill, care, and diligence that is commonly possessed and exercised by other attorneys under similar circumstances, which negligence caused significant economic losses to the Plaintiff.

137.    Defendants' conduct fell below the applicable standard of care and was the cause of plaintiff's damages and losses.

### COUNT II – BREACH OF FIDUCIARY DUTY AGAINST ALL DEFENDANTS

138.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

139.    At all times material hereto, Defendants' Gary Tucker, Esq., Jeffrey Cohen, Esq., and Christopher Yost, Esq. in their professional capacity as legal counsel for the Plaintiff, owed the Plaintiff a fiduciary duty.

140.    This duty required Defendants to act with the highest degree of honesty, loyalty, and fidelity in the representation of the Plaintiff and to place the Plaintiff's interests above their own or those of any other party.

141.    The fiduciary duty owed by Defendants to the Plaintiff arises under the common law governing attorney-client relationships and is further delineated by the Colorado Rules of Professional Conduct, which mandate that attorneys shall provide competent representation to a client and shall act with reasonable diligence and promptness in representing a client, among other duties.

142.    Defendants breached their fiduciary duty to the Plaintiff through various actions and omissions, including, but not limited to:

20

a.        Failing to act with the requisite loyalty and dedication by withdrawing from representation without ensuring that the Plaintiff interests were adequately protected and without securing a competent and seamless transition to subsequent legal counsel.

b.        Misrepresenting the nature and status of the Plaintiff  legal case, including the failure to file promised amendments to the complaint and neglecting to inform the Plaintiff of critical deadlines and procedural developments.

c.        Placing their interests, including financial interests and considerations related to professional convenience or reputation, above those of the Plaintiff, particularly in the handling of the case technical aspects and in communications with the court and opposing counsel. At the April 18, 2023 court hearing defendants Cohen and Yost failed to explain in a coherent manner about how source code was produced and stored on the Github repository.  That in fact all source code is stored on the repository.  Both Cohen and Yost lacked technical expertise to answer such questions.  Their answers created more confusion and more doubt at the April, 2023 hearing.

d.        Failing to adequately communicate with the Plaintiff regarding strategic decisions, legal theories, and the risks associated with the litigation, thereby depriving the Plaintiff of the opportunity to make informed decisions regarding his legal representation.

e.        Tucker and Cohen hid from the plaintiff that the critical recording had not been produced during discovery and it was late.  They did not inform the plaintiff that they had decided to turn it over to the opposing party and that it was late in early April 2023.

143. As a direct and proximate result of defendants' breach of fiduciary duty, the Plaintiff suffered significant harm, including financial losses associated with the court-imposed sanctions, the dismissal of his case with prejudice, and the incurred costs of attempting to rectify defendant Tucker's negligence.

144. By virtue of the foregoing, defendants are liable to the Plaintiff for breach of fiduciary duty, entitling the Plaintiff to damages in an amount to be proven at trial, including but not limited to compensatory damages for the financial losses sustained, as well as any additional relief deemed just and proper by the Court.

## COUNT III – FRAUDULENT MISREPRESENTATION AGAINST ALL DEFENDANTS

145. Plaintiff reiterates and incorporates by reference all previously stated paragraphs as if fully set forth herein.

146. Defendants, through their actions and communications with Plaintiff, made representations regarding the nature of the legal services they would provide, the strategies they would employ, the actions they would take to protect and advance Plaintiff's legal interests, and how much it would cost plaintiff.

147. Defendant Cohen excessively over-charged the plaintiff much more than what he estimated in his fee agreement with plaintiff.

148. These representations were made falsely, with knowledge of their falsity or with reckless disregard for their truth or falsity, with the intention that Plaintiff rely upon them.

149. Plaintiff reasonably relied upon these representations, expecting that defendants would fulfill their professional obligations as promised.

150. As a direct result of defendants' fraudulent misrepresentations they made to plaintiff and its owners, Plaintiff suffered damages, including the adverse outcomes in the

22

underlying litigation, financial losses due to court sanctions, the costs associated with attempting to correct the missteps in his legal representation and fees paid to expert witnesses (Frankowitz) who ultimately could not testify.

151. Plaintiff is entitled to damages resulting from Defendants' fraudulent misrepresentations, to be determined at trial, including compensatory damages for the financial and emotional harm suffered by Plaintiff.

## COUNT IV – NEGLIGENT MISREPRESENTATION AGAINST DEFENDANT COHEN

152. Plaintiff reiterates and incorporates by reference all previously stated paragraphs as if fully set forth herein, establishing the factual foundation for this claim.

