| | |
|---|---|
| DISTRICT COURT, EL PASO COUNTY, COLORADO<br><br>Court Address:<br>270 S. TEJON, COLORADO SPRINGS, CO, 80903<br><br>**Plaintiff(s)** TCPA LITIGATOR LIST<br><br>v.<br><br>**Defendant(s)** RINGBA LLC et al. | DATE FILED: January 12, 2024 11:34 AM<br>CASE NUMBER: 2021CV31668 |
| | ⚠ **COURT USE ONLY** ⚠ |
| | Case Number: 2021CV31668 |
| | Division: 22          Courtroom: |
| **Order:Proposed Order for Defendants' Motion for Attorney Fees** | |

The motion/proposed order attached hereto: GRANTED IN PART.

I have considered the motion for attorney fees, the response, reply, supplemental brief, along with all exhibits, and the testimony from the September 16, 2023 hearing.

According to C.R.C.P. Rule 37:

"(c)(1) A party that without substantial justification fails to disclose information required by C.R.C.P. 26(a) or 26(e) shall not be permitted to present any evidence not so disclosed at trial or on a motion made pursuant to C.R.C.P. 56, unless such failure has not caused and will not cause significant harm, or such preclusion is disproportionate to that harm. The court, after holding a hearing if requested, may impose any other sanction proportionate to the harm, including any of the sanctions authorized in subsections (b)(2)(A), (b)(2)(B) and (b)(2)(C) of this Rule, and the payment of reasonable expenses including attorney fees caused by the failure."

To determine reasonable attorney fees, a "court makes an initial estimate of a reasonable attorney fee by calculating the lodestar amount. *Tallitsch,* 926 P.2d at 147. The lodestar amount represents the number of hours reasonably expended on the case, multiplied by a reasonable hourly rate. *Id.* The court's calculation of the lodestar amount carries with it a strong presumption of reasonableness. *Id.; see also Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)." *Payan v. Nash Finch Co.*, 310 P.3d 212, 217, 2012 COA 135, ¶ 18 (Colo.App. 2012).

" . . . [I]t is not the court's burden 'to justify each dollar or hour deducted from the total submitted by counsel. It remains counsel's burden to prove and establish the reasonableness of each dollar, each hour, above zero.' *Mares v. Credit Bureau,* 801 F.2d 1197, 1210 (10th Cir.1986)." *Id., ¶* 35

"The fee applicant ... must ... submit appropriate documentation to meet 'the burden of establishing entitlement to an award.... [T]rial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees ... is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time. And appellate courts must give substantial deference to these determinations, in light of 'the district court's superior understanding of the litigation.' We can hardly think of a sphere of judicial decisionmaking in which appellate micromanagement has less to recommend it. *Fox v. Vice,*" 131 S.Ct. 2205, 2216, 180 L.Ed.2d 45 (2011) (citations omitted) (quoting *Hensley,* 461 U.S. at 437, 103 S.Ct. 1933)." *Id., ¶* 35.

I make any findings of fact in this order based on a preponderance of the evidence standard.

Plaintiff argues that no sanctions are warranted because the source code discovery issue in this case was just a "sideshow." That is an incorrect statement. The source code issue was THE show.

It was only after $100,000's in attorney's fees, several months, and countless hours fighting over the source code that plaintiff finally acknowledged that the source code and other fatal evidence in plaintiff's sole possession all along showed that plaintiff's sole working theory for their case--that Mr. Young had manipulated the software on plaintiff's website to access

plaintiff's entire list--was wholly bogus. As my previous orders have made clear, had plaintiff disclosed this evidence in its sole possession at the beginning of the case rather than on the eve of the third trial setting, all parties could have started examining the viability of what plaintiff now insists was its second claim all along--that defendants breached the terms and conditions agreement that Mr. Young had explicitly agreed to.

The problem with plaintiff's insistence on this second theory is that at no time during this litigation did plaintiff's first attorney or second set of attorneys amend the complaint to add this claim. The only breach of contract claim in the first amended complaint revolved around the non-disclosure agreement the parties had entered into during their acquisition negotiations. Nor did plaintiff's expert, Mr. Frankowitz, address this theory in his expert report, at least not until April 17, 2023, after the manipulation theory had fallen apart. Nor did Mr. O'hare make any mention of this other theory during his deposition in January 2023. Nor did plaintiff ever disclose evidence showing how Mr. Young did in fact click on the website's terms and conditions box. Ms. Cheng was credible in testifying based on common sense and her expert's opinion that of course a business would preserve the evidence showing that a certain individual had clicked on the terms and conditions box. If no preservation of that data occurred, there was no point in requiring the click on such an alleged box in the first place.

