UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| In re: ) | |
| ) | |
| DNC and TCPA List Sanitizer, LLC, ) | Case No. 24-12624-KHT |
| ) | Chapter 11 |
| Debtor. ) | |

### UNITED STATES TRUSTEE'S OBJECTION TO DEBTOR'S MOTION TO ASSUME MANAGEMENT AGREEMENT WITH CASHYEW HOLDINGS, INC.

Patrick S. Layng, United States Trustee for Region 19, (the "UST") objects to the Debtor's Motion to Assume Management Agreement with Cashyew Holdings, Inc. and states as follows:

### Procedural History

1. DNC and TCPA List Sanitizer, LLC (the "Debtor") filed its Voluntary Petition commencing this chapter 11 case on May 16, 2024.

2. Joli A. Lofstedt is the appointed Subchapter V Trustee in this case.

3. On July 10, 2024, the Debtor filed its Motion to Assume Management Agreement with Cashyew Holdings, Inc. (the "Motion"). Pursuant to the Motion, the Debtor requests approval of its assumption of a management agreement with insider Cashyew Holding, LLC, pursuant to 11 U.S.C. § 365. Per the Motion, Cashyew Holding owns 99% of the Debtor.

4. The UST has standing to object to the Motion pursuant to 11 U.S.C. § 307.

### Objections

5. The Debtor does not explain why the Court should approve its assumption of the management agreement. It does not explain why it determined to assume the management agreement in the exercise of its business judgment.

6. It is unclear whether the management agreement is a prepetition contract that is subject to assumption or rejection. While the agreement purports to be effective as of January 1, 2023, it seemingly was only executed postpetition on June 28, 2024. Also, per Docket No. 58-2, the management fee structure was arrived at in 2024, which is inconsistent with the management agreement being effective as of January 1, 2023.

7. In Docket No. 58-2, the Debtor apparently attempts to disclose prepetition transfers to Cashyew Holding. However, Docket No. 58-2 is confusing. The second table on Docket No. 58-2 is difficult to follow after the first three lines. It is unclear what "Total Transfers for 2023" is intended to mean. Transfers to whom? And there are two differing line items titled "Net Profit." It is unclear how the second "Net Profit" figure might have been calculated.

1

8. While Docket No. 58-2 is confusing, creditors should normally be able to compare these disclosures to transfers to insiders reported in item 30 of the Statement of Financial Affairs. Unfortunately, in item 30 of the Amended Statement of Financial Affairs filed at Docket No. 84, the Debtor apparently only disclosed transfers to Michael O'Hare and Tatiana O'Hare, and not to Cashyew Holding, the Debtor's manager and 99% owner. Even in apparently disclosing transfers to the O'Hares, the Debtor attached to the Statement of Financial Affairs a confusing set of schedules which are difficult to follow. Therefore, while the Debtor attempted to disclose transfers to Cashyew Holding in connection with the Motion, the disclosures are confusing and cannot be compared to disclosures that were required to be made in the Statement of Financial Affairs.

9. It is very unclear how the management agreement, if assumed, will affect the Debtor's financial affairs and prospects for reorganizing. Certainly, the Debtor will be required to pay 60% of its gross revenue to Cashyew Holding as a management fee. *See* Docket No. 58-1, p. 4. However, it is unclear whether and the extent to which the Debtor will be required to pay expenses in addition to the management fee, or whether expenses will be paid by Cashyew Holding from the management fee. It appears from Docket No. 58-2 that the Debtor had about $817,000 in expenses (which might or might not have included a 15% management fee) in 2023 compared to about $1,000,000 in revenue. Therefore, it is unclear whether the Debtor will be able to pay both a management fee of 60% of its revenue plus other expenses. It obviously cannot pay both a management fee of 60% of its revenue and other expenses amounting to about 80% of its revenue.

10. The Debtor filed a Monthly Operating Report for June 2024 at Docket No. 91. However, the Debtor's reporting is deficient. At the minimum, the Debtor did not include Exhibits B, C (cash receipts), D (cash disbursements), or F (receivables). Also, the Debtor has not filed a report concerning the postpetition period of May 2024. The Court, creditors, and parties in interest should not be required to evaluate the Motion in the absence of complete and adequate financial disclosures by the Debtor.

WHEREFORE, the UST objects to the Motion for the reasons set forth above, and requests such other relief as the Court deems appropriate.

Dated: July 24, 2024.                           Respectfully submitted,

PATRICK S. LAYNG
UNITED STATES TRUSTEE

/s/ Alan K. Motes
By: Alan K. Motes, #33997
Trial Attorney for the U.S. Trustee
1961 Stout Street, Suite 12-200
Denver, CO  80294
(303) 312-7999
(303) 312-7259 fax
Alan.Motes@usdoj.gov

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on July 24, 2024, a copy of the **UNITED STATES TRUSTEE'S OBJECTION TO DEBTOR'S MOTION TO ASSUME MANAGEMENT AGREEMENT WITH CASHYEW HOLDINGS, INC.** was served on the following parties in compliance with the Federal Rules of Bankruptcy Procedure and the Court's Local Rules:

- Attorney John Cimino, via CM/ECF
- Subchapter V Trustee Joli A. Lofstedt, via CM/ECF

/s/ Alan K. Motes
Office of the United States Trustee