UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| IN RE: ) | |
| ) | Case No. 24-12624 KHT |
| DNC and TCPA LIST SANITIZER, LLC ) | |
| EIN: 83-3868704, ) | Chapter 11, Subchapter V |
| ) | |
| Debtor. ) | |

**AMENDED PLAN OF REORGANIZATION DATED September 25, 2024 FOR SMALL BUSINESS UNDER CHAPTER 11, SUBCHAPTER V**

DNC and TCPA LIST SANITIZER, LLC ("DNC" or "Debtor"), Debtor and Debtor-in-Possession in this Chapter 11 case, sets forth its Amended Plan of Reorganization dated September 25, 2024 as follows:

## I.   INTRODUCTION

1.1 -   This document constitutes the Plan of Reorganization for the Debtor. This document is designed to provide all creditors and parties in interest with sufficient information with which to make an informed vote as to the acceptance or rejection of the Debtor's Plan.

1.2 -   Any terms which are set forth in this document and defined in the Bankruptcy Code shall have the meaning attributed to them as set forth on Appendix 1 attached hereto.

1.3 -   Pursuant to the Bankruptcy Code, only Classes of Claims or Interests that are "impaired" under the Plan are entitled to vote to accept or reject the Plan. Classes of Claims and Interests that are not impaired are not entitled to vote and are deemed to have accepted the Plan. Voting on the Plan shall be pursuant to the provisions of the Bankruptcy Code and the Bankruptcy Rules, and a Class shall have accepted the Plan if the Plan is accepted by at least two-thirds in amount and more than one-half in number of the Allowed Claims of such Class actually voting. Each holder of an Allowed Claim in Classes 2 through 4 shall be entitled to vote to accept or reject the Plan.

1.4 -   Regardless of creditor votes, if the Plan meets all of the applicable requirements of Section 1129(a) of the Bankruptcy Code, other than subsections (8), (10), and (15), the Court may confirm the Plan if it does not discriminate unfairly and is fair and equitable with respect to each class of claims or interests that is impaired under, and has not accepted, the Plan.

1

1.5 -   As discussed more fully below, the Debtor firmly believes that the Plan represents the best alternative for providing the maximum value for creditors.  The Plan provides creditors with a distribution on their Claims in an amount greater than any other potential known option available to the Debtor.

1.6 -   THIS PLAN AND THE DISCLOSURES CONTAINED HEREIN HAVE BEEN NEITHER APPROVED NOR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION.  THE COMMISSION HAS SIMILARLY NOT REVIEWED THE ACCURACY OR ADEQUACY OF THIS PLAN.

## II.     HISTORY AND EVENTS LEADING TO BANKRUPTCY

DNC and TCPA LIST SANITIZER, LLC, is a Colorado limited liability company based out of Colorado Springs, Colorado.  It is primarily an internet-based business.  The Debtor was initially established in March 1, 2019 by Michael O'Hare and his wife, Tania O'Hare.  The O'Hares own 1% of DNC and the other 99% is owned by another company known as Cashyew Holdings, LLC.  Michael O'Hare owns 75% of Cashyew Holdings, LLC and Tania O'Hare owns the remaining 25%.

The Debtor has operated successfully and profitably since its inception.  DNC stands for "do not call" and TCPA is the abbreviation for "Telephone Consumer Protection Act."  Debtor maintains a database of all the individuals who do not want to be called and solicited by third party businesses.  If a business or person calls a person on the do not call list, it could violate the Telephone Consumer Protection Act.  The Debtor will receive a company's marketing list and "sanitize" the list for a fee.  That is, it will match its customer's database against its proprietary "do not call" database and remove the identity/contact details of those individuals who do not want to be called.  DNC customers use this service to prevent violating the TCPA.

Along comes Ringba, LLC (hereinafter "Ringba").  Because the Debtor believed that creditor Ringba stole its database of do not call contacts, Debtor filed suit against Ringba (and others in El Paso County District Court, State of Colorado).  The litigation did not go as planned. Debtor hired attorney Gary Tucker initially who was paid approximately $70,000.00 to represent it.  The court ruled in part that Mr. Tucker was "grossly negligent" in his handling of certain aspects of the case.  Mr. Tucker, who did not withdraw from the case initially, referred Debtor to attorney Jeffrey Cohen.  Debtor paid Mr. Cohen several hundred thousand dollars to continue to litigate the case and represent it.  In time, the case against Ringba was dismissed and a scheduled trial was

vacated. Ringba's defense attorneys sought its attorney's fees and costs. Initially, the request was for $800,000 in attorney fees and approximately $140,000 in costs. The trial court judge awarded Ringba its attorney's fees of $500,000 and its costs of approximately $140,000.00.

