# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| In re: ) | |
| ) | |
| DNC AND TCPA LIST SANITIZER, LLC, ) | Case No. 24-12624 KHT |
| ) | Chapter 11 |
| Debtor. ) | |

## OBJECTION TO DEBTOR'S MOTION FOR AUTHORITY TO USE CASH COLLATERAL (FILED OCTOBER 2, 2024)

Adam Young, Tubmanburg Limited and Ringba, LLC (collectively, "Ringba"), by and through its counsel, Lewis Roca Rothgerber Christie LLP, respectfully files its Objection to Debtor's Motion for Authority to Use Cash Collateral (the "Objection") filed October 2, 2024. In support of the Objection, Ringba states as follows:

### PRELIMINARY STATEMENT

The Debtor's Chapter 11 Subchapter V case was filed on May 16, 2024. Some five months later, notwithstanding the secured creditor's nonconsent and this Court's lack of prior approval, the Debtor *now*, again, seeks authority to use cash collateral. This is the Debtor's third attempt to obtain Court approval to use cash collateral. The other attempts have been either on an *ex parte* basis and denied, objected to, withdrawn or otherwise not approved due to the Debtor's continued bungling of the use of cash collateral and the case in general. Instead of receiving consent from JPMorgan Chase Bank N.A. ("Chase") or court authority, the Debtor has simply thrown caution to the wind and indiscriminately used cash collateral to pay insiders such as Cashyew and the O'Hares significant amounts of money that could be used to pay creditors' claims.

The Debtor's request to use cash collateral must be juxtaposed with the Debtor's previously filed Motion to Assume which sought assumption of a management agreement with Cashyew

126390915.1

- 2 -

Holding LLC, its 99% owner. Three objections were previously filed (in July 2024) in response to the Motion to Assume. Curiously, even though the objections have raised significant concerns regarding the propriety of the Motion to Assume, as well as the use of cash collateral to fund the agreement, the Debtor has done nothing to advance the adjudication of the Motion to Assume. Instead, the Debtor now attempts, yet again for the third time, to obviate the three objections and belatedly requests approval to use cash collateral to pay the very management expenses to which two creditors and the United States Trustee have previously objected.

In the Debtor's latest attempt to use cash collateral, the Debtor attaches a 12-month budget of which 5 months have already occurred (May-September). The budget, while now different than the budget attached to the Motion to Assume, remains problematic. Now, the Debtor simply inserts $40,000 as a monthly expense that will be paid to Cashyew. The Debtor also has provided absolutely no support for the $40,000 budget figure. Indeed, the Debtor's principal,. Mr. O'Hare, testified at his Rule 2004 examination that the expenses set forth in previous budget(s) had no basis in reality and were simply a calculation arrived at in order to arrive at the 60% of gross income number contemplated by the Motion to Assume. Because the Debtor has not sought a determination of the Motion to Assume, the Court has not had the opportunity to determine whether: (i) the Debtor can assume a postpetition management agreement with its insider that pays 60% of the Debtor's *gross* revenues to Cashyew; (ii) the assumption of the postpetition agreement is in the best interest of the estate; and (iii) the expenses in the budget attached to the Motion to Assume are proper and appropriate under the circumstances of this case. Knowing this to be the case, the Debtor pivots and seeks to gain court approval to pay Cashyew, only this time through its Third Cash Collateral Motion. The Court should deny the Debtor's request to use cash collateral, or alternatively require the Debtor to demonstrate what expenses are truly required to

be paid to operate the business. Under no circumstances should the Third Cash Collateral Motion be granted until this Court adjudicates the Motion to Assume and Ringba's Motion to Convert.

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this Chapter 11 case pursuant to 28 U.S.C. §§ 157(a) and (b) and 1334(a) and (b). This matter constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O).

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1409.

## PROCEDURAL BACKGROUND

**A. Pre and Postpetition Background**

3. DNC and TCPA List Sanitizer, LLC (the "Debtor") filed for relief under Chapter 11 of the Bankruptcy Code on May 16, 2024 (the "Petition Date"). In its Voluntary Petition, the Debtor elected to proceed under Subchapter V of Chapter 11. Accordingly, the Debtor's Chapter 11 plan was due on or before August 14, 2024. *See* Docket No. 1.

