UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Case No. 24-12624-KHT |
| DNC AND TCPA LIST SANITIZER, LLC | ) | |
| EIN: 83-3868704 | ) | Chapter 11 |
| | ) | Sub-Chapter V |
| Debtor | ) | |
| | ) | |

**MOTION TO APPROVE SETTLEMENT AGREEMENT BETWEEN THE (A) DEBTOR AND (B) ADAM YOUNG AND RINGBA, LLC**

DNC and TCPA List Sanitizer, LLC (the "Debtor"), by and through its counsel, Wadsworth Garber Warner Conrardy, P.C. respectfully requests that the Court enter an order approving the Settlement Agreement and Mutual Release, by and between the Debtor on the one hand and Adam Young and Ringba, LLC on the other (Adam Young and Ringba LLC are collectively referred to as "Ringba).[1]

**BACKGROUND**

***State Court Litigation***

1. On October 23, 2021, the Debtor filed a state court complaint against Ringba in the El Paso County District Court of Colorado, initiating Case No. 2021CV31668 (the "State Court Litigation"). On May 12, 2023, the El Paso County District Court (the "State Court") entered an order and judgment for terminating sanctions against the Debtor. Additionally, on January 12, 2024, the State Court entered an order and judgment for attorneys' fees and costs against the Debtor and in favor of Ringba.

2. On February 12, 2024, in Court of Appeals Case No. 2024CA265, the Debtor appealed the judgment terminating the State Court Litigation and awarding attorneys' fees and costs. In a separate appeal, Court of Appeals Case No. 2023CA891, the Debtor also appealed three other orders entered in the state court Litigation (collectively, "the Appeals").

3. On September 5, 2024, the State Court issued a Citation to Show Cause for Michael O'Hare to appear before the Court and answer allegations of contempt of the State Court's Protective Order (the "Contempt Citation").

[1] Ringba and the Debtor may be referred to herein as a "Party" or collectively as the "Parties."

4. On September 19, 2024, the Colorado Court of appeals denied the Debtor's first appeal (Case No. 2023CA891) and on October 24, 2024, denied Debtor's motion for reconsideration. The second appeal remains pending before the Colorado Court of Appeals.

***The Bankruptcy Case***

5. On May 16, 2024 (the "Petition Date"), the Debtor commenced this bankruptcy case (the "Bankruptcy Case"), by filing a Voluntary Petition under Subchapter V of Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Colorado (the "Bankruptcy Court").

6. On May 29, 2024, Ringba filed its Proof of Claim in the Bankruptcy Case, designated as Claim No. 1 ("Ringba's Proof of Claim"), in the amount of $656,108.84, on the Official Claims Register (the "Ringba Claim").

7. On September 10, 2024, Ringba filed a Motion to convert this case to a case under Chapter 7 (the "Convert Motion"). The Debtor objected to the Convert Motion. A two day hearing was scheduled on the Convert Motion. The hearing was adjourned when the parties reached a settlement in principle.

***The Settlement Agreement***

8. To avoid the costs, delays, and uncertainty of litigation, the Parties have entered into a Settlement Agreement and Mutual Release ("Settlement Agreement," a copy which is attached hereto as Exhibit A).

9. In pertinent part, the Settlement Agreement provides:

   a. The Settlement Agreement is subject to Bankruptcy Court approval. Entry of a final non-appealable order approving the Settlement Agreement is referred to as the "Effective Date."

   b. Ringba shall hold an allowed unsecured claim in the Bankruptcy Case in the amount of $442,500 (the "Settlement Amount").

   c. The Debtor shall file a Second Amended Plan of Reorganization paying the Settlement Amount in full within twenty-four months (the "Settlement Payment"). The property of the estate shall not revest in the reorganized Debtor and shall remain property of the Debtor's bankruptcy estate until the Debtor satisfies the Settlement Amount.

