# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF COLORADO

## The Honorable Judge Kimberly H. Tyson

In re:

**DNC and TCPA List Sanitizer, LLC**

*Debtor.*

Case No. 24-12624 KHT
Chapter 11

---

## CASHYEW HOLDING, LLC'S MOTION FOR ADMINISTRATIVE EXPENSES AND FEES PURSUANT TO 11 U.S.C. §§'s 503(b)(1) AND (2)

---

**COMES NOW,** Cashyew Holding, LLC ("Cashyew Holding") by and through their attorney, Arthur Lindquist-Kleissler, Esq. of the law firm Lindquist-Kleissler & Company, LLC and hereby moves this Honorable Court to enter an Order allowing an Administrative Fee and Expense Claim for post-petition services performed by Cashyew Holding, LLC on behalf and for the benefit of the Debtor pursuant to 11 U.S.C. §§'s 503(b)(1) and (2), and as grounds therefore state as follows:

## SUMMARY

Michael O'Hare and Tanya O'Hare are the two (2) primary employees/independent contractors utilized by Cashyew Holding, LLC ("Cashyew Holding") to perform services for the Debtor, DNC and TCPA Sanitizer, LLC. The agreed compensation to be paid by DNC and TCPA Sanitizer, LLC to Cashyew Holding, LLC is $35,000.00 per month. No compensation has been paid for the months of August, September, October, November, December 2024 and January 2025 totaling $210,000.00 (see attached **Exhibit "A"** invoices). Cashyew Holding, LLC is without funds to pay Michael O'Hare and Tanya O'Hare for their services which have clearly benefited the Debtor, DNC and TCPA Sanitizer, LLC. Respectfully, Cashyew Holding, LLC moves for the allowance of an Administrative Fee and Expense Claim.

## JURISDICTION

The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

1

## BACKGROUND

1. Debtor filed a Chapter 11 SubChapter V Bankruptcy Petition on May 16, 2024.

2. Alan Motes, Esq. is the attorney for the United States Trustee's office.

3. Joli Loftstedt, Esq. was appointed as the SubChapter V Trustee.

4. The Debtor's 341 Meeting of Creditors was scheduled and held on June 10, 2024.

5. The deadline for filing complaints objecting to discharge and/or dischargeability of debt.

## ADMINISTRATIVE CLAIM

6. Since its inception in 2019, the Debtor has contracted with Cashyew Holding to perform essential management services under a structure designed to maximize tax deductions.

7. Michael and Tanya O'Hare, acting through Cashyew Holding, have provided critical operation and managerial services to the Debtor, including but not limited to financial management, bookkeeping, operations management, sales and marketing, and risk/crisis management.

8. As a result of these efforts, the Debtor's revenues increased by 25% between May and December 2024, compared to the same period in the prior year.

9. Despite their substantial contributions, Michael and Tanya O'Hare have not received agreed upon compensation of $35,000.00 per month for the months of August, September, October, November, December 2024 and January 2025 totaling $210,000.00.

10. Enclosed are copies of invoices from Cashyew Holding, LLC to DNC and TCPA Sanitizer, LLC for the months of August, September, October, November and December 2024 (attached as **Exhibit "A"**) indicating the monthly amount due and owing to Cashyew Holding, LLC in the amount of $35,000.00 per month.

10. The services provided by Michael and Tanya O'Hare were essential to the Debtor's operations and directly contributed to the preservation and enhancement of the estate for the benefit of all creditors.

11. Cashyew Holding has historically received compensation from the Debtor for such services without dispute or challenge, further validating its status as a creditor.

12. Failure to compensate the Movants jeopardizes their ability to continue providing necessary services to the Debtor, which could negatively impact the estate's value.

13. Michael and Tanya O'Hare performed the following essential duties for the Debtor: a. **Financial Management:** Budgeting, forecasting, cash flow management, and financial reporting. b. **Bookkeeping:** Recording and maintaining financial transactions. c.

