## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| In re: ) | |
| ) | |
| DNC AND TCPA LIST SANITIZER, LLC, ) | Case No. 24-12624 KHT |
| ) | Chapter 11 |
| Debtor. ) | |

## OBJECTION TO MOTION TO MODIFY CASH COLLATERAL ORDER

Adam Young, Tubmanburg Limited, and Ringba, LLC (collectively, "Ringba"), by and through their counsel, Womble Bond Dickinson (US) LLP, respectfully files their Objection to Debtor's Motion to Modify Cash Collateral Order (the "Objection"). In support of their Objection, Ringba states as follows:

### PRELIMINARY STATEMENT

The Debtor's Motion to Modify Cash Collateral Order (the "Motion") is the sixth attempt to pay Cashyew Holding, LLC ("Cashyew") for vague, yet reportedly "essential" services, at the startling rate of $35,000 a *month*. This latest attempt is no more legitimate than the prior attempts. Indeed, only a month prior to filing the Motion, Cashyew requested to be paid the same sum as an "administrative expense" pursuant to 11 U.S.C. § 503(b). Ringba has objected to the administrative expense motion filed by Cashyew. Now, because Cashyew's services cannot be paid as an "administrative expense," the Debtor is requesting Cashyew's management fee be paid through the use of cash collateral. Because Cashyew and the Debtor admit, that Cashyew is a **"professional person**," purportedly providing essential management services to the Debtor's estate, Cashyew must apply for employment and compensation under 11 U.S.C. §§ 327(a) and 330.

127746391.1

## BACKGROUND

1. DNC and TCPA List Sanitizer, LLC (the "Debtor") filed for relief under Chapter 11 of the Bankruptcy Code on May 16, 2024.

2. The Debtor is 99% owned by Cashyew . Docket No. 55 ¶ 8. The remaining ownership interests in the Debtor are held by Michael O'Hare (.50%), the Debtor's CEO, and Tanya O'Hare (.50%), the Debtor's Secretary. Docket No. 84 § 28. Cashyew is in turn wholly owned by the O'Hares. Docket No. 55 ¶ 8.

3. On June 26, 2024, JPMorgan Chase Bank, N.A. ("JPMorgan") filed its Notice of Non-Consent to Debtor's Use of Cash Collateral.

4. On July 10, 2024, the Debtor filed its Motion to Assume Management Agreement with [Cashyew] (the "Motion to Assume"), under which the Debtor sought authority to pay Cashyew a 60% management fee (of the Debtor's gross revenues) on a monthly basis going forward. Docket Nos. 58, 58-1, 58-2. Multiple objections were filed in opposition to the Motion to Assume. *See* Docket Nos. 88, 100, 102 (objections were filed by Ringba, JPMorgan and the United States Trustee (the "UST")). The objecting parties asserted that the contract to be assumed was not beneficial to the estate and was apparently executed after the petition date. *See* Docket Nos. 88 ¶¶ 15, 18–21; 100 ¶¶ 10–11; 102 ¶ 9. For example, Ringba noted that the Management Agreement would "move money from the Debtor to insiders;" would benefit the O'Hares and Cashyew "over the bankruptcy estate and creditors;" and evidenced self-dealing by and between the O'Hares and their two entities (the Debtor and Cashyew). Docket No. 88 ¶¶ 18, 21. JPMorgan likewise objected that it did "not consent to the use of cash collateral to pay Cashyew" under the Management Agreement or otherwise. Docket No. 100 ¶ 12. Additionally, the UST objected that the Motion to Assume entirely lacked any explanation as to why the Court should approve the

127746391.1

motion and that it was unclear whether the Management Agreement was executed pre or postpetition. Docket No. 102 ¶¶ 5, 6. The UST also observed that it would be impossible for the Debtor to pay its proposed 60% of gross revenue to Cashyew while also paying its other expenses, amounting to about 80% of the Debtor's gross revenue. *Id.* ¶ 9. The Debtor failed to further prosecute the Motion to Assume in light of the three objections.

