# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| In re: ) | |
| ) | |
| DNC and TCPA List Sanitizer, LLC, ) | Case No. 24-12624-KHT |
| ) | Chapter 11 |
| Debtor. ) | |

## UNITED STATES TRUSTEE'S OBJECTION TO
## DEBTOR'S FOURTH AMENDED SUB-CHAPTER V
## PLAN OF REORGANIZATION DATED FEBRUARY 26, 2025

Gregory M. Garvin, Acting United States Trustee for Region 19, (the "UST") objects to confirmation of the Debtor's Fourth Amended Sub-Chapter V Plan of Reorganization Dated February 26, 2025 (Docket No. 316, the "Plan") and states as follows:

### Procedural History

1. On May 16, 2024, DNC and TCPA List Sanitizer, LLC (the "Debtor") filed its Voluntary Petition commencing this case under chapter 11, Subchapter V.

2. Joli A. Lofstedt is the appointed Subchapter V Trustee in this case.

3. On February 26, 2024, the Debtor filed the Plan.

4. The Court has jurisdiction over the subject matter of this proceeding pursuant to 28 U.S.C. §§ 1334(b), 157(a) and (b)(1), and 11 U.S.C. § 1191.

5. The UST has standing to bring this matter before the Court pursuant to 11 U.S.C. § 307[1] and 28 U.S.C. § 586(a)(3), and objects to the Plan under § 1191 for the following reasons.

### Objections

6. The Debtor should clarify how much it believes it owes Cashyew Holding, LLC ("Cashyew") for postpetition management fees. Generally, both the Debtor and Cashyew, each of which are controlled by Michael and Tania O'Hare, have asserted during this case and under the Plan that the Debtor owes monthly management fees to Cashyew. The Plan on page 7 states that Cashyew has asserted an administrative claim in the amount of $210,000, but that is only through January 2025. Per page 5 of the Plan, the Debtor had cash on hand of $469,993.66 as of January

---

[1] Unless otherwise indicated, all chapter, section, federal bankruptcy rule, and local bankruptcy rule references are to the Bankruptcy Code (the "Code"), 11 U.S.C. §§ 101-1532, the Federal Rules of Bankruptcy Procedure (the "Rules"), Rules 1001-9037, and to the Local Bankruptcy Rules of the United States Bankruptcy Court for the District of Colorado.

17, 2025. However, the amount of any allowed administrative claim in favor of Cashyew may affect the Debtor's ability to pay all allowed administrative claims in full on the Effective Date.

7. Consistent with the forgoing, the Debtor apparently intends to assume a management agreement with Cashyew. *See* Plan at Art. 9.1. The Debtor should disclose the amounts that it believes are necessary to cure any defaults under that agreement. Notably, the Debtor filed a Motion to Assume Management Agreement with Cashyew Holdings, Inc. on July 10, 2024, to which several parties have objected. The issues raised in that motion and those objections should be addressed in connection with any assumption of the management agreement under the Plan.

8. The Debtor should disclose the nature of any compensation that it proposes to pay to insiders that it intends to employ following confirmation, including the O'Hares and Cashyew. *See* 11 U.S.C. § 1129(a)(5)(B).

9. The Class 2 secured claim of JP Morgan Chase Bank ("JP Morgan") and payments thereon should be clarified in the following respects:

a. The Debtor should provide an updated balance of that claim, as it has been making postpetition payments to JP Morgan. *See* Plan at pp. 7 & 15 (referencing the claim amount of $86,329.98 asserted by JP Morgan in a proof of claim).

b. Per Article 5.1(b), the Debtor will make monthly payments to JP Morgan in the amount of $5,000, but the projections attached as Exhibit B do not show payments to JP Morgan in $5,000 increments but instead show aggregate payments on an annual basis totaling $36,000, $36,000, $8,000, $8,000, and $8,000.

c. Article 5.1(b) states that "all unpaid principal and accrued and unpaid interest plus attorneys' fees incurred in this bankruptcy case is finally due and payable on July 26, 2028." Inconsistently, the projections contemplate payments to JP Morgan continuing through "Year 5" of the Plan.

10. The first full sentence on page 19, regarding the Subchapter V Trustee's duties in making payments from the Unsecured Creditor Account, should be clarified.

11. Article 9.2 ends with the statement that "[a]ny executory contract or unexpired lease not assumed in accordance with the Plan shall be rejected." That sentence should be removed because Article 9.1 generally states the converse: that the Debtor assumes all executory contracts and unexpired leases not expressly rejected.

12. The end of Article 9.4 references Class 6 unsecured claims, which was probably intended to be Class 4(a).

13. The following clause towards the top of page 21 should be corrected: "If confirmed under 1191(b) and pursuant to 1186, property of the estate shall not revest in the Debtor receives a discharge . . . ." The sentence is unclear, and section 1186(a) provides generally that, in the event of a nonconsensual confirmation, property of the estate includes property acquired and earnings

for services performed after the commencement of the case but before the case is closed, dismissed, or converted, whichever occurs first.

