UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| IN RE:<br><br>DNC and TCPA LIST SANITIZER, LLC<br><br>    Debtor | Case No. 24-12624-KHT<br><br>Chapter 11 |
| DNC and TCPA LIST SANITIZER, LLC and MICHAEL O'HARE,<br><br>    Plaintiffs,<br><br>v.<br><br>ADAM YOUNG, an individual; And<br>RINGBA, LLC, a Delaware limited liability company<br><br>    Defendants. | Adversary Proceeding No. 25- |

**COMPLAINT FOR A TEMPORARY RESTRAINING ORDER AND FOR DECLARATORY AND INJUNCTIVE RELIEF**

DNC and TCPA List Sanitizer, LLC, the Debtor-in-Possession, ("TCPA" or the "Debtor"), by and through its bankruptcy counsel, Wadsworth Garber Warner & Conrardy, and Debtor's principal, Michael O'Hare, by and through counsel, Allen Vellone Wolf Helfrich & Factor P.C. (TCPA and O'Hare are collectively "Plaintiffs"), hereby submit their Complaint for a Temporary Restraining Order and for Declaratory and Injunctive Relief, and in support thereof state as follows:

**I.
<u>BRIEF SUMMARY</u>**

During to the pendency of this bankruptcy proceeding, on September 5, 2024,

1

Adam Young and Ringba, LLC (collectively, "Ringba") filed Motion for Contempt Citation against O'Hare in the El Paso County District Court, Cause No. 2021-CV-031668, asserting that O'Hare on behalf of Debtor violated the terms of a protective order entered in that case (the "Contempt Litigation").

Ringba seeks to hold Mr. O'Hare liable for allegedly violating the protective order by seeking leave from this Court to conduct a Rule 2004 examination of Adam Young, Harrison Gervitz, and Ringba, LLC. (ECF No. 135). However, because he is the Chief Executive Officer of Debtor, the claim against him is in effect a claim against the Debtor. Indeed, the Motion for Contempt alleges that "**TCPA Litigator at the direction of Michael O'Hare**" filed the motion for Rule 2004 examination. Any defense costs, settlement payments, or adverse judgments incurred by him could give rise to statutory and common law indemnification and/or contribution claims that can be asserted against the Debtor's estate. If the Debtor is forced to participate in the Contempt Litigation to protect its interests, it will continue to expend significant time and resources, to the detriment of the bankruptcy estate. Therefore, the continuation of the Contempt Litigation against Mr. O'Hare will have immediate adverse economic consequences for the Debtor's estate and will significantly impair its reorganization efforts.

This adversary proceeding seeks two alternative forms of relief against Ringba. First, a declaration that, pursuant to 11 U.S.C. § 362, Ringba is stayed from the continued prosecution of the Contempt Litigation against Mr. O'Hare. Second, in the alternative, an injunction pursuant to 11 U.S.C. §105 enjoining Ringba from pursing the Contempt Litigation against Mr. O'Hare. As explained below, relief is necessary from this Court to ensure that the Debtor is not forced to waive its rights under the automatic stay by being required to participate in the Contempt Litigation to protect its interests and property of the bankruptcy estate.

## II.
## JURISDICTION AND VENUE

1. The Debtor seeks declaratory judgment and injunctive relief to protect its rights and obligations under the Bankruptcy Code (including the automatic stay and an orderly distribution of creditors), its property as of the commencement of the case, and property of the estate. The Court has jurisdiction over the parties and the subject matter of this adversary proceeding pursuant to 28 U.S.C § 157 and 28 U.S.C. § 1334.

2. This proceeding is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(G).

3. Venue in this district is proper under 28 U.S.C. § 1409(a).

4. This adversary proceeding is commenced pursuant to Rule 7001(7) and (9) of the Federal Rules of Bankruptcy Procedure. Bankruptcy Rule 7065 provides

that a temporary restraining order or preliminary injunction may be issued by the Court without security.

## III.
## PARTIES

5. DNC and TCPA List Sanitizer, LLC ("TCPA"), is the debtor-in-possession, and is a limited liability company organized under the laws of Colorado.

