| El Paso County, CO  _X_ District __County<br>Court address:  **270 South Tejon**<br> **Colorado Springs, CO**<br> **80903**<br>Phone Number:  **(719) 452-5000** | **Court Use Only** |
|---|---|
| Plaintiff:  DNC and TCPA SANITIZER, LLC,<br><br>v.<br><br>Defendants:  RINGBA, LLC, et al | |
| Attorney or Party without Attorney<br><br>Jason Wareham, Esq.,<br>Benjamin Woodruff, Esq.,           Attorneys for Plaintiff<br><br>Caitlin McHugh, Esq.,<br>Tyler Owen, Esq.,           Attorneys for Defendant | Case Number:<br>21CV31668<br><br>Division:  22 |

## TRANSCRIPTIONIST'S TRANSCRIPT

The following hearing was held on April 8, 2025, before The Honorable William Bain, District Court Judge of the El Paso Combined Court.

This transcript is the hearing in its entirety as requested by Womble Bond Dickinson (US), LLP.

D&H Transcription Services, LLC
P.O. Box 25143
Colorado Springs, CO  80936

**This transcript is the work product of D & H Transcription Services, LLC and may not be reproduced by any means without prior written consent pursuant to C.R.S. 13-5-128 and in compliance with Colorado CJD 05-03.**

EXHIBIT 2
Page 1 of 21

2

<u>I N D E X</u>

| | PAGE |
|---|---|
| Case Called / Hearing Held | 3-21 |
| Transcriptionist's Certificate | 21 |

1

EXHIBIT 2
Page 2 of 21

3

1    **(Hearing begins at 8:30:35 a.m. FTR recording time)**

2    THE COURT:  The Court will call the DNC and TCPA Sanitizer versus

3    Ringba, Adam Young case 21CV31668.  And I know we've probably got

4    attorneys for DNC and TCPA, but also maybe Mr. O'Hare, personally, so

5    who's representing DNC and TCPA?

6    MS. MCHUGH:  Good morning, Caitlin McHugh and - that's not me.  I

7    jumped ahead.  I'm sorry.  I'm here on behalf of Ringba.

8    THE COURT:  Okay, thank you.  Who do we have for DNC and TCPA? If

9    anybody?

10    MR. WAREHAM:  We are here on behalf of Mr. O'Hare personally, Your

11    Honor, as (inaudible).

12    THE COURT:  Okay.  And that was Mr. Wareham?

13    MR. WAREHAM:  Yes, Your Honor.

14    THE COURT:  All right.  Good morning to everybody.  And then Mr.

15    Owen or Mr. Woodruff, are you representing anybody here today?

16    MR. OWEN:  Good morning, Your Honor.  I'm with Ms. McHugh on

17    behalf of Ringba.

18    THE COURT:  Okay.  And Mr. Woodruff?

19    MR. WOODRUFF:  Good morning, Your Honor.  I'm here with Mr.

20    Wareham on behalf of Mr. O'Hare.

21    THE COURT:  Okay, very good.  Do we need DNC and TCPA here?

22    MR. WAREHAM:  Our position would be that we do not, Your Honor,

23    given the position that defendants have taken as far as the scope of

24    this contempt hearing and the related issues.

25    THE COURT:  Okay.  Ms. McHugh, you were going to say something?

EXHIBIT 2
Page 3 of 21

4

1     MS. MCHUGH:  I was just going to say, I'm a little confused

2  because Mr. Wareham entered an entry of appearance last fall on behalf

3  of DNC and TCPA litigator.  And I don't believe he's withdrawn from

4  that representation.

5     MR. WAREHAM:  That's actually quite fair.  Honestly, there's been

6  some discussions within the bankruptcy piece as to Mr. O'Hare's

7  personal representation versus the entity representation.  To clarify

8  my entry of appearance, it is with Mr. O'Hare personally.

9     THE COURT:  Okay.  Any word yet on your motion for a stay in

10  bankruptcy court?

11     MR. WAREHAM:  Mr. Woodruff, have you heard any response to that?

12     MR. WOODRUFF:  Your Honor, I have not heard any response from

13  Judge Tyson as far as any movement on that motion.

14     MS. MCHUGH:  And Your Honor, I can speak to that.

15     THE COURT:  Okay.

16     MS. MCHUGH:  Ringba's response is not due until April 17th.  It

17  will then be set for a preliminary hearing and then an evidentiary or

18  final hearing.  So there would not be any movement for at least six

19  weeks.  They did not file the motion seeking expedited treatment in the

20  bankruptcy court.