153. Defendant Cohen, in estimating his fee at $180,000.00, was negligent.

154. Plaintiff believed that defendant Cohen would charge it approximately $180,000.00 as stated in his fee agreement.

155. In reliance on defendant Cohen's representation, plaintiff hired defendant Cohen and his law firm.

156. Plaintiff would not have hired defendant Cohen or his law firm had plaintiff known defendant Cohen would charge it over $450,000.00.

157. Plaintiff justifiably relied upon the fee representation made to it by defendant Cohen.

158. Plaintiff was damaged by the negligent representations made by defendant Cohen to plaintiff.

## COUNT V – BREACH OF FEE AGREEMENT CONTRACT AGAINST DEFENDANT COHEN

159. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

160. Plaintiff entered into a fee agreement with defendant Cohen.

161. Plaintiff complied with the terms of the fee agreement and paid defendant Cohen over $400,000.00.

162. Defendant Cohen breached the fee agreement as set forth hereinabove and as alleged here.

163. Defendant Cohen excessively over billed plaintiff.

164. Defendant Cohen billed plaintiff $12,854.00 for work defendant Cohen's office computer staff did on March 27, 2023.

165. This computer work did not benefit plaintiff.

166. Defendant Cohen charged plaintiff for work he did for other clients.

167. Defendant Cohen billed plaintiff $354.00 for work defendant Cohen did for a Texas case in which he was counsel on April 4, 2023.

168. This work did not benefit plaintiff.

169. Defendant Cohen billed plaintiff $1,260.00 for work defendant Cohen did for another client, reviewing "FDDs and franchise agreements" on April 19, 2023.

170. This work did not benefit plaintiff.

171. In their fee agreement, defendant Cohen represented to plaintiff that his initial review of the case would take "approximately 10-15 hours." Fee agreement section Part 1 – Review.

172. Defendant Cohen actually billed plaintiff 43 hours to review that case, not 10 to 15 hours as represented in his fee agreement.

173. Defendant Cohen fraudulently billed plaintiff.

174. Defendant Cohen failed to keep plaintiff reasonably informed about the progress of its case and failed to respond to most of plaintiff's emails to him.

### COUNT VI – UNJUST ENRICHMENT AGAINST DEFENDANTS COHEN and TUCKER

175. Plaintiff repeats and realleges each and every allegation contained in the

176. foregoing paragraphs as if fully set forth herein.

177. The defendants received a benefit from the plaintiff in the form of money for attorney fees.

178. The benefit received by defendants was at plaintiff's expense.

179. Defendants did not confer any benefit upon the plaintiff despite being paid approximately $500,000.00 in attorney fees.

180. Under the circumstances, where plaintiff was sanctioned and its case dismissed due to the negligence of defendants, it is unjust for defendants to keep plaintiff's money.

181. Defendants should be ordered to return to plaintiff all of the money paid to them by plaintiff, including costs incurred, with interest at the statutory rate of eight per cent per annum.

WHEREFORE, Plaintiff respectfully requests that judgment be entered against the defendants, jointly and severally, as follows:

a. An award of compensatory damages in an amount to be determined at trial, including interest at the statutory rate from the date of filing this complaint until said judgment is collected sufficient to redress the financial and emotional injuries suffered by the Plaintiff as a direct result of Defendants' legal malpractice.

b. An award of compensatory damages in an amount to be determined at trial for the losses incurred due to defendants' breach of fiduciary duty, including but not limited to the

25

adverse outcomes in Plaintiff  original case and the financial impact of the court-imposed sanctions.

      c.      An award of compensatory damages in an amount to be proven at trial that reflects the egregious nature of defendants' negligence and the significant harm it caused to the Plaintiff.

      d.      An award of damages in an amount to be determined at trial, reflecting the financial losses suffered by the Plaintiff due to defendants' failure to adhere to the terms of their contractual agreement.

      e.      An award of compensatory and punitive damages in an amount to be proven at trial, to punish defendants for their fraudulent conduct and deter such conduct in the future, and to compensate the Plaintiff for the reliance damages suffered.

      f.      Pre-judgment and post-judgment interest on any monetary awards at the maximum rate allowed by law, to compensate for the time value of money lost due to defendants' negligence, breach of contract, negligent misrepresentations and breach of fiduciary duty.

      g.      An award for the costs of this action; and

      h.      Such other and further relief as may be deemed necessary.

DATED this _____th day of June, 2024.

**CIMINO LAW OFFICE, LLC**

/s/ *John A. Cimino*

John A. Cimino, Esq.
*Original signature on file*

Attorney for Plaintiff

**PLAINTIFF DEMANDS A JURY TRIAL**

26