There was also the concealment until the 11th hour of the Richard Nixon-esque audio-recording of Mr. O'Hare and Mr. Malosev, in which Mr. Malosev explained to Mr. O'Hare how anyone could do what Mr. Young had done (in downloading the list) without doing anything unlawful to manipulate the software security of the list.

Because plaintiff deliberately concealed all of this evidence until the eve of the third jury trial setting in this case and because this evidence lay at the heart of the case (and the heart of the never-filed breach of contract claim), the only reasonable sanction was termination of the case.

Plaintiff argues that termination alone is a harsh enough sanction and that imposing attorney fees would be too harsh. The court disagrees. Were we talking about a modest number of hours and fees, the argument might be reasonable. But in a case where the defendants' attorneys spent hundreds of hours on the case and plaintiff paid all fees invoiced, I find that paying not all but at least a significant portion of those fees is warranted as an additional sanction to make clear to plaintiff, plaintiff's counsel, and the community that concealing critical evidence invites harsh sanctions.

The cases plaintiff cites for this argument do not persuade me otherwise. For example in *Viruet v. City of New York*, 2020 WL 4458789, at *7 (S.D.N.Y. 2020), the magistrate recommended against attorney fees on top of a dismissal because the prevailing party had not expended many resources in that case. In this case, however, defendants spent vast sums and hundreds upon hundreds of hours defending themselves against a potential $2,800,000 judgment.

I reject plaintiff's argument that defense counsel early on hatched some fiendish plot to focus on this "sideshow" of the source code, based on 1.2 hours of fee-shifting research by one of the defendants' attorneys. I find it speculative that the 1.2 hours of fee-shifting research had anything to do with the source code and reject the suggestion that this 1.2. hours of research was the start of a convoluted plot to generate a sideshow. No law firm senior associate would need to research what should happen when the opposing party deliberately conceals evidence essential to adjudication of the case.

I also reject the argument that defense attorneys' research over three days in November 2022 shows that defendants themselves considered the breach of terms and conditions claim an important one, even though it had not even been pled. Those billings show that an associate did an initial review of the NDA in this case, followed by a review of that work and the NDA by Ms. Cheng. The fact that Ms. Cheng then spent part of a day looking at plaintiff's website terms and conditions hardly reflects that Ms. Cheng somehow anticipated that at some point, plaintiff would add a breach of the website terms and conditions claim to its complaint.

Among many things, in part, I base this conclusion on Ms. Cheng's very credible testimony that while the two sides discussed the possibility of plaintiff adding a breach of contract claim, plaintiff never followed through with it. Plaintiff cannot deliberately choose NOT to amend its complaint and then later, after the case has been terminated, insist that that claim was there all along.

Plaintiff argues that I cannot award attorney fees for all of the work by defense counsel because the source code issue only dealt with a portion of the case. I disagree. The concealed source code lay at the heart of all of plaintiff's claims because the ready access to plaintiff's database by Mr. Young and others who became customers of plaintiff was a key determinant in whether plaintiff's data could even be considered trade secrets.

I reject plaintiff's argument that defendants kept modifying their definition of "source code." Certainly no later than the January 19, 2023 hearing on defendants' motion to compel was it abundantly clear to plaintiff what defendants sought as critical evidence in this case. Even then, it still took months for plaintiff to begin revealing what it had concealed.

I reject plaintiff's argument that all defendants had to do to inspect the source code was to look at plaintiff's somehow perfectly re-constructed website on the eve of trial. I found Ms. Cheng very credible when she testified that it was clear to her based on communications and pleadings from plaintiff's counsel around this time (and the perfectly re-constructed website) that plaintiff had much more important source code that it was not disclosing. She was also credible when she testified that plaintiff's counsel never answered her questions as to why such critical source code evidence was only coming to light on the eve of trial. I find that in light of the above, Ms. Cheng reasonably rejected plaintiff's offer to look at the back-end of the perfectly re-constructed website and instead continued to insist on getting the original source code she knew plaintiff had but was not sharing.

The argument that defendants' request for attorney fees from the first round of hearings on the first motion to compel is also included in their June 2023 request for fees is denied, as the fees for the first motion to compel were NOT included in the later request for fees.