Debtor then hired the law firm of Allen Vellone Wolf Helfrich & Factor, P.C. (hereinafter "Allen Vellone") to take over for Mr. Cohen and attempt to clean up the mess. The judgment entered and Allen Vellone filed two appeals for the Debtor. The first appeal, which relates to the dismissal of the original action against Ringba, has been fully briefed and oral argument was held on September 3, 2024. The second appeal, which relates to the award of attorneys' fees and costs, has not been briefed, but the opening brief is due on October 4, 2024. Allen Vellone withdrew from both appeals because it was a creditor in this bankruptcy case. Recently, Michael O'Hare personally paid Allen Vellone's claim in full and Allen Vellone has entered its appearance in both appeals. On August 12, 2024, Debtor filed an ex parte application to employ Allen Vellone to represent it in both appeals, which application has been granted.

Debtor was not able to resolve the Ringba judgment before this case was filed. Ringba, filed a writ of execution on the Debtor's internet payment account, forcing it to file this bankruptcy.

To further the Debtor's restructuring efforts, the Debtor filed its voluntary petition for relief pursuant to Chapter 11, Subchapter V, on May 16, 2024 ("Petition Date") to continue as a going concern.

## III. PLAN OVERVIEW AND CLASSIFICATION OF CLAIMS AND INTERESTS

Below is a summary of classification and treatment of Claims and Interests under the Plan. However, the actual classification and treatment of Claims and Interests are set forth in Section VI of Plan and Section VI controls the specific treatment and supercedes any inconsistencies or incompleteness set forth in the summary below.

| CLASS | STATUS | TREATMENT |
|---|---|---|
| Class 1 - Allowed Claims Pursuant to 11 U.S.C. § 507(a)(4) and (a)(5) – Wage Claims | Unimpaired | Paid in full on the Effective Date of the Plan unless otherwise agreed to by the Debtor and the claimant. *The Debtor does not believe that any Class 1 Claims exist.* |
| Class 2 – Secured Claim held by JP Morgan Chase Bank ("Chase") | Impaired | Allowed in the principal amount owed on the Effective Date of the Plan and provided no default as defined, shall accrue interest at the non-default rate under the loan documents with Chase; Debtor shall make monthly payments to Chase on the 26th of each month in the amount of $2,309.42 with payment in full on or before July 26, 2027. Chase shall retain its lien. |
| Class 3 – Convenience Claims | Unimpaired | Each holder, if any, of an Allowed Convenience Claim shall receive cash in an amount equal to 100% of such Allowed Convenience Claim on the Effective Date |
| Class 4 – General Unsecured Claims | Impaired | Debtor's principal has personally paid the claims of Allen & Vellone (law firm) in full and American Express in full; the remaining claims in Class 4 – General Unsecured Claims are disputed; to the extent Allowed, the holders of Class 4 – General Unsecured Claims will receive payment in full over three years with eight (8) percent interest. |

4

| | | |
|---|---|---|
| Class 6 – Interests | N/A | Equity Interest holders shall maintain their respective membership interests in the Debtor |
| Michael O'hare | | .5% |
| Tania O'hare | | .5% |

## IV. DESCRIPTION OF ASSETS

The values of the Debtor's assets, owned on the Petition Date unless otherwise noted, are set forth in the following chart:

| Asset | Estimated Value |
|---|---|
| Debtor trust account balance Cimino Law Office, LLC COLTAF | $10,188.50 |
| Chase Bank | $141.00 |
| Integrity Bank | $1,646.00 |
| Stripe internet bank | $20,854.00 |
| Table, chair, filing cabinet | $1,500.00 |
| Desktop computer, laptop | $5,000.00 |
| TCPA list | $50,000.00 |
| Website www.tcpalitigatorlist.com | $20,000.00 |
| Legal malpractice claims | Unknown |
| **Total** | **$109,329.50** |

The value of the tangible assets is based on the liquidation value unless otherwise noted. The Debtor is an internet-based company and has few physical assets, consisting of two computers and some office furniture, which are several years old, and would have minimal value in a liquidation. The Debtor's other assets are its website (estimated value at $20,000) and its confidential customer list and "do not call" phone numbers (estimated value $50,000). These values are based on an offer that Ringba made to DNC to purchase the company during negotiations which occurred before this bankruptcy was filed and before the state court action was filed.

Furthermore, Michael O'Hare and his wife Tania O'Hare are the driving forces behind the Debtor. Without their expertise and involvement, the company will have little value. It would cost hundreds of thousands of dollars to replace them. The company cannot function without them

and virtually has no value if they were to abandon the Debtor.

## V. UNCLASSIFIED CLAIMS

### A. UNCLASSIFIED PRIORITY CLAIMS

Claims which are more particularly defined under Section 507(a)(1), 507(a)(2) or 507(a)(8) of the Bankruptcy Code are not classified. These claims consist of Administrative Claims incurred during the course of the Chapter 11 case, claims incurred in an involuntary case (which are not applicable) and certain priority tax claims.