4. The Debtor is primarily owned by Cashyew, which holds a 99% equity interest in the Debtor. The remaining ownership interests in the Debtor are held by Michael O'Hare (.50%), the Debtor's CEO, and Tatiana O'Hare (.50%), the Debtor's Secretary. *See* Statement of Financial Affairs No. 28. Cashyew is wholly owned by the O'Hares. *See* Report (as defined below), ¶ 8.

5. Joli A. Lofstedt, Esq. is the duly appointed and acting Subchapter V Trustee (the "Trustee") in the Debtor's Bankruptcy Case.

6. Ringba is listed on the Debtor's Schedule F as a *disputed* unsecured creditor in the amount of $640,415.00, relating to a "Judgment entered for attorneys' fees and costs." *See* Schedule F, 3.1. The Judgment stems from an Order re Forthwith Request for Emergency Hearing and terminating sanctions entered by the District Court, El Paso County, Colorado in Case No.

2021CV31668 (the "State Court Litigation"). In the State Court Litigation, the El Paso County District Court (the "State Court") entered terminating sanctions against the Debtor for its concealment of evidence and recordings that went to the heart of the State Court Litigation. The State Court also entered an award of attorneys' fees and costs to Ringba.

7. The Debtor has appealed the Judgment terminating his State Court case and awarding attorneys' fees and costs to the Colorado Court of Appeals in Court of Appeals Case No. 2024CA265. The Debtor has also appealed three other orders entered by the State Court in Court of Appeals Case No. 2023CA891. The Debtor did not obtain a supersedes bond relating to its appeals.

8. On June 26, 2024, Chase filed its Notice of Non-Consent to Debtor's Use of Cash Collateral (Docket No. 50) indicating that Chase claims a properly perfected security interest in the Debtor's assets (a blanket lien) and that it did *not* consent to the Debtor's use of its cash collateral absent express agreement or subsequent Court order.[1]

9. On July 9, 2024, the Debtor filed its untimely Pre-Status Conference Report (Docket No. 55) (the "Report"). The Report indicates, *inter alia*, that "Mr. and Mrs. O'Hare receive a draw each month in the appropriate [sic] sum of $20,000 each. Cashyew Holding[], LLC is separately paid a management fee (based on certain percentages of revenue) and receives approximately $50,000 per month from the Debtor." Report, ¶ 15.

10. On July 11, 2024, the Court convened a Status Conference in the case. *See* Docket No. 65. At the Status Conference, the Debtor indicated it would be seeking an extension of time to file a plan and essentially would be requesting the Court hold its Bankruptcy Case in abeyance

---

[1] On September 18, 2024, Chase filed its Objection of Secured Creditor JP Morgan Chase Bank, N.A. to Debtor's Motion for Authority to Use Cash Collateral (Docket No. 156), reaffirming its objection and non-consent to the Debtor's use of cash collateral.

to allow the appeal process to play out in the Colorado Court of Appeals. *See also*, Report p. 3, ¶¶ 16-17. At the Status and Scheduling Conference, the Court indicated, *inter alia* that: (i) it would not hold the case in abeyance pending resolution of the state court appeals and it already had concerns about the case; (ii) it was going to take much work for the Debtor to get the case in compliance with Code requirements; and (iii) that the Debtor would have a "short chain" to ready its case for confirmation.

11. Since the Status Conference, the employment of Debtor's counsel has been challenged pursuant to Section 327(a) and (e), relating to counsel's ability to be employed as Debtor's bankruptcy, appellate or malpractice counsel in the Colorado state courts. *See* Docket Nos. 49, 82, 114. A hearing was held on September 24, 2024 to adjudicate the employment issues. Since the hearing, Allen Vellone (defined below) and the firm of Wadsworth Garber Warner Conrardy, P.C. have separately entered their appearances in this case and sought to become the Debtor's bankruptcy counsel. *See e.g.*, Docket Nos. 195, 205, 206 and 208.

12. On August 9, 2024, Allen Vellone Wolf Helfrich & Factor, P.C. ("Allen Vellone"), a prepetition creditor owed $62,021 by the Debtor, assigned its Proof of Claim No. 4 to Michael O'Hare. Mr. O'Hare then apparently paid the Allen Vellone prepetition claim. *See* Docket No. 115. On August 15, 2024, the Court entered an Order employing Allen Vellone as special litigation counsel. *See* Docket No. 125.