d. Upon the Effective Date:

   i. Ringba's Proof of Claim shall be deemed to be amended and reduced to the Settlement Amount;

   ii. The Debtor shall file a motion dismissing the Appeals with prejudice; and

   iii. Ringba shall file a motion dismissing or withdrawing the Contempt Citation with prejudice.

   iv. The Convert Motion shall be held in abeyance until such time that the full Settlement Payment has been paid to Ringba. In addition to any state law rights and remedies Ringa possesses under the Settlement Agreement, Ringba may request the Bankruptcy Court reset the hearing on the Convert Motion upon Debtor's default of the Settlement Agreement.

   v. The State Court protective order shall remain in place.

   vi. Neither party will make disparaging remarks about the other Party.

e. Ringba agrees to vote to accept the amended Plan proposed by the Debtor and not to object to the amended Plan so long as the Plan proposed by the Debtor incorporates all provisions of the Settlement Agreement and does not otherwise directly or indirectly attempt to negate, dilute, or strip away any of the terms of the Settlement Agreement.

f. Both Parties shall continue to adhere to the confidentiality and non-disclosure obligations of the protective order entered in the State Court Litigation (the "Protective Order"). For any violation of the Protective Order by the Debtor, the Debtor agrees to pay to Ringba $100,000 in liquidated damages, plus any attorneys' fees associated with the Debtor's violation of the Protective Order (the "Liquidated Damages").

g. At the time of the execution of the Settlement Agreement, Michael O'Hare shall execute a personal guaranty of the full Settlement Payment and any Liquidated Damages owed.

h. Michael O'Hare, on behalf of himself individually and on behalf of the Debtor, shall execute a signed affidavit detailing the information he has

knowledge of from the State Court Litigation that was and is protected by the Protective Order under an "Attorney's Eyes Only" designation.

i. The Parties are granting each other mutual releases.

**RELIEF REQUESTED**

10. The Debtor seeks approval of the Settlement Agreement pursuant to 11 U.S.C. § 105 and Fed.R.Bankr.P. 9019. The law generally favors compromises and settlements of disputes between parties. *See Stanpec Corp. v. Jelco, Inc.*, 464 F.2d 1184 (10th Cir. 1972).

11. The standards by which to evaluate a settlement proposal have been defined by the courts." *Kaiser Steel Corp. v. Frates (In re Kaiser Steel Corp.)*, 105 B.R. 971, 976 (D.Colo.1989). "In general, the court must determine whether the settlement is fair and equitable and in the best interests of the estate." *Id.* The factors to consider in this determination are (1) the probability of success on the merits in the litigation; (2) the difficulties, if any, to be encountered in collection of any judgment that might be obtained; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interests of creditors and the proper deference to their reasonable views in the premises. *Id.* at 976-77.

12. The Debtor believes that the Settlement Agreement is reasonable and in the best interest of the estate under the *Kaiser Steel* test. The terms of the Settlement Agreement were negotiated with knowledge of the strengths and weaknesses of the parties' respective position as follows:

a. *Probability of Success on the Merits*: The Debtor believes it would prevail on all litigation with Rigba. However, there are risks and uncertainty. The pending a Convert Motion is high risk litigation. If the Debtor does not prevail on the Convert Motion, it would lose its business and there would be diminished recovery for creditors. The Debtor is a viable business that will be rehabilitated through the Chapter 11 process.

b. *Difficulties in Collection*: This factor is not applicable.

c. *The Expense, Inconvenience, and Delay of Litigation*: This Settlement Agreement avoids the expense, inconvenience, and delay of litigation. The Convert Motion would have to proceed to trial which would be a costly endeavor. If the Debtor survives the Convert Motion, it is possible, and maybe even highly likely that Ringba will oppose the Debtor's efforts to confirm a Plan. Ringba may oppose other actions taken by the Debtor

in the case. The potential extensive litigation would be expensive and significantly delay the Debtor's efforts to confirm a Plan of Reorganization.

d. *The Interest of Creditors*: The Settlement Agreement benefits creditors in several ways. The Settlement Agreement avoids the Debtor incurring significant legal fees and costs associated with litigation. It provides a path for confirming a Plan of Reorganization that maximizes the return to creditors. Moreover, the Plan provides a more expedition path the confirmation and in turn distributions to creditors. Rignba is reducing it claim from $656,108.84 to $442,500 providing additional funds to pay other creditor claims.