2

**Operations Management:** Overseeing daily operations, managing customer service issues, and addressing technical problems with the Debtor's platform. d. **Sales and Marketing:** Driving revenue growth through marketing initiatives, sales outreach, and webinars. e. **Risk/Crisis Management:** Mitigating threats to the business, including cyberattacks and legal challenges.

14. The Movants has faced significant obstacles, including hostile actions from a creditor, Ringba, which Movant's believe have engaged in retaliatory conduct because the Debtor company is a competitor and had cooperated with the authorities in potential action in its wire fraud case against Ringba.

15. The Movants' contributions have not only stabilized the Debtor's operations but also protected its assets and value for the benefit of all creditors. Movant's have righted the ship as far as fixing the issues and challenges at the beginning of the bankruptcy. Movant's have worked with the creditors on settlement of differences.

## RELIEF REQUESTED

16. Section 503 of the Bankruptcy Code provides that, after notice and a hearing, the Court shall allow an administrative claim for the "actual and necessary costs and expenses of preserving the estate..." 11 U.S.C. § 503(b)(1)(A).

17. Cashyew Holding, LLC is entitled to an allowed administrative claim against the Debtor's bankruptcy estate for the post-petition charges because the services Cashyew Holding, LLC delivered, and continues to deliver, are actual and necessary expenses of the estate. **Devan v. Simon DeBartolo Group, L.P.** (In re Mery-Go-Round Enters, Inc.), 180 F.3d 149, 157, (4th Cir. 1998). The Debtor and the estate received immediate and essential benefits from Cashyew Holding, LLC post-petition services.

## LEGAL ARGUMENT

18. The allowance ana payment of administrative expenses is governed by § 503 of the Bankruptcy Code. Section 503(a) provides that a party *may* file a request for payment of an administrative expense, (An entity may timely file a request for payment of an administrative expense, or may tardily tile such request if permitted by the court for cause. 11 U.S.C. § 503(a)) while § 503(b) addresses the allowance of administrative expenses and lists nine types of administrative expenses. These types Include: (1) actual and necessary costs of preserving the estate, including wages, salaries and post-petition taxes; (2) professional fees of a debtor. (3) expenses Incurred by a creditor er equity holder who made a substantial contribution to the case; (4) attorneys' fees for creditors whose expenses qualify under (3); (5) Indenture trustee compensation fer a substantial contribution to the case; (6) statutory fees and mileage under 28 U.S.C. ch. 119; (7) limited amounts due under commercial leases that were assumed and then rejected; (8) government agency costs of closing a health care business; and (9) the value of goods received within 20 days before the bankruptcy filing.

19. The policy focus of § 503 is the prevention of unjust enrichment of the estate, and to encourage creditors and vendors to do business with the debtor *See, e.g., In re Rancher's Legacy Meat* Co., 630 B.R. 308, 328 (Bankr. D. Minn. 2021 ); *In re ATP Oil & Gas* Corp., No. 12-36187, 2014 WL 1047818, at *3 (Bankr. S.D. Tex. March 18, 2014) (' The policy behind allowing administrative-expense priority is to provide an Incentive fer creditors and vendors to continue doing business with the debtor In possession.").

20. The importance of § 503 is derived from § 507 ("Priorities"), which gives administrative expenses a second administrative priority behind domestic support obligations. This priority can be disrupted by shortfalls In ordered adequate protection under§ 507(b) and post-petition financing authorized by § 346(c)(1).

21. The Code and Federal Rules of Bankruptcy Procedure are silent on the procedure for filing an administrative-expense request. The legislative history of § 503(a) indicates that the procedural aspects of administrative expenses are to be left to the Bankruptcy Rules, (the legislative history to § 503(a) Indicates that Congress decided to leave "the task of filling In the particulars as to 'the time, the form and the method of such a filing'" to the Federal Rules of Bankruptcy Procedure. *Deere Credit Inc. v. Wiley /In re Wiley)*, 2014 WL 294330, at •4 (Bankr. S.O. Ga. Jan. 24, 2014) (citing H.R. Rep. No. 595, 95th Cong., 1st Sess. 355 (1977); S. Rep. No. 989, 95th Cong., 2d Sess. 66 (1978)); *see Unifed States v. Ginley (In re Johnson)*, 901 F.2d 513, 517 (6th Cir. 1990) (stating and citing same with respect to prior version of § 503(a))), but the Rules do not provide specific procedures for filing requests for allowance or payment of administrative expenses.