5. On August 28, 2024, in its second attempt, the Debtor filed its Ex Parte Motion to Approve Stipulated Final Cash Collateral Agreement. Docket No. 134. On August 30, 2024, this Court denied the Debtor's motion, noting that the requested relief could not be granted *ex parte*. Docket No. 139.

6. On September 10, 2024, the Debtor <u>again</u> filed a Motion for Authority to Use Cash Collateral. Docket No. 149. After multiple parties objected to the motion, the Debtor withdrew the same on September 20, 2024. Docket No. 163.

7. Then, on October 2, 2024, the Debtor filed its next, untimely, Motion for Authority to Use Cash Collateral "[i]n order to pay necessary operating expenses[.]" Docket No. 189 ¶ 9. Attached to the motion was a proposed budget, which included payments to Cashyew for "Owner Comp" in the total amount of $549,433.82 between May 2024 and March 2025. *See* Docket No. 189-1. The Cash Collateral Motion was filed only after the Debtor had made multiple postpetition *unauthorized* transfers to Cashyew, the O'Hares, and others, without the consent of JPMorgan or permission from this Court. *See* Docket Nos. 50; 151 ¶¶ 34–39.

8. On October 24, 2024, this Court, *pursuant to the consent* of Ringba, JPMorgan, and the UST, partially granted the Debtor's Motion for Authority to Use Cash Collateral but held that "[t]he Debtor can make all payments provided for in the Budget **except for payments to Cashyew Holding** . . . ." Docket No. 252 ¶ 1 (emphasis added).

9. On January 24, 2025, despite the Court's prior order disallowing the use of cash collateral to pay Cashyew, Cashyew filed its Motion for Administrative Expenses and Fees Pursuant to 11 U.S.C. §§'s 503(b)(1) and (2). Docket No. 302. On February 17, 2025, Ringba objected because, *inter alia,* Cashyew is a "professional person" that should have, but failed to, seek employment under 11 U.S.C. § 327(a). Docket No. 313.

10. On February 26, 2025, the Debtor filed its Fourth Amended Sub-Chapter V Plan of Reorganization Dated February 26, 2025. Docket No. 316.

11. Finally, on February 28, 2025, the Debtor filed the instant Motion to Modify Cash Collateral Order, requesting modification of this Court's order at Docket No. 252, to permit the use of cash collateral to pay Cashyew monthly payments of $35,000. *See* Motion at 3.

**OBJECTION**

12. This Motion is the Debtor's and Cashyew's sixth aggregated attempt to have insiders paid significant sums using estate funds and/or cash collateral. However, just because Cashyew and the O'Hares have unabashedly and repeatedly attempted to extract large amounts from the bankruptcy estate does not mean that this Motion is any more legitimate or justified than the prior attempts. After failing to secure compensation through other legitimate channels, the Debtor now baldly asks this Court to allow the monthly payment of $35,000, to Cashyew, out of cash collateral, despite this Court's prior order denying the same. *See* Docket No. 252. The Debtor cites no legal authority in support of its Motion.

13. Instead, the Debtor is attempting to wire-around the typical employment process to pay Cashyew as a "professional person," for playing an essential role in the management of the Debtor and the bankruptcy. *See* Docket No. 319 ¶ 22; *see also* 11 U.S.C. § 327(a). However,

Cashyew and the Debtor failed to file an employment application before Cashyew undertook these reported "services" and thus the Motion must be denied.