14. To the extent that applicable law authorizes exculpation beyond 11 U.S.C. § 1125(e), the Plan contains an exculpation provision that would immunize acts outside bankruptcy in contravention of established precedent and would further immunize attorneys for malpractice in violation of Rule 1.8 of the Colorado Rules of Professional Conduct. More specifically, the UST objects to the exculpation provisions included in the Plan as follows:

   a. First, the Plan defines an "Exculpated Party" to include "the professional [sic] retained in the bankruptcy case and the employees of such professionals." Plan at Art. 1.15. The UST objects to the inclusion of employees of professionals (as opposed to the professionals themselves) as exculpated parties. Although the Tenth Circuit has yet to address the issue, most courts that have approved exculpation clauses have held that only estate fiduciaries, like trustees, the debtor's officers and directors, official committees and their members, and counsel to estate fiduciaries may be exculpated and only for conduct that is court-supervised conduct that carries out estate fiduciary duties during the chapter 11 case, that is, conduct that occurs after the petition has been filed and before the plan's effective date. *See, e.g., Matter of Highland Cap. Mgmt., L.P.*, 48 F.4th 419, 437 (5th Cir. 2022) ("[A]ny exculpation in a Chapter 11 reorganization plan [must] be limited to the debtor, the creditors' committee and its members for conduct within the scope of their duties, 11 U.S.C. § 1103(c), and the trustees within the scope of their duties . . ."); *In re Pac. Lumber Co.*, 584 F.3d 229, 252 (5th Cir. 2009) (same); *In re PWS Holding Corp.*, 228 F.3d 224, 246 (3d Cir. 2000) (court considered whether an official committee of unsecured creditors could be exculpated and held that 11 U.S.C. § 1103(c) implies both a fiduciary duty and a limited grant of immunity to members of the unsecured creditors' committee); *Patterson v. Mahwah Bergen Retail Grp., Inc.*, 636 B.R. 641, 700-01 (E.D. Va. 2022) ("Exculpation is appropriate when it is solely limited to fiduciaries who have served a debtor through a chapter 11 proceeding."); *see also Blixseth v. Credit Suisse*, 961 F.3d 1074, 1081 (9th Cir. 2020) (essential participants in the plan process solely for acts during the bankruptcy case). Thus the "exculpation clause must be limited to the fiduciaries who have served during the chapter 11 proceeding: estate professionals, the Committees and their members, and the Debtors' directors and officers." *In re Washington Mutual, Inc.*, 442 B.R. 314, 350-51 (Bankr. D. Del. 2011). Regular employees, whether of the Debtor or of a professional, are not included in this list, and many such employees will have taken no acts related to the bankruptcy case.

   b. Second, the definition of "Exculpated Claim" in the Plan includes "any claim related to any act or omission in connection with, relating to or arising out of the Debtor's restructuring efforts as of the Petition Date and through the Effective Date of the Plan. . . ." Plan at Art. 1.14. The UST objects that "the Debtor's restructuring efforts" broadly encompasses actions that could have occurred outside of this bankruptcy case. The UST also objects that an Exculpated Claim is defined to include acts or omissions "as of" the Petition Date and through the Effective Date of the Plan. The use of "as of" is ambiguous and could be interpreted to include acts and omissions occurring before the Petition Date making the temporal scope of exculpated acts impermissibly broad.

3

    Courts have held that the only acts that may be exculpated via a plan are those occurring during and in connection with the chapter 11 case, meaning those acts occurring only between the petition date and the effective date of the plan. *See In re Midway Gold US, Inc.*, 575 B.R. 475, 512 (Bankr. D. Colo 2017) (rejecting exculpation provision that would exculpate "conduct and omissions arising after the confirmation date and after the Chapter 11 Cases have concluded, including, but not limited to, administration and implementation of the Plan itself."); *In re Willowood Holdings, LLC*, Case No. 19-11079 KHT, Docket No. 501, p.17 (describing the appropriate temporal limitation for exculpation as being "through the Confirmation Date."); *Washington Mutual*, 442 B.R. at 350-51 (Bankr. D. Del. 2011) (exculpation is to cover only "actions in the bankruptcy case") *citing In re PWS Holding Corp.*, 228 F.3d 224, 246 (3d Cir. 2000).

c. Third, the UST also objects because the exculpation provision would inoculate attorney professionals from malpractice liability. Rule 1.8 of the Colorado Rules of Professional Conduct prohibits a lawyer from making "an agreement prospectively limiting the lawyer's liability to a client for malpractice unless the client is independently represented in making the agreement . . . ." Colo. RPC 1.8(h)(1). Thus, the Plan should not be confirmed unless any exculpation provision excepts malpractice liability of legal professionals.

d. Finally, as discussed above, the Plan defines "Exculpated Claim" and "Exculpated Party." The first half of Article 8.12 generally provides that an Exculpated Party will not have liability for an Exculpated Claim. However, the second half of Article 8.12 confusingly adds additional and redundant sentences to the exculpation provision beyond the carefully defined terms.

    WHEREFORE, the UST objects to confirmation of the Plan for the reasons set forth above, and requests such other relief as the Court deems appropriate.

Dated: April 2, 2025.                        Respectfully submitted,

                                            GREGORY M. GARVIN
                                            Acting United States Trustee, Region 19

                                            /s/ Alan K. Motes
                                            By: Alan K. Motes, #33997
                                            Trial Attorney for the U.S. Trustee
                                            1961 Stout Street, Suite 12-200
                                            Denver, CO 80294
                                            (303) 312-7999
                                            Alan.Motes@usdoj.gov

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on April 2, 2025, a copy of the **UNITED STATES TRUSTEE'S OBJECTION TO DEBTOR'S FOURTH AMENDED SUB-CHAPTER V PLAN OF REORGANIZATION DATED FEBRUARY 26, 2025** was served on the following parties in compliance with the Federal Rules of Bankruptcy Procedure and the Court's Local Rules:

- Attorney Aaron A Garber, via CM/ECF
- Attorney Vandana Koelsch, via CM/ECF
- Attorney Katharine S. Sender, via CM/ECF
- Subchapter V Trustee Joli A. Lofstedt, via CM/ECF

/s/ Alan K. Motes
Office of the United States Trustee