6. Plaintiff Michael O'Hare is an individual, is the Chief Executive Officer of TCPA, and is the alleged contemnor in the Contempt Litigation.

7. Defendant Adam Young is an individual and the Chief Executive Officer of Ringba, LLC.

8. Ringba, LLC, ("Ringba") is a Delaware limited liability company.

9. Defendant Young and Ringba are the movants in the Contempt Litigation, which it brought against the Plaintiffs. Ringba is also a creditor in this action, and has been an active participant in underlying bankruptcy, Case No. 24-12624-KHT.

10. Ringba seeks damages against in the form of costs and attorney fees from Plaintiffs related to the protective order entered in a state court litigation underlying the Contempt Litigation. Ringba, which is a creditor in this action, may be served with a copy of this Complaint and summons and related documents by delivering copies thereof to its attorney of record in the underlying bankruptcy as well as the Contempt Litigation by facsimile, email and US Mail.

## IV.
## BACKGROUND

*The Plaintiffs and the Contempt Litigation*

11. TCPA is a technology and information company in the business of providing lists of telephone numbers to its customers to aide them in avoiding litigation for violating the Telephone Communications Privacy Act.

12. TCPA is owned in part and is managed by O'Hare.

13. In 2020, Defendant Ringba allegedly registered for an account with TCPA. After registering for an account, Ringba was allegedly able to download the whole of TCPA's database, not the limited set of information they were entitled to under the terms of their agreement.

14. TCPA sued Ringba, Young, and others for breach of contract among

3

other claims. That action constitutes the State Court Litigation.

15. The El Paso County District Court entered terminating sanctions against TCPA for repeated discovery violations and awarded Ringba over $650,000 in costs and attorney fees.

16. TCPA filed this bankruptcy action on May 16, 2024, in part due to the attorney fee award. (ECF No. 1).

17. TPCA appealed the terminating sanctions and the attorney fee award amount. The terminating sanctions were affirmed by the Colorado Court of Appeals, but a petition for certiorari is pending with the Colorado Supreme Court. Briefing to the Colorado Court of Appeals on the attorney fee amount was recently completed.

18. In the Motion and Affidavit for Citation of Contempt of Court, Defendants alleged that O'Hare, apparently individually, allegedly used information that was designated as "highly confidential-attorney's eyes only" to create an interrogatory attached to TCPA's Motion for Leave to Conduct a Rule 2004 examination. (ECF No. 135).

*The Need for a Temporary Restraining Order and Declaratory and Injunctive Relief*

19. The Debtor was forced into bankruptcy due to the overwhelming economic pressures exerted by the attorney fee award. The cost of defense of the Contempt Litigation and the potential liability of the Plaintiffs arising from Contempt Litigation have and will continue to immediately and irreparably harm the Debtor's resources, bankruptcy estate, and ability to effectively reorganize under Chapter 11 of the Bankruptcy Code.

20. The Debtor may be obligated under statutory and common law indemnification principles and contribution rights to (1) reimburse O'Hare for costs in defending the Contempt Litigation; and (2) indemnify O'Hare for any judgments rendered against him therein. If the Contempt Litigation is not immediately stayed, the Plaintiffs will continue to incur costs of defending that lawsuit. Moreover, to the extent the O'Hare is determined to be liable for any claim asserted in the Contempt Litigation or enter into a settlement, such judgment or settlement may be imputed upon the Debtor, which could bind the Debtor to a liquidated amount for indemnity purposes. This scenario not only forces the Debtor to remain active in the Contempt Litigation in order to protect its interests, but also results in the unauthorized liquidation of an unliquidated claim outside the Bankruptcy Court.

21. Second, due to the nature of the relationship between O'Hare and the Debtor, and the fact that Defendants seek to hold O'Hare liable solely based on his conduct in relation to this bankruptcy case and not based upon their independent conduct, a judgment against O'Hare **necessarily** requires a finding of liability on the part of the Debtor. The factfinder will be required to evaluate the Debtor's conduct,

through its manager, to determine whether a violation of a court order occurred upon which O'Hare's liability can be predicated.