21     THE COURT:  Okay.  So we can at a minimum go forward today.  Any

22  disagreement with that, Mr. Wareham?

23     MR. WAREHAM:  No disagreement that we can cover the pending issues

24  here today.

25     THE COURT:  Okay.  So we're scheduled for a contempt hearing a

EXHIBIT 2
Page 4 of 21

5

1   week from Friday.  A number of motions have been filed over the

2   last 10 days or so.  And I thought it would be helpful to get together

3   this morning to get, Ms. McHugh, your initial thoughts on things and

4   how we need to be calendaring things.

5       MS. MCHUGH:  Yes, Your Honor, I appreciate you requesting this

6   hearing.  We actually had a motion that we planned to file yesterday to

7   strike several of the pleadings, but based on the status conference

8   thought it made more sense to talk with you directly first.  The

9   motions for a special motion to dismiss, we believe have no basis here.

10  That the statute is very clear on two fronts.  One, that it needs to be

11  filed within 63 days of service of the complaint.  Now the problem here

12  – and it only -

13  **(Abrupt break in audio at 8:34:29 p.m. FTR recording time; audio picks**

14  **back up at 8:34:36 a.m. FTR recording time.)**

15      MS. MCHUGH:  - applies to a cause of action.  Here there is no

16  cause of action.  There's a contempt hearing and the - if you were

17  going to use this citation as the analogy of the complaint, that was

18  served back in September.  So any such motion would have need to have

19  been filed by November 10th.  So this entire process of trying to delay

20  the contempt hearing through a special motion to dismiss can be

21  summarily dealt with because the statute just simply doesn't apply.

22      Relatedly, we would request that that determination as to whether

23  we should be going forward and all with this special motion to dismiss

24  process be determined before Ringba be required to respond self-

25  (inaudible) to the motion.  You know, what they have done is try to put

EXHIBIT 2
Page 5 of 21

6

1   the impetus on Ringba to lay out our entire trial strategy - or our

2   contempt hearing strategy in a motion that's frankly inapplicable to

3   these proceedings.

4       So I think that, to answer your question, know that I don't think

5   any changes need to happen to the calendaring because the special

6   motion to dismiss is improper and can be dealt with summarily.

7       THE COURT:  Okay.  How about argument regarding wrong party?  Mr.

8   O'Hare versus the actual party?

9       MS. MCHUGH:  Sure, I think there are - we had two choices in who

10  we would bring a proceeding against.  Because of the bankruptcy

11  proceeding, we could not bring it against the debtor, DNC litigator.

12  However, Mr. O'Hare is the one who took the actions.  He is the one who

13  caused the filing to occur.  And under Colorado law, when a person

14  takes tortious actions or takes wrong actions, whether or not they're

15  acting on behalf of a corporation, they can be held personally liable

16  for that.  The cases that Mr. Wareham cited are cases related to

17  whether or not an individual can be bound by a contract.  This is not a

18  contract case.

19      No one is seeking to bind Mr. O'Hare to a contract.  And in fact,

20  the protective order in the case applied not just to the parties, but

21  to anyone who learned information through the case was a witness, et

22  cetera.  And so it would specifically apply to Mr. O'Hare and Mr.

23  O'Hare can be considered - or these issues can be considered against

24  Mr. O'Hare personally.  I think this is also an issue that could be

25  discussed in more detail at the contempt hearing.

EXHIBIT 2
Page 6 of 21

7

1    THE COURT:  Okay.  Status of the DOJ case against your client

2  - clients.

3    MS. MCHUGH:  That has been - well, first, I would like to say that

4  this is all confidential and should be treated as such.  It should not

5  be made put into the public arena.  But there is an investigation

6  going.  It's been going for a number of years.  There have been no

7  charges of any sort brought against Ringba.

8    THE COURT:  Okay.  Status of the appeal in this case in state

9  court?

10    MS. MCHUGH:  There are several - or two, I should say.  The first

11  appeal that upheld Your Honor's dismissal of the case, the appeal

12  itself is complete.  They have now filed a motion for certiorari review

13  from the Supreme Court and our response is due in a couple of weeks.