The court does agree with plaintiff's argument that defendants are not entitled to fees for anyone other than the four people described in defendants' request for fees on pages 13-14 of their motion: Ms. Cheng, Ms. Linehan, Mr. Byer, and Ms. Beeby.

I agree in part with plaintiff's argument that the hourly rates for these four are unreasonably excessive. Based on Ms. Cheng's credible testimony on this point and the excellent results for her client, I find that her rate was reasonable.

I do, however, find the associates' work in this case to be unreasonably high compared to Ms. Cheng and, therefore, reduce each of their hourly rates by $50 for all of their work on this case.

I find Ms. Cheng's testimony regarding the paralegal on this case, Ms. Beeby, credible and find her hourly rate to be reasonable.

I agree with plaintiff that the 22.7 hours of work by Ms. Linehan (Exhibit 6) to get up to speed should be reduced to 15 hours. The request for an across the board reduction based on Exhibit 6 is denied, in part because of Ms. Cheng's credible testimony that Ms. Linehan did much of the excellent brief-writing until her exit from the case.

The argument about block-billing is rejected, as I find the the billing sufficiently detailed to conclude that each entry is a reasonable request, including the example on page 15 of plaintiff's supplemental brief.

Having reviewed all of the invoices, I find that the hours defense counsel spent on this case were 10-20% higher than reasonable, even when I account for defendants' sua sponte reduction of more than $100,000 in fees that they are not asking to be reimbursed for.

In the spirit of doing "rough justice," recognizing the ultimate sanction of case termination that I imposed, acknowledging the general American rule that each party pays its own fees, and, given all of my above findings, I find that an appropriate attorney fees sanction is for plaintiff to pay $500,000 in attorney fees for this case. Even with the discounting down from the request for more than $800,000 in attorney fees based on my findings I have made above, the lodestar calculation remains well above $500,000.

In awarding this amount of attorney fees, I have taken account of the request for attorney fees incurred for the motion to compel litigation from December 2022 into January 2023. I have reviewed the May 26, 2023 amended application for attorney fees and accompanying exhibits. I make the same findings regarding the rates charged for that work but find that the amount of work done there was reasonable. Nevertheless, in giving some deference to the American rule regarding attorney fees, I have accounted for this request in ordering the reimbursement of $500,000 in attorney fees.

This $500,000 sanction also takes account of Lewis Roca's work on this matter after termination of the case.

Defendants are ordered to submit a proposed judgment consistent with this order within 7 days.

Issue Date:  1/12/2024

WILLIAM B BAIN
District Court Judge

| | |
|---|---|
| DISTRICT COURT, EL PASO COUNTY, COLORADO<br><br>270 South Tejon Street<br>Colorado Springs, CO 80903 | |
| **Plaintiff:**<br><br>TCPA LITIGATOR LIST,<br><br>v.<br><br>**Defendants:**<br><br>ADAM YOUNG, an individual, TUBMANBURG LIMITED, a Bahamas corporation a/k/a Ringba, RINGBA, LLC, a Delaware limited liability company. | ▲ **COURT USE ONLY** ▲<br><br>Case No. 2021CV031668<br><br>Division: 9 |
| **[PROPOSED] ORDER GRANTING DEFENDANTS' MOTION FOR ATTORNEY FEES** | |

THIS MATTER comes before the Court on Defendants' Motion for Attorneys' Fees pursuant to Pursuant to this Court's prior order dated May 12, 2023, C.R.C.P. 37, and C.R.S. §§ 13-17-102 and 7-74-105.

The Court, having reviewed the briefing, including the supporting declaration and exhibits filed with Defendants' Motion, and being fully advised in the premises, hereby finds Plaintiff lacked justification to bring its claims and asserted these claims in bad faith. Further, the Court finds that Plaintiff's abused Colorado's discovery procedures. An award of all reasonable fees incurred by Defendants in this lawsuit is therefore proper under C.R.C.P. 37 and C.R.S. §§ 13-17-102 and 7-74-105.

Further, the Court finds the attorneys' fees incurred in this action to be reasonable, given the complex and evolving nature of the dispute and Plaintiff's conduct throughout the litigation.

The Court hereby ORDERS Plaintiff pay Defendants **$815,694.00** in reasonable attorneys' fees.

SO ORDERED

Dated: _____, 2023          BY THE COURT:

                                           _____
                                           DISTRICT COURT JUDGE

Attachment to Order - 2021CV31668

2