### B. ADMINISTRATIVE CLAIMS

The Debtor retained Cimino Law Office, LLC (hereinafter "CLO") as its bankruptcy counsel. The Debtor provided CLO with pre-petition retainer in the amount of $1,500 and another retainer of $20,000.00 to file this bankruptcy and review two state court appeals. The Debtor estimates that the total legal fees for CLO through Plan confirmation will be $45,000, which will be reduced by the retainer and post-petition payments. The total amount owed to CLO after application of the retainer and post-petition payments is anticipated to be approximately $20,000 depending on litigation over the Plan and resolution of the claim of Cohen Trial, LLC and Ringba, LLC.

A retainer in the sum of $3,000 for the Subchapter V Trustee, Joli Lofstedt, was recently approved by the Court. The approved retainer has been paid by Debtor to the Subchapter V Trustee. Ms. Lofstedt's fees are not expected to exceed $10,000 through the Effective Date of the Plan.

Debtor has employed SL Biggs, a division of SingerLewak LLP ("SL Biggs") as accountants. SL Biggs received a retainer in the amount of $10,000, which was approved by the Court. SL Biggs fees and expenses are not expected to exceed $20,000.00 through the Effective Date of the Plan.

Unpaid Administrative Claims for professionals hired in the case and for the Subchapter V Trustee (collectively, "Professionals") may increase or decrease depending on the issues in the Chapter 11 Case but currently are estimated to be less than $100.00 in the aggregate after application of the Court approved retainers.

Allowed Administrative Claims of Professionals shall receive cash equal to the Allowed amount of such Administrative Claim, or a lesser amount or different treatment

as may be acceptable and agreed to by a particular Professional. If the Plan is confirmed under § 1191(a) of the Bankruptcy Code, Allowed Administrative Claims of Professionals shall be paid on the later of (i) the Effective Date; (ii) the first business day after the date that is ten (10) calendar days after the date on which such Administrative Claim is Allowed by Bankruptcy Court order; or (iii) as otherwise agreed by the Debtor and the Professional. If the Plan is confirmed under § 1191(b) of the Bankruptcy Code, Allowed Administrative Claims of Professionals shall be paid in full in four equal monthly installments commencing on the 15th day of the month following the Effective Date or if not Allowed on the Effective Date, then commencing ten (10) calendar days after the date on which such Administrative Claim is Allowed by Bankruptcy Court order.

Administrative Claims resulting from transactions within the ordinary course of Debtor's business during this Subchapter V Case shall be paid in full in the ordinary course of business when due. Holders of ordinary course Administrative Claims shall not be required to file a request for payment of such Administrative Claims with the Bankruptcy Court.

C. **TAX CLAIMS**

The Internal Revenue Service ("IRS") filed Proof of Claim No. 2-1 on June 7, 2024 asserting an "estimated" priority claim in the amount of $1,400 and in the amount of $200 unsecured based on an estimate for unpaid FICA/FUTA payroll taxes during the tax period from 9/30/2021 to through and including 3/31/2024. This priority tax claim will be paid in full on the Effective Date of the plan.

## VI.   CLASSIFIED CLAIMS

6.1 -   **CLASS 1.   Priority Wage Claims.**  None

6.2 -   **CLASS 2.  JP Morgan Chase Bank.**  6.2 – Class 2. JPMorgan Chase Bank, N.A.  The Credit Agreement, Term Note, and Continuing Security Agreement (collectively, the "Loan Documents") shall remain in effect, Chase shall retain all rights and remedies under the Loan Documents, and Chase shall retain its liens and security interest in the same priority as existed on the Petition Date.  The Class 2 Secured Claim is not impaired by this Plan except as provided below:

6.3 -        a. The Class 2 Secured Claim as reflected in Proof of Claim No. 6, plus post-petition attorneys' fees and non-default interest, is an Allowed Secured Claim.

6.4 -        b. After the Plan is confirmed, the Debtor shall begin making monthly payments to Chase under the Plan on the 26th day of each month including the month the Plan is confirmed. Monthly payments shall be in the amount of Two Thousand Three Hundred Nine and 42/100 Dollars ($2,309.42). To the extent the Allowed Secured Claim has not been paid in full by July 26, 2027, all unpaid principal and accrued and unpaid interest plus attorneys' fees incurred in this bankruptcy case is finally due and payable on July 26, 2027.

6.5 -        c. The Class 2 Secured Claim shall accrue interest at the non-default rate under the Loan Documents (13.45% Per Annum – the "Note Rate") unless there is a default as defined in the Loan Documents that arose after the Effective Date of the Plan or there is an existing default under the Final Cash Collateral Order, in which event the interest rate shall be at the rate of 3.00% Per Annum above the Note Rate, at the option of Chase.