**B.     The Rule 2004 Examinations**

13. Early in the Debtor's bankruptcy case, Ringba filed its *Ex Parte* Motion for Order Authorizing Rule 2004 Examination of Debtor DNC and TCPA List Sanitizer, LLC and Cashyew Holding (the "2004 Motion"). *See* Docket No. 22. The Court granted the 2004 Motion on May

126390915.1

31, 2024.  *See* Docket No. 24.  The Debtor has provided a relatively small amount of the information requested by Ringba, but recently sat for its examination on September 25, 2024.[2]

15. On August 28, 2024, the Debtor filed a motion for Rule 2004 Examination of Ringba (the "Debtor's Rule 2004 Motion").  *See* Docket No. 135.  The next day, Ringba filed an Unopposed Emergency Motion to Seal Ex Parte Motion for Order Authorizing Rule 2004 Examination of Ringba (the "Seal Motion").  *See* Docket No. 137.  The basis for the Seal Motion was the Debtor's purposeful disclosure of matters that were deemed to be "Confidential" and "AEO" and were deemed to be subject to a protective order in the State Court Litigation.  On the same day, the Court entered its Seal Order (Docket No. 138) and thereafter on August 30, 2024, entered an Order denying the Debtor's Rule 2004 Motion as it pertained to Ringba.  *See* Docket No. 140.  The Court's Order noted that the Debtor's Rule 2004 Motion did not fall within the appropriate scope of FED. R. BANKR. P. 2004.  *See id.*

C. **The Motion to Assume Management Agreement**

15. On July 10, 2024, the Debtor filed its Debtor's Motion to Assume Management Agreement with Cashyew Holdings, Inc. (Docket No. 58) (the "Motion to Assume").  The Motion to Assume sought Court approval to assume a Management Services Agreement (the "Agreement") between the Debtor and Cashyew under which the Debtor would pay Cashyew a 60% management fee (of Debtor's gross revenues) on a monthly basis.  Ringba, Chase and the United States Trustee have all objected to the Motion to Assume (Docket Nos. 88, 100 and 102).  The three objections argue, *inter alia*, that the Debtor cannot assume a postpetition management agreement, the Motion to Assume is bereft of key details and information and that the management agreement is not in the best interest of creditors and the estate.

---

[2] The Debtor's principal, Mr. O'Hare, fell ill immediately prior to first set the Rule 2004 examination which was reset to September 25, 2024.

126390915.1

**D.     The Plan of Reorganization**

16.     On August 14, 2024, Debtor filed its Subchapter V plan pursuant to Section 1189(b) (the "Plan"). *See* Docket No. 123. The Court has set a confirmation hearing for October 3, 2024. *See* Docket No. 127. The Plan, as it relates to Ringba, indicates that any amounts reserved for Ringba will be "escrowed" by the Subchapter V trustee pending the resolution of the two appeals and Ringba will receive nothing during the pendency of the Plan. *See* Plan, pp. 4-5. Otherwise, the Plan attempts to classify similarly situated creditors in different classes and not pay (or significantly curtail payments) certain creditors relating to the State Court Litigation.

17.     On September 25, 2024, the Debtor filed its Amended Plan of Reorganization Dated September 25, 20024 for Small Business Under Chapter 11, Subchapter V (Docket No. 173) (the "Amended Plan").

18.     On October 3, 2024, the Debtor indicated to the Court and creditors at a Status and Scheduling Hearing, and presumably based on the objections it received to the Plan, that it will not be prosecuting *either* the Plan or the Amended Plan on file.

**E.     The Debtor's Motion to Use Cash Collateral**

19.     On August 28, 2024, the Debtor filed its Debtor's Ex Parte Motion to Approve Stipulated Final Cash Collateral Agreement (Docket No. 134) (the "Ex Parte Motion"). The Ex Parte Motion sought to have the Court approve a stipulated cash collateral agreement on an *ex parte* basis. On the same date, Ringba filed an objection to the Ex Parte Motion noting that FED. R. BANKR. P. 4001(b)(1) generally required notice and an opportunity to object to the use of cash collateral and that the Ex Parte Motion was deficient as to notice and content. On August 30, 2024, the Court entered an Order denying the Ex Parte Motion noting that the motion requested relief that cannot be granted *ex parte*. *See* Docket No. 139.