13. For the reasons set out above, the Debtor submits that the Settlement Agreement is fair and reasonable, in the best interest of the bankruptcy estate and its creditors, and should be approved by the Court. *See In re Kaiser Steel Corp.*, 105 B.R. 971 (D.Colo. 1989); *Reiss v. Hagman,* 881 F.2d 890 (10th Cir. 1989); *In re Hermitage Inn, Inc.*, 66 B.R. 71 (Bankr.D.Colo. 1996).

WHEREFORE the Debtor respectfully requests that the Court enter an order, a proposed form is filed herewith, approving the Settlement Agreement and granting such other relief as the Court deems just.

Dated: December 10, 2024

Respectfully submitted,

By: /s/ Aaron A. Garber

Aaron A. Garber #36099
WADSWORTH GARBER WARNER CONRARDY, P.C.
2580 W Main Street, Suite 200
Littleton, CO 80120
Telephone: 303-296-3905
Fax: 303-296-7600
Email: agarber@wgwc-law.com

**EXHIBIT A**

Docusign Envelope ID: A033A590-DC77-45B4-AB10-4B7B5A9F0C14

# SETTLEMENT AGREEMENT AND MUTUAL RELEASE

THIS SETTLEMENT AGREEMENT AND MUTUAL RELEASE (this "Agreement") is entered into December 9, 2024 ("Execution Date"), between, Adam Young and Ringba, LLC (collectively, "Ringba") and DNC and TCPA List Sanitizer, LLC (the "Debtor") and (Ringba, and the Debtor shall collectively be referred to herein as the "Parties", and individually as a "Party").

## RECITALS

***The State Court Litigation***

A. On October 23, 2021, the Debtor filed a state court complaint against Ringba in the El Paso County District Court of Colorado, initiating Case No. 2021CV31668 (the "State Court Litigation"). On May 12, 2023, the El Paso County District Court (the "State Court") entered an order and judgment for terminating sanctions against the Debtor. Additionally, on January 12, 2024, the State Court entered an order and judgment for attorneys' fees and costs against the Debtor and in favor of Ringba.

B. On February 12, 2024, in Court of Appeals Case No. 2024CA265, the Debtor appealed the judgment terminating the State Court Litigation and awarding attorneys' fees and costs. In a separate appeal (Court of Appeals Case No. 2023CA891), the Debtor also appealed three other orders entered in the State Court Litigation (together, the "Appeals").

C. On September 5, 2024, the State Court issued a Citation to Show Cause for Michael O'Hare to appear before the Court and answer to allegations of contempt of the State Court's Protective Order.

D. On September 19, 2024, the Colorado Court of Appeals denied the Debtor's first appeal (Case No. 2023CA891) and on October 24, 2024 denied Debtor's motion for reconsideration. The second appeal remains pending before the Colorado Court of Appeals.

***The Bankruptcy Case***

E. On May 16, 2024 (the "Petition Date"), the Debtor commenced a bankruptcy case, Case No. 24-12624 KHT (the "Bankruptcy Case"), by filing a voluntary petition under Subchapter V of Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Colorado (the "Bankruptcy Court").

F. On May 29, 2024, Ringba filed its Proof of Claim in the Bankruptcy Case, designated as Claim No. 1 (the "Proof of Claim"), in the amount of $656,108.84, on the Official Claims Register (the "Ringba Claim").