22. There is no official form for filing administrative expense requests, and the Official Proof of Claim form warns, "Do not use this form to make a request for payment of an administrative expense."

23. Similarly, neither the Code nor Rules set forth a specific time period for the filing of administrative-expense requests, even though tardily filed requests require a showing of "cause" under § 503(a) before they can be allowed. (*See In re Silver Spring Family Med. Ctr. LLC*, 550 B.R. 286, 291-92 (0. Md. 2016) (noting that bankruptcy courts have broad discretion to accept belated requests fer administrative expenses).

24. The term "cause" is not defined by the Code or Rules; its definition is left to the court's discretion. Id. One court explained the wide discretion for determining the timeliness for filing an administrative expense in chapter 11 cases as follows:

Even when the court has not set a deadline for filing of a request for payment of administrative expenses, "timeliness" under § 503(a) provides a judge with the discretion to deny a request for payment of administrative expenses filed so late in the case as to risk prejudicing other, more attentive, parties in interest. Such an untimely request is not simply barred; rather, the court may consider the cause of the late filing. *In re Wiley, supra*, 2014 WL 294330, at *5 (internal citation omitted).

4

25. In cases converted to chapter 7, Bankruptcy Rule 1019(6) provides a potentially fatal negative inference for administrative expense creditors. It states that "[a] request for payment of an administrative expense incurred before conversion of the case is timely filed under § 503(a) ... if it is filed before conversion or a time fixed by the court."

26. Only § 1 129(a)(9) provides guidance as to when allowed administrative expenses will be paid. Courts have considerable discretion in determining the timing for payment of an administrative expense. *See, e.g., In re Colorlex Indus. Inc.,* 19 F.3d 1371, 1384 (11th Cir. 1994) ("The determination of timing of the payment of administrative expenses is a matter within the discretion of the bankruptcy court."); *In re Verco Indus.,* 20 B.R. 664, 665 (B.A.P. 9th Cir. 1982) (holding that when administrative expense is to be paid, it is at trial court's discretion); *In re Baptist Med. Ctr. of New York Inc.,* 52 B.R. 417, 421 (E.D.N.Y. 1985) (citing *In re Verco Indus.* for principal that time for payment of administrative expenses is at court's discretion); *In re HQ Global Holdings Inc.,* 282 B.R. 169, 173 (Bankr. D. Del. 2002) (citing *In re Colorlex Indus. Inc., In* re *Verco Indus.* and *In re Baptist Medical Center of New York Inc.* in support of proposition that timing of payment ol administrative expenses is at bankruptcy court's discretion).

27. When exercising this discretion, courts often consider prejudice to the debtor, hardship to the claimant and potential detriment to other creditors. *See In re HQ Global Holdings Inc.,* 282 B.R. al 174; *In re ATP Oil & Gas Corp., supra* n.6 at *10.

28. In *In re Global Home Products LLC,* the court applied these factors to a creditor's request for immediate payment of its administrative-expense claim. Following the testimony of the debtor's chief restructuring officer, who stated that immediate payment of all administrative-expense claims would collapse the debtor's reorganization efforts, (*See In re Global Home Prod. LLC,* No. 06-10340 (KG), 2006 WL 3791955, at *4 (Bankr. D. Del. Dec. 21, 2D06)), the court determined that the debtor would be prejudiced by the immediate payment of administrative-expense claims.

29. The court further found that the claimant would face little hardship if it was forced to wait until after plan confirmation to receive payment, as there was no evidence that immediate payment of the administrative-expense claim was necessary to keep the claimant in business . By not requiring immediate payment, the court concluded that other creditors would benefit to the extent that by denying immediate payment. The court would preserve a later equitable distribution to other administrative-expense claimants. Id at *5.