14. Before the Motion, Cashyew also previously attempted to have itself paid $35,000 a month (for a total of $210,000 for August 2024 through January 2025) through its Motion for Administrative Expenses and Fees Pursuant to 11 U.S.C. §§'s 503(b)(1) and (2). Docket No. 302. However, as explained in detail in Ringba's objection to that motion, Cashyew could only have been employed and compensated through 11 U.S.C. §§ 327(a) and 330, because Cashyew is a "professional person," performing purportedly "essential" management duties for the Debtor. Docket No. 313 ¶¶ 13–26; *see also* Docket No. 319 ¶ 22 ("Cashyew, an affiliated entity to the Debtor, provides essential services to the Debtor. These services include but are not limited to financial management, bookkeeping, operations management, sales and marketing, and risk/crisis management."); *see also In re Blair Oil Investments, LLC*, 588 B.R. 579, 592 (2018) (holding that "professional persons" must apply for employment and compensation under 11 U.S.C. § 327(a)). Otherwise, a professional person providing services to the bankruptcy estate without court approval is "simply considered a volunteer[.]" *Blair Oil*, 588 B.R. at 591.

15. Even if Cashyew had timely applied for employment under Section 327(a), its request would have been rejected. As an insider of the Debtor, Cashyew is plainly not "disinterested" under 11 U.S.C. § 327(a) and § 101(14), and thus is ineligible for employment under Section 327(a). *See In re 7677 E. Berry Ave. Assocs., L.P.*, 419 B.R. 833, 843 (Bankr. D. Colo. 2009); *see also* Docket No. 313 ¶¶ 27–29. Further, Cashyew has an economic interest in overcompensating itself and the O'Hares for vague services rendered, which is an interest materially adverse to the Debtor's bankruptcy estate and creditors. *C.f. In re Roper & Twardowsky, LLC*, 566 B.R. 734, 755 (Bankr. D.N.J. 2017) ("An 'adverse interest,' in turn, is usually defined

- 5 -

to mean 'any economic interest that would tend to lessen the value of the bankruptcy or that would create either an actual or potential dispute in which the estate is a rival claimant.'" (quoting *In re eToys, Inc.*, 331 B.R. 176, 189 (Bankr. D. Del. 2005)); *see also* Docket No. 313 ¶¶ 30–32. In short, Cashyew's latest Motion should be denied because, as a "professional person" providing essential management services to the Debtor, Cashyew failed to apply for employment under 11 U.S.C. § 327(a), and Cashyew is not "disinterested," in any event.

16. Additionally, the Motion should be denied because Cashyew (*i.e.*, the O'Hares) should not be permitted significant compensation where the Debtor's proposed Plan treats multiples claims as "disputed" and not payable until appeals are exhausted and where the Plan does not even set forth full payment to Ringba. First, the Debtor characterizes Ringba's claim and the claim of Cohen, LLC, as disputed. Docket No. 316 at 8. As to Ringba's claim, the Plan states that "[i]f the Debtor prevails the amount owed to unsecured creditors will decrease," suggesting the Debtor does not intend to pay the claim until the conclusion of its appellate process.[1] *Id.* The Plan explains that where disputed claims (*i.e.*, those belonging to Ringba and Cohen, LLC) are "not subject to a Final Order, the portion of the distribution that would be paid to the disputed claimant will be held by the Debtor in an interest-bearing account until the Claim is allowed or disallowed." *Id.* at 17. Thus, the Debtor intends to significantly delay payment to both Ringba and Cohen, LLC, despite claiming it has proposed a full payment Plan. *See id.* at 5, 17, 24. Indeed, as the Plan relates to unsecured creditors, Ringba and Cohen are the only significant claims owed by the Debtor. *See* Docket No. 316, Exhibit A at 29. Otherwise, only nominal amounts are to be paid to American Express and GLegal. *Id.* The Plan alleges it is a full-payment plan, but treats its two

---

[1] On March 12, 2025, the Debtor filed its Petition for Certiorari in the Colorado Supreme Court. Typically, it will take several months for the Colorado Supreme Court to determine a Petition for Certiorari. In addition, Ringba expects the Debtor's second appeal, now pending, will also be denied by the Colorado Court of Appeals and yet another Petition for Certiorari will be filed relating to the Debtor's second appeal.

127746391.1

largest creditors as disputed. Thus, the Plan, in actuality, does not provide for one-hundred percent payment to unsecured creditors, at least at any time in the near future. Under these circumstances, the cash collateral modification Motion should not be granted.