22. Allowing the Contempt Litigation to continue against O'Hare creates a lose-lose situation for the Debtor, its bankruptcy estate, and its creditors. On the one hand, should the Debtor not participate in the Contempt Litigation, it will be deprived of the opportunity to properly protect their interests and defend against Defendants' allegations, and should a judgment render in favor of Defendants, the Debtor will be unfairly bound by the judgment. On the other hand, should the Debtor participate in the Contempt Litigation, it will be forced to expend what promises to be a substantial amount of time and resources to protect its interests. Both scenarios will expend property of the Debtor's bankruptcy estate, disadvantage the Debtor's other creditors, create an administrative claim for the estate in an uncertain amount, and potentially delaying the reorganization efforts.

23. At this juncture, the prompt issuance of a declaration concerning the application of the automatic stay to the Plaintiffs and award of injunctive relief are necessary to protect the Debtor, its bankruptcy estates, and its creditors from the immediate and irreparable harm that has been and will continue to be caused by the continuation of the Contempt Litigation against Plaintiffs.

## V.
## FIRST CLAIM FOR RELIEF

**Declaration that the Automatic Stay of Section 362(a) of the Bankruptcy Code Stays any Pursuit of the Contempt Litigation against the Plaintiffs**

24. Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs of this Complaint with the same force and effect as though set forth herein.

25. Pursuant to Section 362(a) of the Bankruptcy Code, the commencement or continuation of a judicial proceeding against the debtor that was or could have been initiated before the filing of bankruptcy petition is automatically stayed. Likewise, Section 362(a)(3) stays any act to obtain possession of property of the estate or of property from the estate. Debtor, by this Motion, seeks a declaration that the automatic stay of Section 362(a) of the Bankruptcy Code stays the pursuit of the Contempt Litigation against the Plaintiffs.

26. The purpose of the automatic stay "is to protect the debtor from an uncontrollable scramble for its assets in a number of uncoordinated proceedings in different courts, to preclude one creditor from pursuing a remedy to the disadvantage of other creditors, and to provide the debtor and its executives with a reasonable respite from protracted litigation, during which they may have an opportunity to formulate a plan of reorganization for the debtor." *Robert W. Thomas & Anne McDonald Thomas Revocable Tr. v. Inland Pac. Colorado, LLC*, No. 11-CV-03333-

5

WYD-KLM, 2013 WL 708493, at *1 (D. Colo. Feb. 26, 2013) (hereinafter "*Inland Pac. CO*") (quoting *A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994 (4th Cir. 1986)).

27. The protection of the automatic stay generally extends only to stay proceedings against the debtor, not to solvent co-defendants of the debtor. *Id.* at *2. However, courts have recognized an exception to this general rule "when a claim against the non-debtor will have an immediate adverse economic consequence for the debtor's estate" such as "when there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor." *Queenie, Ltd. v. Nygard Int'l*, 321 F.3d 282, 287 (2d Cir. 2003); *Inland Pac. CO*, 2013 WL 708493, at *2; s*ee Crocs, Inc. v. Effervescent, Inc.*, 2018 U.S. Dist. LEXIS 44400, *4-6, No. 06-cv-00605-PAB-KMT/16-cv-02004-PAB-KMT (D. Colo., Mar. 19, 2018) (finding that because there was "significant entwinement among the parties and the claims asserted," and to avoid proceeding in "a piecemeal fashion," judicial economy would best be served by staying the non-bankruptcy proceedings though an administrative closure of the pending lawsuit). In addition, "the automatic stay can be extended to the debtor's co-defendants if the continued litigation would impact the bankruptcy proceeding and/or the purpose of the automatic stay provision," "or if the stay would contribute to the debtor's efforts to reorganize." *Inland Pac. CO*, 2013 WL 708493, at *3.