14  They then filed a second appeal as to the attorney's piece and briefing

15  on that concluded last week.

16    THE COURT:  Okay.  And then I know you want to do a written

17  response and I'll certainly allow that.  But the way Mr. Wareham has

18  framed the attorney's eye is only information that has been shared.

19  Again, if you accept what they have described is the information that

20  has been shared, it doesn't really seem like it should be subject

21  subject to an AEO order.  Thoughts?

22    MS. MCHUGH:  Yes, Your Honor.  The information that's been shared

23  should absolutely be considered an AEO.  So when this information was

24  shared in, let's see, that would have been 2023, it was shared pursuant

25  to an AEO designation, DC - excuse me, TCPA Litigator's attorney asked

EXHIBIT 2
Page 7 of 21

8

1  that the entire deposition be treated as AEO.  At their request it

2  was and because it was AEO, there was not an objection made to Mr.

3  Young answering a question as to where his laptop went because it had

4  been taken as part of a confidential, secret government investigation.

5  And so he did share that information in the deposition.  And it was

6  marked as AEO at the time that it was shared.  And at the time that Mr.

7  O'Hare then restated that information publicly, the existence of the

8  investigation was confidential.  No one knew about it.  It's

9  detrimental to Ringba and its clients for anyone to know about it and

10  still the links and information regarding it, for example, that the

11  laptop was taken is secret, no one knows that.

12      It is - the way the investigation is right now, it is still sealed

13  in federal court.  There's no public record of Ringba being involved in

14  the investigation.  One person has been charged in the case, but in his

15  information, neither Ringba nor any other party is named or identified.

16  So the fact that there is an investigation against Ringba is still very

17  much secret, confidential.  Because of a lawsuit in Florida, some of

18  this information was filed.  The Florida court has sealed all of that

19  information as well.

20      However, because of the way the sealing works in Florida, some of

21  the pleadings were public for a couple of days while we were trying to

22  get everything sealed.  And in that time, Mr. O'Hare, we believe, came

23  in, got copies of everything and has saved them and continues to use

24  them.

25      THE COURT:  And then remind me, what kind of sanctions are you

EXHIBIT 2
Page 8 of 21

9

1   seeking?

2       MS. MCHUGH:  We're seeking one more information as to what

3   attorney's eye's information was shared with Mr. O'Hare.  We need to

4   know what he knows.  And thus, to figure out what the remedial steps

5   are, both for Mr. O'Hare and his lawyer who shared that information.

6   We're seeking attorney's fees related to this issue.  And then we're

7   seeking direction going forward that he needs to stop sharing

8   confidential information that's protected under the protective order.

9       THE COURT:  And so when do you plan to respond in writing to the

10  various pleadings?

11      MS. MCHUGH:  So I guess it would depend on what the Court asked us

12  to do.  Our plan was to move to strike today, the pleadings, because

13  again, they're procedurally improper and ask that we not substantively

14  respond until the Court rules on whether this statute is even

15  applicable.  If the Court were to not allow that, we would ask for a

16  short extension of time to respond to the substantive pleadings.  When

17  Mr. Wareham filed this very lengthy detailed motion I was in trial last

18  week and through Friday, and then I am leaving the country this evening

19  through the end of this week.  So the timing is quite bad.  And so a

20  little bit of extra time would be greatly appreciated.

21      THE COURT:  But if you had your druthers, your plan is to go to

22  the hearing next Friday?

23      MS. MCHUGH:  Yes, Your Honor.

24      THE COURT:  Mr. Wareham, would you like to respond to any of that

25  discussion?

EXHIBIT 2
Page 9 of 21

10

1       MR. WAREHAM:  Yes, Your Honor.  Thank you very much.  First

2   off, we would start from the position that a motion to strike is

3   inappropriate procedurally under the statute.  Specifically, the

4   statute, the anti-SLAPP statute, 15-20-1101, specifically governs, as

5   its first prong, a determination on applicability.  And the Court of

6   Appeals for Colorado, excuse me, I'm often in military court so it

7   falls off my tongue, has ruled recently, very recently, in VOA Sunset

8   which is contained in our motion for limited discovery that anti-SLAPP

9   protections extend to all forms of adjudications where it looks to the

10  court conduct at issue and the speech at issue and the redress at issue

11  rather than the - being a substantive claim or contained only within a

12  complaint.  And we've cited that as 55 P.3d 635.