6.6 -   The Class 2 Secured Claim consist of the Allowed Secured Claim of JP Morgan Chase Bank ("JPM") in the sum of $86,329.98. The Class 2 Secured Claim is secured by a lien on substantially all of the Debtor's assets. The Class 2 Secured Claim is impaired by this Plan. The Class 2 Secured Claim will be treated and paid as follows:

    a.    The Class 2 Claim will be allowed in the principal amount owed on the Effective Date of the Plan.

    b.    The Class 2 Claim will bear interest at the rate of: (i) 13.45% per annum commencing on the Effective Date of the Plan; or (ii) if the Class 2 claimant objects to such rate in writing and serves a copy of such objection on the Debtor at least fifteen (15) days prior to the commencement of the confirmation hearing, such rate will be determined by the Court as necessary to satisfy the requirements of 11 U.S.C. §1129(b) of the Code; or (iii) such other rate as agreed by the Debtor and the Class 2 claimant;

    c.    The Class 2 Claimant will retain all liens that secured its Claim as of the Petition Date;

    d.    The Class 2 Claim shall be paid in full over 3 years with monthly payments based on a five-year amortization; however, the Class 2 Claim shall mature and become

due and payable in full on the three (3) year anniversary of the Effective Date of the Plan.

  e.  The Debtor shall be entitled to prepay the Class 2 Claim without premium or penalty; and

  f.  Assuming that the principal balance of the Class 2 Claim on the Effective date is $86,329.98, based upon the interest rate and amortization period, the Class 2 monthly payment will be approximately $3,000.00 and this claim will be paid in full over 36 months.

  6.7 - **CLASS 3. Convenience Claim.** The Class 3: Convenience Class shall consist of the claim filed by Glegal, LLC for $2,528.70 which was assigned Claim No. 5-1. The Class 3 Convenience Claim is unimpaired. The Class 3 Convenience Class claim shall be Allowed in the amount of $2,528.70 and paid in full on the Effective Date of the Plan.

  **6.4**  **CLASS 4. General Unsecured Claims**. Class 4 consists of those unsecured creditors of the Debtor who hold Allowed Claims, other than Allowed Administrative Claims, Allowed Priority Tax Claims and the Allowed Class 3 Convenience Claim, that were either scheduled by the Debtor as undisputed, or subject to timely filed proofs of claim to which the Debtor does not successfully object. Because of personal liability, Debtor's principal paid in the full Claim No. 3-1 in the amount of $49,014.09 filed by American Express National Bank. During the case, Debtor's principal purchased Claim No. 4-1 in the amount of $62,092.80 filed by Allen Vellone Wolf Helfrich & Factor, PC.

  The remaining claims in Class 4 consist of Claim No. 1-1 filed by Adam Young, Tubmanburg Limited and Ringba, LLC ("Ringba Claim") and Claim No. 8-1 in the amount of $200,000 and 9-1 in the amount of $200,976.23 filed by Cohen, LLC ("Cohen Claims"). Debtor disputes both claims filed by Mr. Cohen. The Ringba Claim is subject to two appeals. One appeal was recently heard and a decision rendered affirming the lower court judgment in favor of Ringba. A second appeal is pending regarding the attorney fees and costs awarded in favor of Ringba and against the Debtor for $500,000 and costs of approximately $140,000.00. The opening brief in the second appeal is due on October 4, 2024. If the attorney fee and costs judgment in favor of Ringba is affirmed, Debtor will pay its claim in full over 36 months with 8% statutory interest.

**6.5** Debtor disputes both of the Cohen Claims and has filed motions to disallow both claims in the bankruptcy case. Debtor has a potential legal malpractice claim against Mr. Gary Tucker, GLegal, LLC, Mr. Cohen and Cohen LLC and believes Mr. Cohen's claim should be resolved in that litigation.

If Allowed, Debtor will pay the Allowed Class 4 – General Unsecured Claims in full over 36 months with interest. Until all disputed claims are resolved, Debtor will transfer $40,000 per month to Cashyew Holding, LLC, for sole use by Cashyew or its members, maintain $15,000 per month at the Debtor level to be used to operate DNC based on the budget attached. Revenue in excess of $55,000 will remain in the DNC DIP account to pay all resolved claims. It will remain there until all claims are resolved or paid in full as allowed by the Court.

**EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

7.1 - The Debtor assumes the following executory contracts and unexpired leases as of the Effective Date:
   a. All contracts and leases previously assumed or for which a motion to assume is pending;
   b. All leases and contracts that are not specifically rejected, including insurance contracts.
   c. To the extent it is an executory contract, Debtor assumes the August 26, 2023 loan agreement with JP Morgan Chase Bank and will continue to honor and pay that loan pursuant to the terms of the agreement.

7.2 - The Debtor rejects the following executory contracts and unexpired leases as of the Effective Date: NONE

7.3 - The Debtor will be conclusively deemed to have rejected all executory contracts and unexpired leases for which a motion to reject has been granted or is pending as of the Effective Date. A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than **45** days after the date of the order confirming this Plan.