126390915.1

20. Subsequently, the Debtor has filed its Motion for Authority to Use Cash Collateral (Docket No. 149) (the "Cash Collateral Motion") and Notice requiring creditors and parties in interest to object on or before September 24, 2024. *See* Docket No. 150. JP Morgan Chase Bank N.A. and Ringba both objected to the Cash Collateral Motion. *See* Docket Nos. 156 and 159. Thereafter, the Debtor withdrew the Cash Collateral Motion. *See* Docket No. 163.

21. Thereafter, on October 2, 2024, the Debtor filed its third motion to use cash collateral. *See* Docket No. 189 (the "Third Cash Collateral Motion"). The Third Cash Collateral Motion suffers from the same or similar deficiencies as the Cash Collateral Motion as set forth below.

22. On October 9, 2024, the Debtor filed its Notice of Filing Agreed to Budget and Cash Collateral Order. *See* Docket No. 224. The Amended Budget continues to pay Cashyew $35,000 per month, in addition to the Debtor's monthly expenses. *See* Budget, Exhibit B.

**F.   Ringba's Motion to Convert Case to Chapter 7**

23. On September 10, 2024, Ringba filed its Motion to Convert Case From Chapter 11 to Chapter 7 (the "Motion to Convert"). *See* Docket No. 151. Objections to the Motion to Convert were due on or before September 24, 2024. The Debtor and Chase objected to the Motion to Convert. A preliminary hearing was set on the Motion to Convert for October 8, 2024 at 9:30 a.m. *See* Docket No. 152. A final evidentiary hearing on the Motion to Convert is set for October 24-25, 2024.

**OBJECTION**

**A.   The Debtor's Request to Use Cash Collateral is an End-Run Around the Objections Filed to its Motion to Assume Agreement With Cashyew Holding, LLC**

24. The Debtor filed its Motion to Assume a postpetition contract with its owner (Cashyew) earlier in the case. *See* Docket No. 58. The Debtor requested approval to assume a

management services contract with Cashyew that would allow the Debtor to pay Cashyew 60% of the Debtor's *gross* income to Cashyew for alleged monthly management services. The Debtor received three objections from Ringba, Chase and the United States Trustee. The three objections are summarized as follows:

    a.    the Management Agreement is: (i) a postpetition agreement that cannot be assumed under Section 365(a); (ii) not in the best interest of the estate and is instead a significant determinant to the estate; (iii) not based on any articulated business judgment of the Debtor; and (iv) solely benefits the Debtor's insiders, Mr. and Mrs. O'Hare and Cashyew (Ringba, Docket No. 88);

    b.    The Motion to Assume does not explain how it benefits the estate, it lacks significant disclosures and Chase objects and does not consent to the use of cash collateral to pay Cashyew (Chase, Docket Nos. 100, 156); and

    c.    The Management Agreement may not be a prepetition agreement, the disclosures associated with the Motion to Assume are confusing and cannot be reconciled with the Debtor's Statement of Financial Affairs and may negatively impact the Debtor's ability to reorganize if the management agreement is allowed to be assumed (United States Trustee, Docket No. 102).

25. Since the three objections were filed (the latest objection was filed on July 24, 2024), the Debtor has done absolutely nothing to advance the adjudication of the Motion to Assume. Instead, it appears that the Debtor is *now* attempting to use the Third Cash Collateral Motion (similar to the Cash Collateral Motion) as an end-run around the three objections filed to the Motion to Assume.

26. For example, in reviewing the Debtor's Historical Post-Petition and Six-Month Cash Collateral Budget (the "Budget") attached to the Third Cash Collateral Motion with the "budget" attached to the Motion to Assume, the Court will see that the budgets are largely similar, although different. The expenses set forth in both budgets are highly speculative, unsupported by the Debtor's bankruptcy filing and the Third Cash Collateral Motion appears to simply be another

- 9 -

126390915.1

way to seek payment of the expenses set forth in the Management Agreement attached to the Motion to Assume. *See In re Morning Star Ranch*, 64 B.R. 818, 823 (Bankr. D. Colo. 1986) ("the Debtor may pay the ordinary and necessary expenses of operation of the property and the costs of care, preservation and maintenance . . . ."). The Debtor's Motion to Assume should be adjudicated prior to the Court allowing any of the expenses set forth in Exhibit A to be used as cash collateral.