Docusign Envelope ID: A033A590-DC77-45B4-AB10-4B7B5A9F0C14

***Settlement of Disputed Claims***

G. Recognizing the costs and risks of litigation, the Parties have agreed to settle and resolve: (1) all claims asserted by the Parties against one another, or that could have been asserted by the Parties against one another or against principals of each, including Michael O'Hare, Adam Young, and Harrison Gevirtz, including, but not limited to, the Debtor's indebtedness to Ringba, the Ringba Claim and the claims in the State Court Litigation and Appeals (collectively, the "Disputed Claims"); and, (2) all pending matters that have been filed by the Parties against one another, or that could have been filed by the Parties against one another, including but not limited to, Ringba's Motion to Convert Debtor's Bankruptcy Case to a Chapter 7 Bankruptcy Case (the "Motion to Convert;" Docket No. 151), on the terms and conditions set forth in this Agreement.

**SETTLEMENT TERMS AND RELEASE**

NOW, THEREFORE, in consideration of the recitals, mutual promises, conditions, and covenants in this Agreement, and for other good and valuable consideration, the receipt and sufficiency of which are acknowledged, the Parties agree as follows:

1. Recitals. The Parties hereby incorporate and verify the above Recitals into this Agreement.

2. Bankruptcy Court Approval. This Agreement, and the rights and obligations thereunder, are subject to the Bankruptcy Court entering a final non-appealable order approving this Agreement. The entry of a final non-appealable order by the Bankruptcy Court is herein after referred to as the "Effective Date." If the Effective Date does not occur, then this Agreement shall be null and void and may not be used for any purpose

3. Settlement Amount. Ringba shall hold an allowed unsecured claim in the Bankruptcy Case in the amount of $442,500 (the "Settlement Amount"). The Debtor shall file a Second Amended Plan of Reorganization that dedicates the Debtor's disposable income, such that the Settlement Amount is paid in full within twenty-four months (the "Settlement Payment"). Ringba shall not hold any other claim against the Debtor or its bankruptcy estate except for the Settlement Amount and as otherwise set forth herein.

4. Proof of Claim. Upon the Effective Date Ringba's Proof of Claim shall be deemed to be amended and reduced to the Settlement Amount.

5. State Court Appeals. Within five (5) business days after execution of this Agreement, the Debtor shall file a motion with the Colorado Court of Appeals to hold in abeyance the Appeals, pending the Effective Date. Within five (5) business days of the Effective Date, the Debtor shall file a motion dismissing the Appeals with prejudice.

6. Contempt Citation. Within five (5) business days after execution of this Agreement, Ringba shall file a motion with the State Court to hold in abeyance the Contempt Citation,

Docusign Envelope ID: A033A590-DC77-45B4-AB10-4B7B5A9F0C14

pending the Effective Date. Within five (5) business days of the Effective Date, Rignba shall file a motion dismissing or withdrawing the Contempt Citation with prejudice.

7. Plan of Reorganization. Within thirty (30) days of the Effective Date, the Debtor shall file a Second Amended Plan of Reorganization (or any subsequent amendment to the Plan of Reorganization) (the "Plan") in the Bankruptcy Case. The Plan shall specifically incorporate the terms of this Agreement and the Agreement shall be appended to the Plan as an exhibit. With regard to Ringba and its claim, the Plan shall include full payment of the Settlement Payment. Additionally, the Plan shall include specific remedies upon default, including but not limited to, a notice of default that includes a ten business day cure period (the "Notice of Default"), the requirement that any Notice of Default be filed with the Bankruptcy Court, and that upon the Debtor's failure to cure the default, Ringba may initiate immediate collections of its claim(s) against the Debtor (or any guarantor) following the expiration of the ten business day cure period. The term "collections" includes, but is not limited to, any rights Ringba would possess in the Bankruptcy Case, including, but not limited to conversion of the Debtor's Bankruptcy Case to Chapter 7 or other non-bankruptcy collections rights, such as using Ringba's state law rights and remedies outside of the Bankruptcy Case, including, but not limited to, collection against any guarantor (including, but not limited to, Michael O'Hare). If the Debtor cures the Notice of Default during the ten business day cure period, the Notice of Default shall be resolved, however, Ringba is only required to send and file one Notice of Default. If the Debtor defaults a second time, Ringba may proceed as described above.