30. Administrative-expense requests allowed under § 503(b) equally share priority, (*See, e.g., In re Saathoff,* 54 C.8.C.2d 278, 2005 Bankr. LEXIS 830 (Bankr. W.D. Mo. April 12, 2005) (granting creditors motion for disgorgement of professionals' fees when debtor failed to make adequate protection payments); *In re Wilson-Seafresh Inc.,* 263 B.R. 624 (Bankr. N.D. Fla. 2D01) (holding that fees paid to debtor's professionals had to be disgorged in older to permit payment of creditor's superpriority claim); Hall v. *Perry (In re Cochise College Park Inc.),* 703 F.2d 1339, 1356 n.22 (9th Cir. 1983) (holding that all

5

administrative creditors should be treated with absolute "equality")), which includes subchapter V trustee fees. In a recent subchapter V case, *In re Roe , (In re Roe. No. 23-32077-TtlPl 1, 2024 WL 206678 (Bankr. D. Ore. Jan. 18, 2024)),* the debtor was paying all post-petition expenses in the ordinary course, and debtor's counsel held a pre-petition retainer. The subchapter V trustee sought the assurance of payment of the trustee's fees and filed a motion asking the court to require the debtor to post a deposit for the trustee's fees and expenses. Id at *1.

31. The court determined that this use of funds would be outside of the ordinary course of business under § 363(b) and required approval by the court after full notice and a hearing.

32. In addition, the court required that the deposit be held for the benefit of all administrative-expense claimants. Id at *4.

33. The *Roe* holding turned on the court's examination of the novel issue under§ 1184, which (like § 1107(a) for non-subchapter V chapter 11 cases) provides the subchapter V debtor with all of the rights and powers and most of the duties of a trustee serving in the case. The issue was whether both the subchapter V trustee and the debtor could use § 363 and thus whether the trustee could obtain an order for the use of property of the estate outside the ordinary course of business for the deposit. The *Roe* court ruled that § 1184 did not provide exclusive rights and powers to the debtor, stating that:

   It would be absurd to read section 1184 as providing debtors ... with all duties and rights of a trustee ... to the exclusion of the subchapter V trustee .... To do so would prevent the subchapter V trustee from performing his own duties ... and exercising necessary rights and powers to fulfill those duties. Id at *3.

34. Despite the subchapter V trustee's significant procedural missteps in failing to serve all creditors with his motion, the *Roe* court nonetheless went through the analysis to determine how the subchapter V trustee's fees could be assured by a deposit. The court advised the subchapter V trustee that the requested deposit would be established (but for all administrative creditors) if no timely objections to a properly served motion were raised. Id at *5.

35. The *Roe* court determined that the subchapter V trustee held concurrent authority with the debtor to use the trustee's rights and powers as necessary for the trustee to fulfill its duties under § 1183, including the trustee's duty under § 1183(b)(4) to "ensure that the debtor commences making timely payments required by a plan confirmed under" subchapter V. Id at *4. This novel approach to approving the trustee's request for a deposit to be held for administrative claims could provide guardrails for subchapter V administrative creditors and be useful for early avoidance of insolvent subchapter V cases.

36. Requests for allowance or payment of administrative expenses are not claims, and filing a proof of claim is not sufficient for compliance with the requirements of § 503(a). *See, e.g., In re Taco Bueno Resrs. Inc.,* 606 B.R. 289, 298 (Bankr. N.D. Tex. 2D19) (creditors requesting allowance and payment of administrative expense must file application for

6

allowance and payment in court's docket, not in a proof of claim that appears only in claims register).

**WHEREFORE,** Cashyew Holding, LLC respectfully prays this Honorable Court enter an Order allowing an Administrative Expense Claim in the amount of $35,000.00 per month to Cashyew Holdings, LLC, including for the payment of the services beneficial to the estate of Michael O'Hare and Tanya O'Hare for the months of August, September, October, November, December 2024 and January 2025 and for such other and further relief as this Court deems just and proper.