17. Second, the Plan appears to omit interest payments to Ringba, on its underlying claim of $640,000. *See* Docket No. 316 at 3, 15–16. Thus, while the Debtor is, on the one hand, proposing not to fully pay or attempt to fully pay its creditors, it is, on the other hand, requesting permission from this Court to pay the significant (and impermissible) sum of $35,000 a month to Cashyew (*i.e.*, to the O'Hares, the insiders and principals of both Cashyew and the Debtor). Thus, the Motion should be denied.

WHEREFORE, Adam Young, Tubmanburg Limited and Ringba, LLC, respectfully request that the Court deny Cashyew's Motion to Modify Cash Collateral Order and enter such other and further relief as the Court deems just and appropriate.

Respectfully submitted this 14th day of March, 2025.

        WOMBLE BOND DICKINSON (US) LLP

        *s/ Chad S. Caby*
        Chad S. Caby, No. 30927
        1601 19th Street, Suite 1000
        Denver, CO 80202
        Tel:    303-628-9583
        Fax:   303-623-9222
        E-mail: Chad.Caby@wbd-us.com

        *Attorneys for Adam Young, Tubmanburg Limited and Ringba, LLC*

127746391.1

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on March 14, 2025, a true and correct copy of the foregoing **RINGBA'S OBJECTION TO MOTION TO MODIFY CASH COLLATERAL ORDER** was electronically filed and served via CM/ECF, which action caused automatic electronic notice of such filing upon all parties in interest in this matter as follows:

Aaron A. Garber, Esq.
Wadsworth Garber Warner Conrardy, P.C.
2580 W. Main St., Ste. 200
Littleton, CO 80120
Via: CM/ECF

*Counsel for Debtor*

Vandana S. Koelsch, Esq.
Katharine S. Sender, Esq.
ALLEN VELLONE WOLF HELFRICH & FACTOR P.C.
1600 Stout Street, Suite 1900
Denver, CO 80202
Via: CM/ECF

*Special Counsel for Debtor-in-Possession*

Alan K. Motes, Esq.
Byron G. Rogers Federal Bldg.
1961 Stout St., Ste. 12-200
Denver, CO 80294
Via: CM/ECF

*Counsel for U.S. Trustee*

Peter A. Cal, Esq.
John S. Gray, Esq.
SHERMAN & HOWARD L.L.C.
675 Fifteenth St., Ste. 2300
Denver, CO 80202
Via: CM/ECF

*Counsel for JPMorgan Chase Bank, N.A.*

Joli A. Lofstedt, Esq.
PO Box 270561
Louisville, CO 80027
Via: CM/ECF

*Subchapter V Trustee*

Reza D. Rismani, Esq.
Jason D. Cooper, Esq.
TREECE ALFREY MUSAT P.C.
633 17th Street, Suite 2200
Denver, CO 80202
Via: CM/ECF

*Counsel for Glegal, LLC*

Gary Tucker, Esq.
GLEGAL, LLC
1600 Broadway, Suite 1660
Denver, CO 80202
Via: CM/ECF

*Counsel for GLegal, LLC*

Arthur Lindquist-Kleissler, Esq.
LINQUIST-KLEISSLER & COMPANY, LLC
950 S. Cherry Street, Suite 418
Denver, CO 80246
Via: CM/ECF

*Counsel for Cashyew Holding, LLC*

127746391.1

| | |
|---|---|
| Jeffrey Cohen, Esq.<br>COHEN, LLC<br>1600 Broadway, Suite 1660<br>Denver, CO 80202<br>Via: CM/ECF<br><br>*Counsel for Cohen, LLC* | Robert J. Shilliday III<br>SHILLIDAY LAW, P.C.<br>2616 W. Alamo Avenue<br>Littleton, CO 80120<br>Via: CM/ECF<br><br>*Counsel for John Cimino* |

                                            *s/ Jennifer Eastin*
                                            Of: Womble Bond Dickinson (US) LLP

127746391.1