28. The facts an analysis of the Colorado district court's opinion in *Inland Pac. CO* are instructive in this case. There, the court extended the protection of the automatic stay to co-defendants in a case involving a similar set of allegations to the one at bar. Prior to the debtor filing for bankruptcy, the plaintiff sued the debtor company, its President, O'Byrne, and WPDC, an entity receiving a transfer from the debtor company. The plaintiff alleged that the president of the debtor company violated Colorado's Uniform Fraudulent Transfer Act ("CUFTA"), and that the entity receiving a transfer from the debtor was unjustly enriched as a result of the fraudulent transfer. *Id.* at *1. In ruling that the automatic stay extended to O'Byrne and WPDC, the court reasoned as follows:

> In the case at hand, it appears that the claims asserted by Plaintiff against [the debtor's] codefendants may adversely impact the bankruptcy proceeding and the assets of [the debtor] and thus impact [the debtor's] efforts at reorganization. This is most clear as to the claim under CUFTA against O'Byrne. Defendants point out that [the debtor's] bankruptcy estate includes four fraudulent transfer claims. A claim that [the debtor's] assets were fraudulently transferred by O'Byrne or others would appear to be a claim that should be resolved in the bankruptcy proceeding, as it is an asset of [the debtor]. If [the debtor] is hindered in its ability to prosecute those claims and to use proceeds from the claims to satisfy all of its creditors because of a judgment in this case on the CUFTA claim, [the debtor's] efforts to reorganize may be stifled.

6

> Further, a finding that O'Byrne, the president of [the debtor], transferred assets out of the company could be found to be binding against [the debtor].
>
> Similarly, the claim against WPDC, while not couched as a fraudulent transfer claim, also would appear to impact the fraudulent transfer claims in the bankruptcy proceeding as it alleges that WPDC was unjustly enriched by the transfer to it, and its current ownership of, property that previously belonged to [the debtor]. The CUFTA and unjust enrichment claims in this Court involve essentially the same facts and same witnesses as in the bankruptcy fraudulent transfer claims. The witnesses will be identical, and the same documents and evidence will be used to prove each of the claims. Allowing the Trust to pursue these claims would appear to frustrate the purposes of the automatic stay provision as it would subject [the debtor] to a "scramble for its assets" in both this proceeding and the Bankruptcy Case and also allow the Trust to pursue its remedy to the disadvantage of other creditors.

*Id.*

29. The claims against O'Hare are not separate and independent from Debtor; rather the claim against O'Hare is essentially a claim against the Debtor. Defendants' claim arose from conduct alleged to have been taken by O'Hare in his representative capacity for Debtor, in connection with this bankruptcy case.

30. Thus, there is such identity between the Debtor and O'Hare that the Debtor may be said to be the real party and that a judgment against O'Hare will in effect be a judgment or finding against the Debtor. *Inland Pac. CO,* 2013 WL 708493, at *2.

31. Because Defendants' claim against O'Hare requires Debtor to indemnify O'Hare, unless and until there is a finding of breach of duty on the part of O'Hare, there cannot be a finding of individual liability on the part of O'Hare. C.R.S. § 7-80-407. Thus, as in *Inland Pac. CO*, the same facts, witnesses, and evidence that will be used to prove the claims against O'Hare will be used to prove the claims against the Debtor. *See Inland Pac. CO* 2013 WL 708493, at *3. Under these particular circumstances and the theories of liability pursued by the Defendants in the Contempt Litigation, the Debtor and O'Hare are so entwined that they cannot be parsed—there is no way the Contempt Litigation can proceed against O'Hare without implicating the Debtor. *See Crocs, Inc.*, 2018 U.S. Dist. LEXIS 44400 at *4-6. The prosecution of any claim against O'Hare will necessarily "have an immediate adverse economic consequence" for the Debtor's estate. *See Queenie, Ltd.*, 321 F.3d at 287. Moreover, to the extent that the Defendants assert de facto claims against the Debtor, it violates the automatic stay.

32. In addition, to the extent O'Hare is liable for any claim or claims asserted in the Contempt Litigation or enter into a settlement, such judgment or settlement may be imputed upon the Debtor, which could bind the Debtor to a liquidated amount for indemnity purposes. Therefore, should the Contempt Litigation continue, any judgment rendered would be an unauthorized liquidation of claims against the Debtor's estates.