13      So given that the statute specifically envisions applicability as

14  its first determination, a motion to strike for it being inapplicable

15  is a superfluous procedure or even improper as it attempts to avoid the

16  standards of review, baked into the statute, as well as the appellate

17  rights baked into the statute.  As far as responding to the

18  appropriateness of the AEO information at issue, you know, my

19  colleague, opposing counsel here, has really underscored by

20  demonstration the problem with that information.

21      She was unwilling to even discuss that a DOJ case existed.  A DOJ

22  case is a public concern, is a public issue.  And she highlighted even

23  on the record today that that is confidential and we cannot discuss

24  whether or not somebody has a DOJ case forthcoming or whether or not

25  they're being investigated.  We've provided attachments to our anti-

EXHIBIT 2
Page 10 of 21

1   SLAPP motion showing that that information is publicly available.

2   It's part of an unsealed indictment, a Rhode Island case, describing

3   Mr. Young's involvement in DOJ issues.  And DOJ issues, in the speech

4   regarding DOJ issues, should not be restrained as a matter of law.

5       Moreover, the nature in which this information was shared, as far

6   as submitted to the bankruptcy court as part of a 2004 proceeding, is

7   seeking redress on its face.  It's part and parcel to the litigation.

8   And this is just another means by which to suppress Mr. O'Hare's rights

9   within the 2004, and then also suppress his ability to discuss matters

10  of public concern.  So we would assert that it's applicable, but that

11  the Court should substantively order briefing on it and determine its

12  applicability in first course before moving on to the second prong of

13  anti-SLAPP.

14      As far as what we believe should happen with respect to this

15  schedule, given the issues pending as far as the automatic stay that

16  we've provided notice of, given the need to substantively litigate

17  this, as well as seek the Court's substantive ruling on limited scope

18  of discovery and support of our motion, we believe it is appropriate at

19  this time to stay the contempt proceeding scheduled for next week while

20  these issues are litigated and resolved.

21      THE COURT:  Why did you not file this motion earlier?

22      MR. WAREHAM:  I did not file this motion earlier in two parts.

23  One, we had the stay pending, Your Honor.  The stay had popped up right

24  at or near when I had entered to adjudicate this issue.  And secondly,

25  I had not found VOA at the time that had extended the protections to

EXHIBIT 2
Page 11 of 21

12

1   all judicial proceedings.  And so I brought this claim, or this

2   motion, within the expiration of the stay and within the deadlines

3   arising from removal of the stay and the re-adjudication of this

4   matter.

5       THE COURT:  This is a question for both.  In light of the appeal

6   status, do I have jurisdiction to just be doing this, or do I need to

7   get some sort of remand from a higher court?

8       MR. WAREHAM:  Given that it's your motion, I'll let you respond

9   first.

10      MS. MCHUGH:  Your Honor, I do believe that you have jurisdiction.

11  We looked into this before seeking the contempt citation back in

12  September.  The issues related on appeal relate to the dismissal of the

13  case and then the attorney's fees.  However, the Court retains

14  jurisdiction to continue enforcing its orders.  There's no challenge to

15  the protective order in this case on appeal, and the Court is not

16  deprived of the ability to continue to ensure that its orders are

17  followed.

18      THE COURT:  Mr. Wareham?

19      MR. WAREHAM:  That's an excellent question, Your Honor.  And

20  actually, as you pose it, while I've done plenty of appellate work, I

21  don't prefer to hip fire on jurisdiction questions.  I haven't fully

22  researched that issue, and I would like to substantively brief it.

23      THE COURT:  And Ms. McHugh, again, your - the two sides are in

24  disagreement about whether I can just strike this for procedural

25  violations.  Do you really think, when I take a closer look at the

EXHIBIT 2
Page 12 of 21

13

1   statute and whatever cases there might be, that, oh, yeah, he's

2   just going to strike this based on these timelines, or is your

3   thinking, well, it's a little bit novel, and we'll have to just see

4   what the judge does?

5       MS. MCHUGH:  I think on the timelines, it's crystal clear.  63

6   days unless the Court grants additional time.  The filing at issue -

7   there is no complaint, but the filing at issue was served the first

8   week of September.  Mr. Wareham cites to there being a stay.  A stay in

9   the case didn't go into place until mid-December, a month after the

10  deadline to file anything would have already passed.