## VII.    FEASIBILITY OF THE PLAN

The Debtor's Plan is feasible based upon the Debtor's prepared projections, attached hereto as Exhibit A, which reflect a conservative prediction of the Debtor's operations during the term of the Plan. As evidenced by the projections, the Debtor anticipates that its income will be positive each year of the Plan and will generate sufficient revenue to meet its obligations under the Plan. The Debtor has used its best efforts to prepare accurate projections. The Debtor's actual income will fluctuate based on actual sales and changes in the market. The Debtor is basing its projections on performance. A projected budget is attached hereto as Exhibit B.

The Debtor has based payments to Class 4 Unsecured Creditors on Gross Revenue to further support the feasibility of the Plan. As the Debtor's revenue fluctuates, the amount set aside for creditors will fluctuate as well, but the Debtor will not be overburdened with fixed debt payments. The Debtor generally operates at a profit margin of approximately 15% of its gross revenue. The amount proposed for distribution to unsecured creditors is intended to ensure that creditors receive a meaningful recovery on account of their claims, while ensuring that the Debtor can remain current on its operating expenses and ensure payment of the balloon payments required under the Plan.

Post-petition, the Debtor's revenue is growing at approximately 3.5% annually. Debtor anticipates that it will be able to meet or exceed the revenue projected under the Plan.

## VIII.    LIQUIDATION ANALYSIS

The principal alternative to a Debtor's reorganization under Chapter 11 is a conversion of the case to Chapter 7 of the Bankruptcy Code. Chapter 7 requires the liquidation of the Debtor's assets by a Trustee who is appointed by the United States Trustee's office. In a Chapter 7 case, the Chapter 7 Trustee would take over control of the Debtor's assets. The assets would be liquidated and the proceeds distributed to creditors in the order of their priorities.

If the Debtor's case were converted to a case under Chapter 7, the sale of the assets would be insufficient to pay the claims in full. Fair market value of the assets is approximately $110,000 and debt far exceeds that number. Total debt is approximately $1,000,000.00. As a result, the first position secured creditor, JPM would likely seek relief from stay to foreclose on the assets, and the unsecured creditors would receive nothing in a Chapter 7. In contrast, the Debtor's Plan provides that unsecured creditors would receive 100% of their allowed claims over the Repayment

11

Term of thirty-six months. **It is only through confirmation of the Plan that unsecured creditors will receive anything on account of their claims.**

## IX. TAX CONSEQUENCE

The Debtor is not providing tax advice to creditors or interest holders. **U.S. Treasury Regulations require you to be informed that, to the extent this section includes any tax advice, it is not intended or written by the Debtor or its counsel to be used, and cannot be used, for the purpose of avoiding federal tax penalties.** Each party affected by the Plan should consult its own tax advisor for information as to the tax consequences of Plan confirmation. Generally, unsecured creditors should have no tax impact as a result of Plan confirmation. The recovery of each creditor is payment on account of a debt and generally not taxable, unless the creditor wrote off the debt against income in a prior year in which case income may have to be recognized. Interest holders may have very complicated tax effects as a result of Plan confirmation.

## X. IMPLEMENTATION OF THE PLAN

11.1 - **Effectuating the Plan.** On the Effective Date of the Plan, Michael O'Hare and Tania O'Hare shall be appointed pursuant to 11 U.S.C.§1142(b) for the purpose of carrying out the terms of the Plan, and taking all actions deemed necessary or convenient to consummating the terms of the Plan. Michael O'Hare and Tania O'Hare are not paid compensation by Debtor for purposes of 11 U.S.C. § 1129(a)(5). Debtor will continue to pay $40,000 to Cashyew Holdings, Inc. for management services.

11.2 - **Effective Date.** The Plan will become effective on the date the Bankruptcy Court enters its Order confirming the Plan and said Order becomes final and non-appealable (the "Effective Date").

11.3 - **Disputed Claims.** Any claimant or the Debtor may file an objection to any claim no later than 45 days following the Effective Date. The Debtor shall have standing to commence, prosecute, and settle claim objections, and avoidance actions without need for Court approval. The Debtor does not believe there are any avoidance actions in this case.

> Disputed Claims will not receive any distributions under the Plan until such claim becomes and Allowed Claim. Upon the allowance of a Disputed Claim, by either compromise and settlement or by Final Order, prompt distribution shall be made to the holder thereof of the distributions to which such holder would have been entitled had the Claim been Allowed

12

as of the Effective Date of the Plan, without interest. Future distributions on such Claim shall be made consistent with the timing and terms of distribution to other members of the same Class. No holder of a Disputed Claim shall be entitled to recover any distributions made to other holders of Allowed Claims regardless of any delay in obtaining an order allowing or estimating a Disputed Claim.