27. Also, in the most recent Budget, there remains a payment to Cashyew in the amount of $40,000 per month classified as "Owner Comp - To Cashyew Transfer to Cashyew." This expense appears to be yet another attempt to pay Cashyew pursuant to the postpetition Management Agreement allegedly entered into between the Debtor and Cashyew prepetition. This expense is not an ordinary and necessary expense for operation of the property. Rather, Mr. O'Hare has testified previously that the amount paid to Cashyew has no basis in reality and instead is simply a percentage of the Debtor's gross revenue. Although the amount has apparently decreased, the problem remains that the amount paid to Cashyew has no factual underpinnings and is simply another attempt to siphon money out of the Debtor to benefit Cashyew and the O'Hares at the expense of creditors.

28. Also, as now acknowledged by Mr. O'Hare (at the October 3rd and 8th hearings), the Debtor has been using cash collateral without the consent of Chase and without the Court's permission since the beginning of the case (May 16, 2024). Now, five months after the Petition Date, the Debtor, after attempting to (i) obtain *ex parte* relief for the use of cash collateral, (ii) seek approval of the original Cash Collateral Motion and Exhibit A, and (iii) now having filed the Third Cash Collateral Motion, subsume the entire purpose of the Motion to Assume. The Third Cash Collateral Motion should not be approved <u>at all</u>, but certainly not until the Motion to Assume and

Ringba's Motion to Convert have been adjudicated (see below regarding Ringba's Motion to Convert).

**B.  The Third Cash Collateral Motion *Still* Does Not Comply with L.B.R. 4001-2**

29. L.B.R. 4001-2 requires basic information to be included in any "Financing Motion" (including the request to use cash collateral) filed with the Court:

> (1) Mandatory Inclusions. All Financing Motions must also provide a summary of the essential terms of the proposed use of cash collateral and/or financing including, but not limited to:
>
> > (A) maximum borrowing available on a final basis;
> > (B) interim borrowing limit;
> > (C) borrowing conditions;
> > (D) interest rate;
> > (E) fees, costs and charges paid or payable by debtor or any other person or entity;
> > (F) maturity;
> > (G) events of default;
> > (H) remedies in the event of default;
> > (I) use of funds limitations;
> > (J) protections afforded under 11 U.S.C. §§ 363 and 364; and
> > (K) line item budget for both the interim and final order periods, unless the Court orders otherwise.

L.B.R. 4001-2(a)(1).

30. The Debtor, yet again, fails to include the most basic information required by Local Rule. The Third Cash Collateral Motion addresses only some of the above requirements required by L.B.R. 4001-2(a)(1). Numerous other requirements are not addressed in the Third Cash Collateral Motion and attendant pleadings, making the Debtor's Third Cash Collateral Motion facially incapable of being granted.

C. **Ringba's Motion to Convert Case to Chapter 7 Case, Based in Part, on the Debtor's Continued Use of Cash Collateral Without Consent and/or Authorization from this Court**

31. Ringba alerted the Debtor to its failure to seek the use of cash collateral and further indicated that it would be seeking conversion of the Debtor's bankruptcy case to Chapter 7 because, *inter alia*, of the significant use of the Debtor's monthly cash to pay insiders without Court approval or creditor consent. These payments should be investigated by a Chapter 7 Trustee as they are significant, continuing and without care for the creditors in this case. The fact that the Debtor has sought permission to use cash collateral, either through the *Ex Parte* Motion, the Cash Collateral Motion or the Third Cash Collateral Motion, was spurred by Ringba's concerns about the Debtor dissipating most of its cash, which the Debtor unabashedly admits is being used to pay the O'Hares and Cashyew without any supervision, control or approval.

32. Section 1112(b)(4)(D) provides that the "unauthorized use of cash collateral substantially harmful to 1 or more creditors" constitutes cause for conversion or dismissal. A key responsibility of the Debtor "attendant to its status" is to <u>avoid</u> using cash collateral of the estate, unless authorized by the court or consented to by "each entity that has an interest in such cash collateral…." 11 U.S.C. 363(c)(2)(A). *In re Three Partners, Inc.*, 199 B.R. 230, 237 n.9 (Bankr. D. Mass. 1995). Failure to do so—"in conjunction with the viability of a Chapter 11 case or the continuation of the debtor in possession"—may constitute cause for dismissal or conversion. *Three Partners*, 199 B.R. at 237 n.9; *see also In re Hewett*, 32 B.R. 605, 606–7 (Bankr. W.D. Wash. 1983) (where court in part converted case to Chapter 7 because debtor had "used cash collateral in total disregard of Section 363(c)(2) …").