8. Agreement to Accept Plan. So long as the Plan proposed by the Debtor incorporates all provisions of this Agreement and does not otherwise directly or indirectly attempt to negate, dilute, or strip away any of the Settlement Agreement terms described herein, Ringba agrees to vote to accept the Plan proposed by the Debtor and not to object to the Plan, or join or otherwise assist or participate in any objection the Plan. Ringba shall be the sole party determining whether it believes its rights are being negatively affected by any amended plan and may object to the same in its sole discretion, except if the Plan merely incorporates or recites the terms of this Settlement Agreement.

9. No Re-Vestment of Property in the Reorganized Debtor. The Debtor agrees that absolutely no property of the estate, as defined by 11 U.S.C. § 541(a), shall re-vest in the reorganized Debtor. The property of the estate shall remain vested in the Debtor until such time that Ringba's claim has been paid in full.

10. Motion to Convert. As of the date of the execution of this Agreement, Ringba and the Debtor have already filed with the Bankruptcy Court a motion requesting Ringba's Motion to Convert be held in abeyance until such time that the full Settlement Payment has been paid to Ringba, which relief was granted by the Bankruptcy Court. In addition to any state law rights and remedies Ringba possesses, Ringba may request the Bankruptcy Court reset the hearing on the Motion to Convert upon the Debtor's default of this Agreement.

11. Protective Order. Both Parties shall continue to adhere to the confidentiality and non-disclosure obligations of the protective order entered in the State Court Litigation (the "Protective Order"). The terms of the Protective Order remain in effect in perpetuity, including both before and after dismissal or other resolution of the Appeals and both before and after dismissal, conversion, discharge, or any other resolution of this Bankruptcy Case. Any document that was designated as Confidential or Highly Confidential during the pendency of the State Court litigation retains all protections under the Protective Order, regardless of any party or non-party's current opinions on the designation. Additionally, as part of, and in consideration for the entry of this Agreement, the Parties have specifically agreed to a liquidated damages provision relating to any violations of the Protective Order. For any and each violation of the Protective Order by the Debtor (that occurs after the execution of this Agreement), the Debtor agrees to pay to Ringba $100,000 in liquidated damages, plus any attorneys' fees associated with the Debtor's violation of the Protective Order (the "Liquidated Damages"). The State Court shall retain jurisdiction to hear any matter arising from violation of the Protective Order.

12. Personal Guaranty. At the time of the execution of this Agreement, Michael O'Hare, principal of the Debtor, shall execute a binding personal guaranty of the full Settlement Payment and any Liquidated Damages owed as a result of violation(s) of the Protective Order as outlined in this Agreement (the "Guaranty"). A copy of the Guaranty is attached and incorporated into this Settlement Agreement and shall be incorporated into the provisions of the Debtor's amended Plan. The Guaranty shall be held by counsel for the Debtor and delivered to counsel for Ringba within three (3) business days of the Effective Date and shall be destroyed if the Effective Date is not achieved.

13. Affidavit of Michael O'Hare. At the time of the execution of this Agreement, Michael O'Hare, on behalf of himself individually and on behalf of the Debtor, shall execute and deliver to Ringba's counsel, a signed affidavit detailing the information he has knowledge of from the State Court Litigation or otherwise that was and is protected by the Protective Order under an "Attorney's Eyes Only" designation (the "Affidavit"). To the extent Mr. O'Hare has knowledge of information of which he is uncertain whether the same is protected by an "Attorney's Eyes Only" designation, Mr. O'Hare shall nevertheless disclose such information in the Affidavit that is arguably subject to the protective designation. The Parties, and Mr. O'Hare specifically, understand and agree that all information that is protected by the Attorney's Eyes Only designation of which Mr. O'Hare and the Debtor possess must be included in the Affidavit. The Affidavit shall be held by counsel for the Debtor and delivered to counsel for Ringba within three (3) business days of the Effective Date and shall be destroyed if the Effective Date is not achieved.