Dated: <u>January 24, 2025</u>

Respectfully submitted,
**LINDQUIST-KLEISSLER & COMPANY, L.L.C.**
*Original Signature of Arthur Lindquist-Kleissler on File for Review at Lindquist-Kleissler & Company, L.L.C.

By: /s/*Arthur Lindquist-Kleissler, Esq.
Arthur Lindquist-Kleissler #9822
950 S. Cherry Street, Ste. 418
Denver, Colorado 80246-2665
Telephone: (303) 691-9774
E-mail: arthuralklaw@gmail.com

G:\firm\clients\cashyew holding\motion for administrative expense\250124 Motion for Administrative Fees

# Cashyew Holding, LLC    **INVOICE**

|  |  |
|---|---|
| **Invoice #:** | Aug-24 |
| **Invoice date:** | 1/16/2025 |
| **Job:** | Management Fee |

985 Pico Point
Colorado Springs, CO 80905

|  |  |
|---|---|
| **Bill to:** | DNC and TCPA Sanitizer, LLC |
| **Phone** | 888-812-1619 |

| Description | % of time spent on each activity | % | Gross Revenue |
|---|---|---|---|
| Total Revenue for August 2024 | | | $    104,427.00 |
| Strategic Planing | 5% | 2% | $1,750.00 |
| Financial Management | 15% | 5% | $5,250.00 |
| Bookkeeping | 15% | 5% | $5,250.00 |
| Recruitment and Talent Acquision | 2% | 1% | $700.00 |
| Operation Management | 25% | 8% | $8,750.00 |
| Marketing and Management | 7% | 2% | $2,450.00 |
| Sales Management | 10% | 3% | $3,500.00 |
| Business Development | 5% | 2% | $1,750.00 |
| Project Management | 2% | 1% | $700.00 |
| Innovation/Technology Management | 2% | 1% | $700.00 |
| Intelectual Property Management | 2% | 1% | $700.00 |
| Risk/Crisis Management | 10% | 3% | $3,500.00 |
| Percentage of Gross | 100% | 34% | |
| Invoice Total | | | $35,000.00 |



PENGAD-Bayonne, N.J.

**PETITIONER'S EXHIBIT**
"A"

# Cashyew Holding, LLC    **INVOICE**

| | |
|---|---|
| Invoice #: | Sep-24 |
| Invoice date: | 1/16/2025 |
| Job: | Management Fee |

985 Pico Point
Colorado Springs, CO 80905

| | |
|---|---|
| Bill to: | DNC and TCPA Sanitizer, LLC |
| Phone | 888-812-1619 |

| Description | % of time spent on each activity | % | Gross Revenue |
|---|---|---|---|
| Total Revenue for September 2024 | | | $ 116,652.00 |
| Strategic Planing | 5% | 2% | $1,750.00 |
| Financial Management | 15% | 5% | $5,250.00 |
| Bookkeeping | 15% | 5% | $5,250.00 |
| Recruitment and Talent Acquision | 2% | 1% | $700.00 |
| Operation Management | 25% | 8% | $8,750.00 |
| Marketing and Management | 7% | 2% | $2,450.00 |
| Sales Management | 10% | 3% | $3,500.00 |
| Business Development | 5% | 2% | $1,750.00 |
| Project Management | 2% | 1% | $700.00 |
| Innovation/Technology Management | 2% | 1% | $700.00 |
| Intelectual Property Management | 2% | 1% | $700.00 |
| Risk/Crisis Management | 10% | 3% | $3,500.00 |
| Percentage of Gross | 100% | 30% | |
| Invoice Total | | | $35,000.00 |

# Cashyew Holding, LLC

# INVOICE

| | |
|---|---|
| **Invoice #:** | Oct-24 |
| **Invoice date:** | 1/16/2025 |
| **Job:** | Management Fee |