33. For these reasons, if Defendants are allowed to pursue the Contempt Litigation against O'Hare, the Debtor's bankruptcy estates will be negatively impacted and the Debtor's reorganization efforts will be negatively impacted and delayed—a result that defeats the purpose of the automatic stay provision and permits a "scramble for assets" to the detriment of the Debtor and the disadvantage of their creditors. *See Inland Pac. CO* 2013 WL 708493, at *3. The unique relationship of the Debtor and O'Hare in this case, as well as the specific claim asserted by Defendants in the Contempt Litigation necessitate the application of the automatic stay to O'Hare in these narrow circumstances. Such application of the automatic stay will promote the purposes of the bankruptcy stay and allows for reorganization under chapter 11.

34. Because the Contempt Litigation, both directly and indirectly through O'Hare, is an "action or proceeding against the debtor" that will have the effect of taking property from the Debtor's estate, the Debtor is entitled to a declaration pursuant to 11 U.S.C. § 362(a)(3) that the automatic stay bars continued prosecution of the Contempt Litigation against O'Hare.

## VI.
## SECOND CLAIM FOR RELIEF

### Injunctive Relief Pursuant to 11 U.S.C. § 105(a)

35. The Debtor repeats and realleges each and every allegation contained in the foregoing paragraphs of this Complaint with the same force and effect as though set forth herein.

36. In addition to declaring that the automatic stay of Section 362(a) of the Bankruptcy Code stays the pursuit of the Contempt Litigation against O'Hare, the Debtor asks this Court to employ its power under 11 U.S.C. § 105 to stay the Contempt Litigation against O'Hare.

37. The standard in the Tenth Circuit for issuance of a preliminary injunction pursuant to Fed. R. Civ. P. 65, made applicable herein by Fed. R. Bankr. P. 7065, requires that the party seeking affirmative relief demonstrate both irreparable harm if the relief is not granted and a *prima facie* showing of a reasonable likelihood of success on the merits. *Lundgrin v. Claytor*, 619 F.2d 61, 63 (10th Cir. 1980) (citing *Crowther v. Seaborg*, 415 F.2d 437, 439 (10th Cir. 1969)). A debtor is entitled to injunctive relief where the undisputed facts show that the debtor is the

true or material target of the litigation, in violation of the automatic stay, and, as a result, continued litigation will irreparably harm the debtor's restructuring efforts.

38. The standard for issuance of a temporary restraining order mirrors the standard for issuance of a preliminary injunction. The movant must demonstrate irreparable harm, and either (1) likelihood of success on the merits of its case or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of the hardships tipping decidedly in its favor. Fed. R. Civ. P. 65.

39. In the bankruptcy context, preliminary injunctions are governed 11 U.S.C. § 105 and Bankruptcy Rule 7065. "The statutory power of the bankruptcy court to stay actions involving the debtor or its property is not limited to section 362(a)(1) and (a)(3)." *A.H. Robins Co.*, 788 F.2d at 1003. "It has been repeatedly held that 11 U.S.C. § 105, which provides that the bankruptcy court "'may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title,' 'empowers the bankruptcy court to enjoin parties other than the bankrupt' from commencing or continuing litigation." *Id.* (quoting *In re Otero Mills, Inc.*, 25 B.R. 1018, 1020 (Bankr. D.N.M.1982)).

40. "[T]he exceptions to the automatic stay of § 362(a) which are set forth in § 362(b) are simply exceptions to the stay which protect the estate automatically at the commencement of the case and are not limitations upon the jurisdiction of the bankruptcy court or upon its power to enjoin. That power is generally based upon § 105 of the Code. The court will have ample power to enjoin actions excepted from the automatic stay which might interfere in the rehabilitative process whether in a liquidation or in a reorganization case." *Id.* (quoting *In re Johns-Manville Corp.*, 26 B.R. 420, 425 (Bankr. S.D.N.Y.1983), *aff'd*, 40 B.R. 219 (S.D.N.Y. 1984), and appeal allowed, decision vacated in part, 41 B.R. 926 (S.D.N.Y. 1984)).