11      Now, the second piece of it is whether this statute could apply to

12  a contempt proceeding.  All can see that that is probably more novel.

13  I disagree with Mr. Wareham that the case he cites in any way suggests

14  that this can be - that this statute applies to contempt hearings, and

15  every court that we have found around the country that has looked at

16  this issue has found that it doesn't apply.  But I'll concede that the

17  Court of Appeals has not looked at that specific issue, but the Court

18  need not get that far because of the 63-day bar.

19      THE COURT:  Mr. Wareham?

20      MR. WAREHAM:  As far as the 63-day bar is concerned, Your Honor,

21  the core issues here, also being constitutional in nature, it seems to

22  me before the Court were to enter some sort of ruling as to forfeiture

23  or a waiver of a constitutional protection or a constitutional defense,

24  the anti-SLAPP of which is just a procedural outline of the substantive

25  adjudication of a constitutional defense, that such a forfeiture or

EXHIBIT 2
Page 13 of 21

14

1    waiver would have to have been made knowing, intelligently and

2    voluntary before the Court could simply strike for procedural grounds.

3        While the anti-SLAPP does have a 63-day bar as to, at least within

4    the statute, even existing outside of the specific procedure to raise

5    constitutional issues, the constitutional issue regarding First

6    Amendment redress and speech still applies.  But that is definitely

7    something that should be fully briefed and adjudicated given the high

8    protection we should place - and scrutiny, we should place around

9    constitutional issues.  And I could find that nothing in Colorado law

10   that suggests a waiver or forfeiture is appropriate outside the 63-day

11   space.

12       THE COURT:  Are you in agreement with Ms. McHugh that the

13   bankruptcy court likely will not enter any kind of ruling on the motion

14   for a stay until about six weeks from now?

15       MR. WAREHAM:  So Your Honor, any time that I'm asked to opine on

16   anything occurring in a bankruptcy court, it is a serious trepidation

17   with which I respond.  I am not qualified in bankruptcy.  In fact, I

18   will declare I'm incompetent in bankruptcy.  But as I generally

19   understand the deadlines there, I believe I agree with her.  You're

20   Your Honor.

21       THE COURT:  Okay.  And then Ms. McHugh, you're leaving town

22   tonight?

23       MS. MCHUGH:  Yes, Your Honor.

24       THE COURT:  And coming back?

25       MS. MCHUGH:  Sunday afternoon.

EXHIBIT 2
Page 14 of 21

15

1      THE COURT:  Okay.  Well, I think what I would propose is for

2   Ms. McHugh to file something short today, just putting forth the law

3   you've cited on the procedural bar that I should follow.  That seems

4   fairly straightforward.  Do you have time to get that done sometime

5   today?

6      MS. MCHUGH:  Absolutely.

7      THE COURT:  And then Mr. Wareham, I'll give you a chance to

8   respond.  And can I - if we get something from Ms. McHugh by 5:00 p.m.

9   today, can you respond by Friday, whatever time on Friday you'd like,

10   even 11:59 p.m.?

11      MR. WAREHAM:  We will endeavor to do so, Your Honor, between Mr.

12   Woodruff or myself.

13      THE COURT:  Okay.  And then my plan would be to rule on that as

14   quickly as I can.  I'm out of the state Saturday to Monday, but I'll be

15   working part of that time.  I'll try to get a ruling out by close of

16   business on Monday.  And then we'll see what my order says.  And if we

17   need to reconvene, maybe Tuesday we can do that.  But at least we'll

18   have a much better sense of our timeline in light of this status

19   conference.  With all that said, Mr. - and I know, Mr. Wareham, you

20   have your motion for some discovery from Mr. Young.  I would not be

21   ruling on that until, obviously, I rule on this procedural argument.

22      But recognizing that request you've also made, anything else you

23   think we should be addressing here today?

24      MR. WAREHAM:  Yes, Your Honor, in the event that there was a

25   person - you know, you were to rule against us on the procedural bar

EXHIBIT 2
Page 15 of 21

16

1   issue, the deposition of Mr. Young is also substantively necessary

2   to defend contempt.  So in the event that the Court were to take some

3   action on the anti-SLAPP issue, and despite our appeal rights there,

4   move forward to the contempt proceeding, we still need to get Mr. Young

5   under deposition for the limited purpose of raising facts directly

6   related to our ability to defend the contempt allegation.  So I would

7   appreciate some orders either as part of your ruling or some highlights

8   as to when we could knock that out before next week.