11.4 - **Administrative Claim Bar Date.** Any creditor seeking allowance and payment of an Administrative Claim must do so no later than 45 days following the entry of the Order confirming the Plan.

11.5 - **Final Decree.** The Debtor will request entry of a final decree closing the case on or before the later of the date all Claim objections and any pending litigation is concluded or as otherwise in compliance with orders of the Court and the Bankruptcy Code and Rules, or such other time as is appropriate under the proceedings of the case.

11.6 - **Discharge.** If the Debtor's Plan is confirmed under § 1191(a), on the Effective Date of the Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtor will not be discharged of any debt:

(i) imposed by this Plan; or
(ii) to the extent provided in § 1141(d)(6).

If the Debtor's Plan is confirmed through a nonconsensual confirmation under § 1191(b), confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments due within the first three (3) years of this Plan, or as otherwise provided in § 1192 of the Code, and the creditors' rights in the event of default may be greater. The Debtor will not be discharged from any debt:

(i) on which the last payment is due after the first three (3) years of the plan, or as otherwise provided in § 1192; or
(ii) excepted from discharge under § 523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

**11.7 - Contractual Relationship.** Contractual Relationship. The Plan, upon confirmation, constitutes a new contractual relationship by and between the Debtor and its creditors. In the event of a default by the Debtor under the Plan, including failure to timely file and pay any post-petition taxes, creditors shall be entitled to enforce all rights and remedies against

the Debtor for breach of contract of the Plan. Any secured creditor claiming a breach of the Plan by the Debtor shall be able to enforce all of its rights and remedies including foreclosure of its deed of trust, security agreement, lien, or mortgage pursuant to applicable law and the terms of any relevant documents. For avoidance of doubt, any stay or injunction, pursuant to § 362 of the Code or otherwise, is automatically lifted upon such an event of default. Notwithstanding the foregoing, any creditor claiming a breach of the Plan by the Debtor must provide written notice to the Debtor of the claimed default, which shall be limited to three non-consecutive notices by any particular creditor for the life of the Plan. The notice must provide the Debtor via e-mail to its counsel JC925Ave@Yahoo.com a ten-day period within which to cure the claimed default. Upon the Debtor's failure to cure the default within such ten-day period, the creditor may, without any further notice or opportunity to cure, fully exercise its rights and remedies pursuant to applicable law and the terms of any relevant documents, including seeking to enforce the terms of the Plan or dismissal or conversion of the Debtor's case to a case under Chapter 7. As the Debtor's Plan is confirmed through a non-consensual confirmation under 11 U.S.C. § 1191(b), creditors may have greater rights in the event of default, as the Debtor will not receive a discharge until the conclusion of payments to Class 4 unsecured creditors under the Plan.

The Subchapter V Trustee will remain to collect and distribute payments to Class 4 creditors under the Plan. In the event of a default under this Plan, the Subchapter V Trustee shall have the right to seek to enforce the terms of the Plan, to be heard on any motion or action seeking enforcement of the Plan, and to take such action as may otherwise be necessary and appropriate to carry out all statutory duties required of the Subchapter V Trustee.

11.8 - **Executory Contracts and Unexpired Leases.** All executory contracts and unexpired leases which were entered into by the Debtor pre-petition, and not assumed by order of the Bankruptcy Court, are assumed as of the Effective Date of the Plan, subject to Article VII of this Plan.

11.9 - **Revestment.** The entry of an Order of Confirmation pursuant to 11 U.S.C. Section 1191(a) shall revest in the Debtor all property of the Estate free and clear of Liens except those specifically set forth in the Plan. If the Plan is confirmed pursuant to 11 U.S.C. Section 1191(b), property of the Estate shall not revest in the Debtor until all Plan payments have been completed.

11.10 - **Retention of Jurisdiction**. Notwithstanding confirmation of the Plan, the Court shall retain jurisdiction for the following purposes:

    a. Determination of the allowability of claims upon objection to such claims by the Debtor-in-Possession or by any other party in interest;

    b. Determination of the request for payment of claims entitled to priority under 11 U.S.C. Section 507(a)(1), including compensation of the parties entitled thereto;

    c. Resolution of any disputes regarding interpretation of the Plan;

    d. Implementation of the provisions of the Plan and entry of orders in aid of consummation of the Plan, including without limitation, appropriate orders to protect the revested Debtor from action by creditors;

    e. Modification of the Plan pursuant to 11 U.S.C. §1193;

    f. Adjudication of any causes of action, including avoiding powers actions, brought by the Debtor-in-Possession, by the representative of the estate or by a Trustee appointed pursuant to the Code;

    g. Adjudication of any cause of action brought by the Debtor-in-Possession, by a representative of the estate, or by a Trustee appointed pursuant to the Code, or the revested Debtor exercising rights and powers as provided in 11 U.S.C. §542-549. This section shall not be construed to limit any other power or right which the Debtor may possess under any section of the Code; and

    h. Entry of a final decree.