33. The Debtor's Third Cash Collateral Motion is too little, too late and cannot resurrect the Debtor's past unauthorized and unconsented use of cash collateral. It is abundantly clear that

the Debtor has made and continues to make unauthorized payments in the approximate amount of $90,000 per month to Cashyew and Mr. and Mrs. O'Hare. *See* Report, ¶ 15; *see also* July Monthly Operating Report. In July alone, the Debtor paid $85,948.60 to Cashyew without consent or this Court's approval. *See* Monthly Operating Report, Docket No. 130-1, p. 3. In August, the Debtor transferred $91,134 to Cashyew without consent and without this Court's approval. *See* Docket No. 186-1, p. 13.

34. The Third Cash Collateral Motion is an attempt by the Debtor to belatedly insulate itself from the provisions of § 1112(b)(4)(D). The Debtor's bankruptcy case should be converted to Chapter 7.

WHEREFORE, Adam Young, Tubmanburg Limited and Ringba, LLC, respectfully request that the Court deny the Cash Collateral Motion and enter such other and further relief as the Court deems just and appropriate.

Respectfully submitted this 16th day of October, 2024.

    LEWIS ROCA ROTHGERBER CHRISTIE LLP

    *s/ Chad S. Caby*
    Chad S. Caby
    1601 19th Street, Suite 1000
    Denver, CO 80202
    Tel:    303-628-9583
    Fax:    303-623-9222
    E-mail:  ccaby@lewisroca.com

    *Attorneys for Adam Young, Tubmanburg Limited and Ringba, LLC*

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on October 16, 2024, a true and correct copy of the foregoing **OBJECTION TO DEBTOR'S MOTION FOR AUTHORITY TO USE CASH COLLATERAL** was electronically filed and served via CM/ECF, which action caused automatic electronic notice of such filing upon all parties in interest in this matter as follows:

John Cimino, Esq.
CIMINO LAW OFFICE, LLC
5500 E. Yale Ave., #201A
Denver, CO 80222
Via: CM/ECF

*Counsel for Debtor*

Aaron A. Garber, Esq.
WADSWORTH GARBER WARNER CONRARDY, P.C.
2580 W. Main St., Ste. 200
Littleton, CO 80120
Via: CM/ECF

*Counsel for Debtor*

Alan K. Motes, Esq.
Byron G. Rogers Federal Bldg.
1961 Stout St., Ste. 12-200
Denver, CO 80294
Via: CM/ECF

*Counsel for U.S. Trustee*

Peter A. Cal, Esq.
John S. Gray, Esq.
SHERMAN & HOWARD L.L.C.
675 Fifteenth St., Ste. 2300
Denver, CO 80202
Via: CM/ECF

*Counsel for JPMorgan Chase Bank, N.A.*

Joli A. Lofstedt, Esq.
PO Box 270561
Louisville, CO 80027
Via: CM/ECF

*Subchapter V Trustee*

Reza D. Rismani, Esq.
Jason D. Cooper, Esq.
TREECE ALFREY MUSAT P.C.
633 17th Street, Suite 2200
Denver, CO 80202
Via: CM/ECF

*Counsel for Glegal, LLC*

Gary Tucker, Esq.
GLEGAL, LLC
1600 Broadway, Suite 1660
Denver, CO 80202
Via: CM/ECF

*Counsel for GLegal, LLC*

Arthur Lindquist-Kleissler, Esq.
LINQUIST-KLEISSLER & COMPANY, LLC
950 S. Cherry Street, Suite 418
Denver, CO 80246
Via: CM/ECF

*Counsel for Cashyew Holding, LLC*

126390915.1

- 15 -

| | |
|---|---|
| Jeffrey Cohen, Esq.<br>COHEN, LLC<br>1600 Broadway, Suite 1660<br>Denver, CO 80202<br>Via: CM/ECF<br><br>*Counsel for Cohen, LLC* | Robert J. Shilliday III<br>SHILLIDAY LAW, P.C.<br>2616 W. Alamo Avenue<br>Littleton, CO 80120<br>Via: CM/ECF<br><br>*Counsel for John Cimino* |

                         *s/ Jennifer Eastin*
                         Of: Lewis Roca Rothgerber Christie LLP

126390915.1