14. Mutual Non-Disparagement. The Parties agree that, upon the Effective Date, neither Party nor its principals or agents shall make any disparaging remarks about the other Party or its principals or agents. For instance, Debtor and its principals, including but not limited to Michael O'Hare and Tatiana O'Hare, shall refrain from making any disparaging remarks, made publicly or privately, about or concerning Ringba, Adam Young, Harrison Gevirtz,

Docusign Envelope ID: A033A590-DC77-45B4-AB10-4B7B5A9F0C14

or Ringba's employees, agents, products, or services, except that it shall not be considered disparagement to provide the information contained within the Affidavit described in paragraph 13 above to Ringba. Furthermore, it shall not be disparagement to disclose information in response to any subpoena or other court order issued in other litigation or other legal proceeding in which information is requested of a Party, its principals or its agents, except that such disclosure shall be considered disparagement to the extent it fails to comply with the Protective Order, including but not limited to Section 9 of the Protective Order.[1] The mandates of the Protective Order shall be deemed to apply to any subpoena or court order.

15. Mutual Releases. Upon the Effective Date, and except as otherwise provided and set forth in this Agreement, which shall be the only remaining obligation between the Parties, each of the Parties, and Michael O'Hare, Adam Young, and Harrison Gevirtz, on their own behalf and on behalf of any and all of their respective predecessors, successors, and assigns, and all other persons acting by, through, under, or in concert with any them (the "Released Persons") hereby release and discharge the other Parties, and all of the Released Persons related to such other Parties (including Michael O'Hare, Adam Young, and Harrison Gevirtz), from all Disputed Claims and any and all claims, rights, causes of actions, suits, matters, issues, debts, dues, accounts, covenants, contracts, agreements, judgments, losses, damages, liabilities and/or demands of any kind, nature, or amount, whether in law or equity, whether known or unknown, anticipated or unanticipated, present or contingent, liquidated or unliquidated, concealed or hidden, suspected or unsuspected, direct or derivative, for any equitable relief, injury, damage or loss whatsoever, including but not limited to, compensatory damages, statutory liquidated damages, exemplary damages, punitive damages, costs, expenses and attorneys' fees and costs related thereto, which any of the Parties or Released Persons referenced herein ever had, now has or hereafter can, shall or may have against any of the other Parties or Released Persons, including but not limited to any claims, counterclaims, or crossclaims each Party or Released Persons may have against the other Party or Released Persons, whether asserted or not, arising out of or related to the Disputed Matters.

16. Prior Assignment. Each Party represents and warrants to the other Parties that they have not previously conveyed or transferred the claims being released in this Agreement to any other person or entity.

17. Investigation of Matters. Each Party represents and warrants that it has made such investigation of the facts pertaining to this Agreement and all matters pertaining thereto as it deems necessary. Each Party acknowledges that it may hereafter discover facts different from, or in addition to, those that it now knows or believes to be true with respect to these

[1] Section 9 of the Protective Order requires, *in part*, Debtor to provide prompt written notification to Ringba and to the party who caused the subpoena or order to issue in other litigation, that some or all of the material covered by the subpoena or order is subject to the Protective Order, *i.e.*, is designated as "Confidential," "Highly Confidential – Attorneys' Eyes Only," or "Highly Confidential – Source Code." Section 9 further obligates Debtor not to produce such information before a court determination if Ringba timely seeks a protective order in the other litigation.