985 Pico Point
Colorado Springs, CO 80905

| | |
|---|---|
| **Bill to:** | DNC and TCPA Sanitizer, LLC |
| **Phone** | 888-812-1619 |

| Description | % of time spent on each activity | % | Gross Revenue |
|---|---|---|---|
| Total Revenue for October 2024 | | | $    114,874.00 |
| Strategic Planing | 5% | 2% | $1,750.00 |
| Financial Management | 15% | 5% | $5,250.00 |
| Bookkeeping | 15% | 5% | $5,250.00 |
| Recruitment and Talent Acquision | 2% | 1% | $700.00 |
| Operation Management | 25% | 8% | $8,750.00 |
| Marketing and Management | 7% | 2% | $2,450.00 |
| Sales Management | 10% | 3% | $3,500.00 |
| Business Development | 5% | 2% | $1,750.00 |
| Project Management | 2% | 1% | $700.00 |
| Innovation/Technology Management | 2% | 1% | $700.00 |
| Intelectual Property Management | 2% | 1% | $700.00 |
| Risk/Crisis Management | 10% | 3% | $3,500.00 |
| Percentage of Gross | 100% | 30% | |
| Invoice Total | | | $35,000.00 |

# Cashyew Holding, LLC    **INVOICE**

| | |
|---|---|
| **Invoice #:** | Nov-24 |
| **Invoice date:** | 1/16/2025 |
| **Job:** | Management Fee |

985 Pico Point
Colorado Springs, CO 80905

| | |
|---|---|
| **Bill to:** | DNC and TCPA Sanitizer, LLC |
| **Phone** | 888-812-1619 |

| Description | % of time spent on each activity | % | Gross Revenue |
|---|---|---|---|
| Total Revenue for November 2024 | | | $ 103,314.00 |
| Strategic Planing | 5% | 2% | $1,750.00 |
| Financial Management | 15% | 5% | $5,250.00 |
| Bookkeeping | 15% | 5% | $5,250.00 |
| Recruitment and Talent Acquision | 2% | 1% | $700.00 |
| Operation Management | 25% | 8% | $8,750.00 |
| Marketing and Management | 7% | 2% | $2,450.00 |
| Sales Management | 10% | 3% | $3,500.00 |
| Business Development | 5% | 2% | $1,750.00 |
| Project Management | 2% | 1% | $700.00 |
| Innovation/Technology Management | 2% | 1% | $700.00 |
| Intelectual Property Management | 2% | 1% | $700.00 |
| Risk/Crisis Management | 10% | 3% | $3,500.00 |
| Percentage of Gross | 100% | 34% | |
| | | Invoice Total | $35,000.00 |

# Cashyew Holding, LLC     INVOICE

| Invoice #: | Dec-24 |
| Invoice date: | 1/16/2025 |
| Job: | Management Fee |

985 Pico Point
Colorado Springs, CO 80905

| Bill to: | DNC and TCPA Sanitizer, LLC |
| Phone | 888-812-1619 |

| Description | % of time spent on each activity | % | Gross Revenue |
|---|---|---|---|
| Total Revenue for December 2024 | | | $   94,652.00 |
| Strategic Planing | 5% | 2% | $1,750.00 |
| Financial Management | 15% | 6% | $5,250.00 |
| Bookkeeping | 15% | 6% | $5,250.00 |
| Recruitment and Talent Acquision | 2% | 1% | $700.00 |
| Operation Management | 25% | 9% | $8,750.00 |
| Marketing and Management | 7% | 3% | $2,450.00 |
| Sales Management | 10% | 4% | $3,500.00 |
| Business Development | 5% | 2% | $1,750.00 |
| Project Management | 2% | 1% | $700.00 |
| Innovation/Technology Management | 2% | 1% | $700.00 |
| Intelectual Property Management | 2% | 1% | $700.00 |
| Risk/Crisis Management | 10% | 4% | $3,500.00 |
| Percentage of Gross | 100% | 34% | |
| | | Invoice Total | $35,000.00 |