41. "Under § 105(a) the bankruptcy court may enjoin an action against a non-debtor, effectively extending the automatic stay to actions (beyond those subject to § 362(a)) that 'threaten the integrity of a bankrupt's estate.'" *In re Fabtech Indus., Inc.*, No. ADV.10-01294-BB, 2010 WL 6452908, at *3 (B.A.P. 9th Cir. July 19, 2010) (quoting *In re Canter*, 299 F.3d 1150, 1155 (9th Cir. 2002)) (citing *Lazarus Burman Assocs. v. Nat'l Westminster Bank USA*, 161 B.R. 891, 898 (Bankr. E.D.N.Y. 1993) (finding that an injunction was justified when an action would "interfere with, deplete or adversely affect property of the [bankruptcy estate]" or "diminish [the debtor's] ability to formulate a plan of reorganization."); and *In re Otero Mills, Inc.*, 21 B.R. at 778).

42. In the bankruptcy context, in order to obtain a preliminary injunction, the moving party must establish: (1) the likelihood of irreparable injury to the movant if preliminary relief is not granted, (2) a strong likelihood of success on the merits, (3) a balance of the hardships favoring the movant, and (4) that an injunction advances

the public interest. *See e.g., In re Fabtech Indus., Inc.*, 2010 WL 6452908, at *3.

43. The Debtor meets all standards for injunctive relief.

*Likelihood of Imminent, Irreparable Harm*

44. The Debtor is suffering irreparable harm by the continuation of the Contempt Litigation against O'Hare. The Debtor may be obligated to indemnify O'Hare under state statute and common law for their ongoing legal costs and expenses incurred in defending the Contempt Litigation. In addition, the Debtor may be liable for any judgment or settlement paid by O'Hare and/or may be obligated to contribute their proportionate share(s) of liability as determined by the factfinder in the Contempt Litigation. As a result, substantial claims may be fixed against the Debtor's bankruptcy estate.

45. Also, due to the relationship between O'Hare and the Debtor, and the fact that Defendants seeks to hold O'Hare liable solely based on a theory of corporate action, a judgment against O'Hare necessarily requires a finding of liability as to the Debtor. Accordingly, the claim against O'Hare are tantamount to a claim against the Debtor. As a result, if the Contempt Litigation against O'Hare is not immediately stayed, the Debtor will be forced to continue to participate and defend its interests, which will require the Debtor to devote considerable resources to defend against Defendants' allegations and to guard against the risk that Defendants will be able to collaterally estop the Debtor from challenging any adverse ruling reached in the Contempt Litigation regarding their liability.

46. Finally, because of the potential indemnification and/or contribution liability and the necessity that the Debtor remain active in the Contempt Litigation, continued litigation on an on-going basis will decrease the Debtor's resources and negatively impact its bankruptcy estate by dedicating resources for an administrative claim ahead of unsecured creditors.

*Strong Likelihood of Success on the Merits*

47. In this context, "a strong likelihood of success on the merits" requires a showing that "the debtor has a reasonable likelihood of a successful reorganization." *In re Fabtech Indus., Inc.*, 2010 WL 6452908, at *4. The Debtor can easily demonstrate a reasonable likelihood of successful reorganization. Where, as here, the Debtor's time to submit a plan of reorganization has not yet expired, this element is satisfied if the Debtor demonstrates a meaningful contribution toward reorganization and if the action taken against the Debtor would negatively impact any Plan of Reorganization. *See id.*

48. The Debtor has filed a Plan of Reorganization that accounts for the litigation against them, which litigation forced the filing of their petition. Except for the on-going litigation costs and risks of potential liability, prior to the

Commencement Date, and currently, the Debtor was running profitable businesses. Accordingly, once the plans for dealing with the litigation are in place, there is more than a reasonable likelihood that the Debtor will successfully reorganize and make a substantial distribution to general unsecured creditors.