9       THE COURT:  Ms. McHugh?

10      MS. MCHUGH:  Yes, Your Honor, I have found no authority anywhere

11  in Colorado that suggests discovery is appropriate or necessary related

12  to a contempt proceeding.  There is no question about Mr. Young's

13  conduct in this situation.  The question is quite narrow.  Did Mr.

14  O'Hare violate a protective order in this case?  There's no question as

15  to Mr. Young's conduct here, and in fact, their motion shows the

16  overreach that they're asking.  They're looking for who negotiated and

17  what the AEO provisions.  They can second-guess the AEO provisions at

18  this point, but it was never an option for Mr. O'Hare to ignore an

19  order that was in the case.  The discovery that they seek, if you look

20  in their motion, is entirely improper.  It's looking to just get into

21  the relationship, the attorney-client relationship.  And again, I have

22  seen - the cases they cite suggesting that there needs to be some due

23  process in contempt proceedings do not talk about giving the defendant

24  in a contempt proceeding the right to take discovery.  All it talks

25  about is having the hearing, which this Court has scheduled.

EXHIBIT 2
Page 16 of 21

17

1   So there's no reason for this discovery.  It's just an

2   attempt to harass Mr. Young.  A little bit of context here, Your Honor,

3   is that in the last six months, the parties came close to a global

4   resolution of all of the issues in this case.  In fact, had a signed

5   settlement agreement.  And the day the settlement agreement was signed,

6   suddenly all of these articles started popping up across the internet

7   about Ringba and Mr. Young containing information that really only

8   Michael O'Hare would know or be interested in.

9   And we asked for assurances that he wasn't doing this or at

10  minimum would stop doing this and couldn't do it.  So instead, there's

11  been a five-month-long campaign from Mr. O'Hare of paying for articles

12  about Ringba everywhere.  And I don't have conclusive proof that it is

13  Mr. O'Hare, I only have circumstantial evidence, which is why we have

14  not filed something more.  But that is the context of what is going on

15  here.

16  And I say that just so the Court will understand that in seeking

17  to take a deposition of Adam Young, it's more of the same.  I mean,

18  there are all of these deep fake videos of Adam Young supposedly

19  singing songs about taking down things.  They have used deep fakes of

20  me dressed up as a judge, beating someone with a gavel.  I mean, the

21  scope of it is frankly extraordinary at this point.  And so allowing

22  for this discovery when one, there's no real purpose for it, and two,

23  given the context of what's going on, would just be another avenue for

24  Mr. O'Hare to continue harassing Mr. Young and Ringba.

25  THE COURT:  If I were to deny the request for pre-hearing

EXHIBIT 2
Page 17 of 21

18

1   discovery, would you agree they could subpoena Mr. Young and

2   testify at the contempt hearing?

3       MS. MCHUGH:  I would say that they could subpoena him to testify.

4   Well, I don't know.  Perhaps at the contempt hearing, yes, or if they

5   wanted him to testify at the contempt hearing, I think I can make him

6   available.  Certainly remotely, he's located in Florida.  But I don't

7   see that there's any right to discovery in this case or in this

8   circumstance.

9       THE COURT:  So you had mentioned there's - you're not finding

10  anything in the law that addresses this issue of a pre-contempt

11  deposition.  Can you address that also briefly in what you submit

12  today?

13      MS. MCHUGH:  Yes, certainly.

14      MR. WAREHAM:  And if I may, Your Honor, briefly in response to

15  that, understanding that we will respond in writing, first, we object

16  to any sort of those facts being considered that were just shared.

17  There's no - you know, proffers are useful in some ways, but to rest on

18  proffers of such, you know, potentially detailed and perhaps extreme

19  basis in deciding that that's not appropriate at this time, if they

20  want to raise competent evidence, that's one thing.  Second, as far as

21  it goes with contempt and remedial contempt of indirect nature, both in

22  notice and hearing are required, and hearing due process means that you

23  get to defend yourself.