11.11 - **Satisfaction of Claims.** Except as otherwise required by or provided in this Plan, the Debtor shall receive a discharge on the confirmation date pursuant to Section 1141(d). Confirmation of the Plan shall constitute a modification of any note or obligation for which specification and treatment is provided under the Plan as set forth in the Plan. Any obligation or note, previously in default, so modified, shall be cured as modified as of the Confirmation Date. This provision shall be operable regardless of whether the Plan provides for any obligation to be evidenced by a rewritten loan or security document following confirmation of the Plan.

11.12 - **Headings**. The headings used in the Plan are for convenience of reference only and shall not limit or in any manner affect the meaning or interpretation of the Plan

11.13 -  **Notices.**  All notices, requests, demands, or other communications required or permitted in this Plan must be given in writing to the party(ies) to be notified.  All communications will be deemed delivered when received at the following addresses:

    a.    DNC and TCPA Sanitizer, LLC
         985 Pico Point
         Colorado Springs, CO 80905

         With a copy to:
         John A. Cimino, Esq.
         Cimino Law Office, LLC
         5500 East Yale Avenue, Suite 201a
         Denver, CO 80222
         Email: JC925Ave@yahoo.com

    b.    To an allowed claimant, at the addresses set forth in the allowed Proof of Claim, if filed, otherwise, at the address set forth for the claimant in the Debtor's Schedules filed with the Court.

    c.    To the IRS, by email to the attention of Denette M. Polk at Denette.M.Polk@irs.gov.  Her phone number is 303-603-3804.

11.14 -  **Unclaimed Payments**.  If a person or entity entitled to receive a payment or distribution pursuant to this Plan, exclusive of the IRS, fails to negotiate a check, accept a distribution or leave a forwarding address in the event notice cannot be provided as set forth in paragraph 11.13, within one (1) year of the Effective Date of the Plan, the person or entity is deemed to have released and abandoned any right to payment or distribution under the Plan.

11.15 -  **Subchapter V Trustee and Plan Payments**.  If the Plan is confirmed under section 1191(a) of the Bankruptcy Code, the Subchapter V Trustee's services shall end with substantial consummation of the Plan under section 1183(c)(1) of the Bankruptcy Code. If the Plan is confirmed under section 1191(b) of the Bankruptcy Code, (a) the Subchapter V Trustee shall remain in place until all Plan payments have been made; (b) Debtor shall provide regular reporting to the Subchapter V Trustee at her request regarding Debtor's operations; and (c) the Subchapter V trustee may be entitled to additional compensation for services provided after confirmation and, if so, may file fee applications throughout the Plan.  Upon approval of the Subchapter V Trustee's fee applications, if applicable, the Debtor shall pay the allowed fee amounts due to the

Subchapter V Trustee with 15 days after the order allowing the same, unless the Subchapter V Trustee agrees to different treatment. Failure to pay the post-Effective Date fees of the Subchapter V trustee when due shall be deemed a default under the Plan.

11.16 - **Substantial Consummation**. Pursuant to 11 U.S.C. § 1183(c)(2), within fourteen (14) days after the Plan has been substantially consummated, the Debtor shall file a notice of the same with the Court, and serve the Subchapter V trustee, the United States trustee, and all parties in interest.

## XI. CONFIRMATION REQUEST

The Debtor, as proponent of the Plan, requests confirmation of the Plan pursuant to 11 U.S.C. §1191(a). The Court may confirm the Plan pursuant to § 1191(b) if it does not discriminate unfairly and is fair and equitable with respect to each class of Claims or Interests that is impaired under, and has not accepted, the Plan.

DATED: September 25, 2024         DNC and TCPA LIST SANITIZER, LLC

                                  By: *s/ Michael O'Hare*
                                       Michael O'Hare ~ member

DATED: September 25, 2024         DNC and TCPA LIST SANITIZER, LLC

                                  By: *s/ Tania O'Hare*
                                       Tania O'Hare ~ member


APPROVED AS TO FORM:

*s/ John A. Cimino*
John A. Cimino, Esq.. SCN 14032
CIMINO LAW OFFICE, LLC
5500 East Yale Avenue, Suite 201a
Denver, CO 80222
Telephone: 720-434-0434
Email: JC925Ave@yahoo.com

ATTORNEYS FOR DNC and TCPA LIST SANITIZER, LLC
DEBTOR AND DEBTOR-IN-POSSESSION

**APPENDIX**

**DEFINITIONS**

Administrative Claim shall mean a Claim for payment of an administrative expense of a kind specified in § 503(b) or 1114(e)(2) of the Bankruptcy Code and entitled to priority pursuant to § 507(a)(2) of the Bankruptcy Code, including, but not limited to: (a) the actual, necessary costs and expenses, incurred after the Petition Date, of preserving the estate and operating the business of the Debtor, including wages, salaries, or commissions for services rendered after the commencement of the Chapter 11 Case; (b) Professional Fee Claims; (c) all fees and charges assessed against the estates under 28 U.S.C. § 1930; and (d) all Allowed Claims that are entitled to be treated as Administrative Claims pursuant to a Final Order of the Bankruptcy Court under § 546(c)(2) of the Bankruptcy Code.