matters, and each Party agrees that this Agreement shall remain effective in all respects, including, without limitation, the releases contained herein, notwithstanding any different or additional facts or the discovery thereof. Each Party agrees that if facts, claims, or circumstances are at any time later found, suspected, or claimed to be other than or different from the facts, claims, and circumstances now believed to be true, such Party expressly accepts and assumes the risk of such possible differences of facts, claims, and circumstances and agrees that the releases set forth herein shall be and remain effective notwithstanding any such difference in any fact, claim, or circumstance. In addition, each Party acknowledges the risk and the possibility that other claims not known may develop or be discovered or consequences or results of claims may develop or be discovered in the future. Each Party expressly acknowledges the risk that there may be claims released herein that they may not now know or suspect to exist, whether through ignorance, oversight, error, negligence, or otherwise, and that, if known could affect their decision to enter into this Agreement. Each Party nevertheless agrees that the releases set forth herein have been negotiated and agreed upon and each hereby expressly waives any and all rights that each may have under any federal or state statute or common law principle that may provide that a general release does not extend to claims that are not known to exist at the time of execution.

18. Governing Law, Jurisdiction, & Venue. The validity, construction, performance, and enforceability of this Agreement shall be governed in all respects by the laws of the State of Colorado, without reference to the choice of law principles thereof. The Bankruptcy Court shall be the exclusive venue for, and have exclusive jurisdiction over, the Parties with respect to any matter arising out of or relating to this Agreement (except as set forth below), and the parties hereby submit to the Bankruptcy Court's jurisdiction over the parties with respect to any matter arising out of or relating to this Agreement. The parties hereby agree to a waiver of any objection for such venue, or any objection to jurisdiction of the Colorado District Court. Otherwise, the Colorado District Court, District of El Paso shall be the exclusive venue for, and have exclusive jurisdiction over, the Parties with respect to any matter arising in Paragraphs 11 through 14 above.

19. Successors and Assigns. This Agreement is binding on the Parties and their successors and assigns.

20. Entire Agreement. This Agreement contains the entire agreement between the Parties with respect to the subject matter hereof and supersedes all prior written and oral agreements concerning the subject matter hereof. This Agreement may be supplemented, altered, amended, modified, or revoked by writing only, signed by both Parties or their successors in existence at the time of such action.

21. Authority. Each entity or individual executing this Agreement on behalf of a Party represents and warrants that he or she is duly authorized to execute and deliver this Agreement on behalf of such Party and that this Agreement is binding on such Party in

accordance with its terms, except that the enforceability of the Debtor's signature is subject to Bankruptcy Court approval.

22. Voluntary and Knowing. The Parties acknowledge that they have read this Agreement and understand all of its terms, and that this Agreement is executed voluntarily, without duress, and with full knowledge of its legal significance. The Parties do not rely upon each other in any fashion in making their independent decision to enter into this Agreement.

23. Costs and Attorneys' Fees. Each Party shall bear its own costs and attorneys' fees in connection with the disputes addressed herein and this Agreement. In the event any litigation or other proceeding is brought to enforce this Agreement in the Bankruptcy Court the successful Party shall be entitled to recover reasonable attorneys' fees, costs and expenses actually incurred in initiating or responding to such proceeding in addition to any other relief to which the Party or Parties may be entitled under applicable law or agreement. Additionally, in the event that the Debtor violates the Protective Order or Paragraphs 11 through 14 above, Debtor will be responsible for any of Ringba's attorneys' fees associated with the violation and the Liquidated Damages discussed in paragraph 11 above.

24. Non-Assignability. This Settlement Agreement and the rights and obligations are non-assignable, except if there is a merger or acquisition of a Party.

25. Severability. If any provision of this Agreement or the application thereof is held to be invalid or unenforceable, its invalidity or unenforceability shall not affect any other provision or application of this Agreement to the extent that such other provision or application can be given effect without the invalid or unenforceable provision or application, provided, however, that the economic and legal substance of the transactions contemplated by this Agreement are not materially adversely affected in any way.

26. Captions. The captions or headings in this Agreement are for convenience only and in no way do they define, limit, or describe the scope or intent of any provisions or sections of this Agreement.

27. Counterparts. This Agreement may be executed in counterparts and each such counterpart shall be an original Agreement, but all of which together shall constitute one and the same Agreement. Electronic transmission of pdfs of signatures of the Parties or their designated representatives to this Agreement shall be deemed original signatures.