*Balance of Hardships Favors the Debtor and O'Hare*

49. The balance of hardships tips decidedly towards the Debtor. As explained above, the Debtor may be liable under theories of indemnification and/or contribution for on-going litigation costs, any potential settlement or judgment with O'Hare, and/or their proportionate share(s) of liability as determined by the factfinder in the Contempt Litigation. Also, decisions against O'Hare may have a res judicata effect against the Debtor. Finally, continued litigation may harm the Debtor's business interests and a create an administrative claim ahead of general unsecured claims.

50. Should the Court not grant the relief requested herein, the Debtor may be forced to participate in the Contempt Litigation to protect its interests. Conversely, given the short time in which the Debtor anticipates they will remain in Chapter 11 and the fact that any plans of reorganization will address, among other things, the Contempt Litigation, staying the further prosecution of the Contempt Litigation against O'Hare will not significantly prejudice Defendants.

*Injunction Advances the Public Interest*

51. Given the strong possibility of a successful reorganization if the relief requested herein is granted, the public interest weighs strongly in favor of granting the injunction. Absent an injunction, the ability of the Debtor to successfully reorganize may be seriously jeopardized. Even if the Debtor is able to reorganize, there exists a substantial risk that the size and amount of O'Hare's indemnification and/or contribution claims will unnecessarily dilute the recovery of other unsecured creditors. To illustrate, funds available to pay creditors claims will be reduced if the Contempt Litigation continues because of the potential liability the Debtor has for on-going litigation costs incurred by O'Hare. In addition, the Debtor may be liable for any settlement entered into by O'Hare, which settlement may not be warranted under the facts of this particular case, but which may be entered into by O'Hare because of insurance and indemnification considerations. Undoubtedly, this is contrary to the public interest.

*The Court's Power to Grant the Relief Requested Herein*

52. Pursuant to the Court's powers under 11 U.S.C. § 105 to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title," the Debtor seeks injunctive relief to bar Defendants from pursuing the Contempt Litigation against O'Hare. As discussed above, allowing the Contempt Litigation to continue against O'Hare negatively impacts the Debtor's

11

bankruptcy estate and will interfere with and adversely affect property of the bankruptcy estate and could delay the Debtor's payment to unsecured creditors.

53. Pursuant to Rule 7065 of the Federal Rules of Bankruptcy Procedure, the Court may issue a preliminary injunction on application of a debtor-in-possession without the debtor-in-possession being required to comply with Rule 65 of the Federal Rules of Civil Procedure. Accordingly, the Debtor is not required to post any security as a condition to the Court's granting of the preliminary injunction requested herein.

WHEREFORE the Debtor demands judgment against Ringba as follows:

(1) on the First Claim for Relief, a declaration that the automatic stay applies to the Contempt Litigation with respect to O'Hare and any further related action by Defendants against O'Hare pursuant to 11 U.S.C. § 362(a);

(2) on the Second Claim for Relief, a temporary restraining order, preliminary injunction and permanent injunction, pursuant to 11 U.S.C. § 105 and Bankruptcy Rule 7065, enjoining Defendants from continuing to prosecute the Contempt Litigation; and

(3) all other appropriate relief as the Court deems just.

April 9, 2025.

        Respectfully submitted,

        WADSWORTH GARBER WARNER CONRARDY, P.C.

        /s/ Aaron Garber
        Aaron A. Garber #36099
        2580 West Main Street, Suite 200
        Littleton, Colorado 80120
        303-296-1999 / 303-296-7600 FAX
        agarber@wwc-legal.com
*Attorney for Debtor DNC and TCPA Sanitizer, LLC*

        ALLEN VELLONE WOLF HELFRICH & FACTOR P.C.

        *s/ Benjamin J. Woodruff*
        Benjamin J. Woodruff
        Jason R. Wareham
        1600 Stout Street, Suite 1900
        Denver, CO 80202
        Telephone: (303) 534-4499
        E-mail: bwoodruff@allen-vellone.com
        E-mail: jwareham@allen-vellone.com
        *Attorneys for Michael O'Hare*