24      Specifically, the discovery sought is that this information was

25  provided by Mr. Young outside of an AEO context, has a collateral

EXHIBIT 2
Page 18 of 21

19

1  source to any sort of AEO.  And so, an after-the-fact, over-brought

2  AEO designation, where there's been collateral sourcing on this, would

3  be the exact limited discovery that we are entitled to develop in

4  advance of a hearing.  Sending somebody to a hearing saying you can

5  subpoena somebody and therefore you get to defend yourself without

6  discovery and, and prior statements to lock them in at that hearing,

7  that's putting one arm behind your back.

8      So we'll respond substantially on that, for sure, but we would ask

9  the Court not to consider and of the other shared facts at this time.

10     THE COURT:  And I won't.  I think this the cite you gave for a

11 pre-hearing deposition came just out of the anti-SLAPP statute.  If –

12     MR. WAREHAM:  Your Honor, we – if I may?  We need to divide the

13 discovery request from the special motion to dismiss discovery versus

14 contempt discovery.  Those are two different scopes and two different

15 issues.  The contempt hearing discovery or deposition would be

16 incredibly limited, more limited than the special motion to dismiss

17 discovery.  Special motion dismiss discovery is looking at intent of

18 one of the parties, the reasons behind if it is an impermissible First

19 Amendment protected scope.

20     If we are going to the contempt hearing, the discovery is limited

21 further, less about the intentions and more about actual facts that

22 would be a defense to what they've alleged.  So there are two different

23 –

24     THE COURT:  And Ms. McHugh had said there's no law that supports

25 that request.  What would you be - what could you cite for me, other

EXHIBIT 2
Page 19 of 21

20

1   than due process?

2       MR. WAREHAM:  I could cite - right.  There's - it's unclear.  I

3   will concede that it may not go so far as to be novel, but it is

4   unclear.  The law that I would support for it generally, however, is a

5   statement of the Court of Appeals.  If I can pull it up here, maybe I

6   can in time.  I believe it was Sheehan.  And then there's an additional

7   notes of decision which says essentially the broader statement that due

8   process within indirect contempt is shaped pretty much per the case.

9   Right.  And so due process is what we are asserting here.  We are

10  allowed to develop defenses to the allegations of contempt.

11      And frankly, the fact that the defenses - the facts of the

12  defenses lie with Mr. Young is coincidental in nature.  Otherwise, we -

13  you know, if it had been a third party that had shared this

14  information, we'd be seeking to develop that information as well.  So

15  the fact that it's Mr. Young involved one way or the other, is, is not

16  germane, necessarily, to the fact that we're entitled to develop a

17  defense here and that defense is collateral source.

18      THE COURT:  Okay.  So I'll order that you file whatever legal

19  citations you have by noon today, so that Ms. McHugh can take a look at

20  those and be able to respond to them.  Certainly, there's got to be a

21  case out there that addressed some issue close to this.  And if there's

22  not, that's probably a bad sign for you, Mr. Wareham.  But we'll see

23  what's out there.  So anything else you think we need to be addressing

24  Mr. Wareham?

25      MR. WAREHAM:  Not today, Your Honor.  Thank you.

EXHIBIT 2
Page 20 of 21

21

1      THE COURT:  Ms. McHugh, is there anything else from you that

2  you think we need to address today?

3      MS. MCHUGH:  No, thank you, Your Honor.

4      THE COURT:  Okay.  As I say, I'll have an order back out sometime

5  Monday.

6      MR. WAREHAM:  Okay.

7      MS. MCHUGH:  Thank you.

8      MR. WAREHAM:  Thank you very much.

9      THE COURT:  Thank you.  Have a good day.

10  **(Hearing concluded at 9:02:54 a.m. FTR recording time.)**

11                    **<u>TRANSCRIPTIONIST'S CERTIFICATE</u>**

        The above and foregoing is a true transcript of the hearing in

proceedings taken in the above-entitled case, which was audio recorded

in the El Paso County Combined Court at the time and place set forth

above, which was listened to and transcribed to the best of my ability.

        Done this 20th day of April, 2025.


                         /s/   Victoria Dommer_____
                               Transcriptionist


                         /s/   Mary Ann Directo_____
                         D&H Transcription Services, LLP
                         P.O. Box 25143
                         Colorado Springs, CO  80936

EXHIBIT 2
Page 21 of 21