Allowed Claim shall mean a claim in respect of which a Proof of Claim has been filed with the Court within the applicable time period of limitation fixed by Court Order in this case or scheduled in the list of creditors prepared and filed with the Court pursuant to Bankruptcy Rule 1007(b) and not listed as disputed, contingent or unliquidated as to amount, in either case as to which no timely objection to the allowance thereof has been filed pursuant to Bankruptcy Rules 3001 and 3007 or as to which any such objection has been determined by a Final Order.

Allowed Secured Claim shall mean an allowed claim secured by a lien, security interest or other charge against or interest in property in which the Debtor has an interest, or which is subject to setoff under § 553 of the Code, to the extent of the value (determined in accordance with § 506(a) of the Code) of the interest of the holder of any such allowed claim and the Debtor's interest in such property or to the extent of the amount subject to such setoff as the case may be.

Avoidance Actions means each Debtor's estate's interest in any and all Claims, rights and causes of action which have been or may be commenced by or on behalf of the Debtor to avoid and recover any transfers of property determined to be preferential, fraudulent or otherwise avoidable pursuant to §§ 544, 545, 547, 548, 549, 550 or 553 of the Bankruptcy Code, or under any other applicable law, or otherwise subject to equitable

subordination under §510 of the Bankruptcy Code, regardless of whether or not such actions have been commenced prior to the Effective Date.

Claim shall mean any right to payment, or right to any equitable remedy for breach of performance if such breach gives rise to the right to payment, against the Debtor in existence on or as of the Petition Date, whether or not such right to payment or right to an equitable remedy is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, secured or unsecured.

Class shall mean any Class into which Allowed Claims are classified pursuant to Article III.

Class 1-6 and Claims and Interests shall mean the Allowed Claims and Interests so classified in Part III.

Code shall mean the Bankruptcy Code, 11 U.S.C. § 101 *et seq.* and any amendments thereof.

Confirmation Date shall mean the date upon which the Order of Confirmation is entered by the Court.

Court shall mean the United States Bankruptcy Court for the District of Colorado in which the Debtor's Chapter 11 case is pending, pursuant to which this Plan is proposed, and any Court having competent jurisdiction to hear appeal or certiorari proceedings therefrom.

Disputed Claim shall mean any Claim which is not an Allowed Claim, including, without limitation, any Claim designated as disputed, contingent or unliquidated in Debtor's schedules filed in connection with this case, or any Claim against which an objection to the allowance thereof has been interposed, and as to which no Final Order has been entered.

Effective Date of the Plan shall mean fourteen days after the date on which the Order of Confirmation is entered or if a stay is entered pending appeal of the Order of Confirmation, the date on which the stay is no longer in effect.

Gross Revenue shall mean all gross cash receipts of the Debtor for any given time period, less all taxes collected by the Debtor from customers (i.e. sales taxes).

Net Revenue shall mean all Gross Revenue of the Debtor less all expenses necessary for the Debtor's ongoing business operations.

Order of Confirmation shall mean the Order entered by the Court confirming the Plan in accordance with the provisions of Chapter 11 of the Code.

Petition Date shall mean the date on which the voluntary petition was filed by the Debtor on May 16, 2024.

Plan shall mean this Plan of Reorganization, as amended in accordance with the terms hereof or modified in accordance with the Code, including all exhibits and schedules attached hereto or referenced herein or therein.

Priority Claim shall mean any pre-petition Claim entitled to a priority in payment under § 507(a) of the Code, but shall not include any Administrative Claim or Tax Claim.

Professional Fees shall mean the Administrative Claims for compensation and reimbursement submitted pursuant to Section 330, 331 and 503(b) of the Code by a Professional Person.

Rules shall mean the Federal Rules of Bankruptcy Procedure and Local Bankruptcy Rules for the District of Colorado as adopted by the Court.

Tax Claim shall mean any unsecured Claim of a governmental unit for taxes entitled to priority pursuant to 11 U.S.C. § 507(a)(8).

Unclassified Priority Claims shall mean Claims pursuant to Section 507(a)(2) which are Administrative Claims allowed under Section 503(b) of the Code and any fees and charges against the estate under Chapter 123 of Title 28 of the United States Code and shall further mean Allowed Unsecured Claims of governmental units to the extent provided for in Section 507(a)(8) of the Code.

Other Definitions. Unless the context otherwise requires, any capitalized term used and not defined herein or elsewhere in the Plan but that is defined in the Code or Rules shall have the meaning set forth therein