28. Time is of the Essence. Time is of the essence with respect to the performance of every provision of this Agreement.

29. Amendment to Agreement. Any amendment to this Agreement must be in writing signed by duly authorized representatives of the Parties or their respective successors and/or assigns and stating the intent of the Parties to amend this Agreement.

Docusign Envelope ID: A033A590-DC77-45B4-AB10-4B7B5A9F0C14

30. Incidental Acts. Each Party to this Agreement agrees to perform any other or further acts and execute and deliver any other or further documents or pleadings as may be necessary or appropriate to implement this Agreement.

31. No Representations or Warranties. Except as expressly set forth in this Agreement, neither of the Parties makes any representation or warranty, written or oral, express or implied.

32. No Admission of Liability. The Parties agree that nothing contained herein, and no discussions or action taken by any Party hereto with regard to the Agreement, shall be construed as an admission by any Party of liability for any purpose whatsoever.

33. Subsequent Proceeding. The Parties expressly agree that this Agreement may be used in any pending action or proceeding, or any action or proceeding which may be brought, instituted or taken by either of them, their successors, heirs, beneficiaries, assigns, devisees or subrogees, or by any person or entity on behalf of the undersigned, or any of them. It is expressly agreed that this Agreement shall fully and finally resolve all claims by the Parties hereto with respect to claims, counterclaims, setoffs, defenses and participations that have or may have been asserted in any litigation or legal proceeding that gave rise to this Agreement.

34. Representation by Counsel; Negotiation and Drafting. Each of the Parties to this Agreement has been represented by independent counsel, or determined, voluntarily, not to consult counsel. The Parties have participated jointly in the negotiation and drafting of this Agreement.

35. Notices. Notices and other communications required or contemplated by this Agreement shall be in writing and shall be given by (a) overnight express delivery service, or (d) electronic mail, addressed or transmitted to the Parties at the following mailing and email addresses, or to such other addresses as a Party may designate to the other in a writing delivered in accordance with the provisions of this Section:

If to the Debtor:

WADSWORTH GARBER WARNER CONRARDY, P.C.
2580 West Main Street, Suite 200
Littleton, Colorado 80120
Attn: Aaron A. Garber, Esq.
Email: agarber@wgwc-law.com

And

Debtor, DNC and TCPA List Sanitizer, LLC
c/o: Michael O'Hare
935 Pico Point
Colorado Springs, CO 80905

If to Ringba: Lewis Roca Rothgerber Christie LLP/Womble Bond Dickinson
1601 19th Street, Suite 1000
Denver, CO 80202
Attn: Chad S. Caby, Esq., Caitlin McHugh, Esq., and S. Wilson Collins, Esq.
Email: ccaby@lewisroca.com
cmchugh@lewisroca.com
wcollins@lewisroca.com

And

Ringba, LLC
8 The Green, Suite 11558
Dover, DE 19901

36. Standards of Interpretation. When used in this Agreement, the word "including" means including without limitation. References to "Dollars" and the symbol "$" mean U.S. Dollars. Terms defined in the singular include the plural and vice versa, and terms used in the masculine include the feminine and neuter and vice versa.

*[signature pages follow]*

Docusign Envelope ID: A033A590-DC77-45B4-AB10-4B7B5A9F0C14

The Parties and Michael O'Hare and Tatiana O'Hare have entered into this Agreement as of Execution Date.

**DNC and TCPA Sanitizer, LLC**

By: Michael O'Hare

Its: CEO

**Michael O'Hare**

Michael O'Hare, individually

**Tatiana O'Hare**

Tatiana O'Hare, individually

**Adam Young**

Signed by:

Adam Young

DC5D2F9F963D4A1...

Adam Young, individually

**Harrison Gevirtz**

Signed by:

F9E6B2?3D2A049B...

Harrison Gevirtz, individually

**Ringba, LLC**

Signed by:

Adam Young

DC5D2F9F963D4A1...

By: Adam Young

Its: Manager