UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| IN RE: ) | |
| ) | Case No. 24-12624-KHT |
| DNC AND TCPA LIST SANITIZER, LLC ) | |
| EIN: 83-3868704 ) | Chapter 11 |
| ) | Sub-Chapter V |
| Debtor ) | |

**VERIFIED RESPONSE IN OPPOSITION TO DEBTOR'S OBJECTION TO CLAIMS FILED BY COHEN, LLC (CLAIM NOS. 8 AND 9) AND REQUEST FOR EVIDENTIARY HEARING**

Cohen, LLC ("Cohen"), hereby submits this Response in Opposition to the Debtor's Objection to Claims (the "Objection") and Request for Evidentiary Hearing, and in support thereof states as follows:

# I. POINTS OF DECISION[1]

Claim 9 is for unpaid attorney's fees totaling $76, 274.29 accrued from April 02, 2023 through July 20, 2023 plus interest and collection costs. This is the only time period that is covered by Claim 9. Conceptually, however, four time periods are important to understanding Cohen's prior representation of the Debtor: The first time period, December 15, 2022 to December 23, 2022 is the Pre-Retainer Period which Debtor complains about but does not ask for disgorgement of paid fees from this time. The second time period, December 23, 2022 through April 1, 2023 is the Retainer Period which Debtor does not complain about and does not ask for disgorgement of paid fees from this time. The third period is the Claim 9 Period. The fourth time period, July 1, 2024 through present day is the Collections Period, for which collection fees and costs were estimated in Claim 9 as they had not yet been incurred.

The Debtor objects in paragraphs 19 and 28 of the Objection to 183.5 total hours billed from April 02 2023 through July 20, 2023, but only discusses seven time entries totaling 10.5 from that period that they claim are "excessive and duplicative".

Finally, Michael O'Hare ("O'Hare"), the principal and 100% owner of TCPA Litigator List is a guarantor of the Creditor's attorney's fees and thus must be joined in this contested matter. Cohen alternatively will begin an adversary proceeding against the Debtor and Mr. O'Hare to recover on Claim 9.[2]

---

[1] Cohen does not oppose the Debtor's objection with respect to Claim No. 8, acknowledging that Claim 8 is superseded by Claim 9.
[2] The Affidavit of Jeffrey Cohen verifying this Response is not notarized due to time constraints but will be substituted with a notarized version as soon as possible.

## II. SALIENT FACTS

1. In October 2021 Mr. O'Hare filed suit in El Paso County Colorado in TCPA Litigator List v. Ringba, 2021CV31668, asserting five claims for relief. TCPA Litigator List was represented by Gary Tucker, Esq for the first 13 months of litigation.

2. Mr. O'Hare was referred to Cohen by his previous counsel on December 15, 2022. Mr. O'Hare told Mr. Cohen that he would like Cohen to research his claims and evaluate his case before signing a retainer agreement, and he would pay for the fees incurred by the research and evaluation. Cohen subsequently conducted this research and evaluation, invoiced and was paid by the Debtor.

3. On December 22, 2022, the Debtor retained Cohen to represent it in the underlying state court litigation, executing a written Retention Agreement which was attached to Claim No. 9.

4. From April 02, 2023 through July 20, 2023, Cohen billed 394.5 total hours on Debtor's case. 135.9 hours were billed by Jeffrey Cohen, 194.1 hours were billed by Associate Chris Yost, 46.6 hours were billed by Associate Chase Tavernier, and 17.9 hours were billed by Paralegal Nolana McChristian.

5. Prior to and after retaining Cohen LLC there were numerous discovery disputes in the case. Ultimately, these disputes lead to the court finding on April 25, 2023 that Mr. O'Hare was "reckless" in his conduct of not producing evidence in a timely manner and Mr. O'Hare's expert was "reckless" in relying on Mr. O'Hare's statements. Court's Order April 25, 2023, attached hereto as Exhibit 1 and incorporated by reference. Noticeably absent from the Court's order was any suggestion that Mr. Cohen or Cohen LLC played a part in the deficient disclosures.

6. Before the next hearing and the close of discovery, Cohen LLC represented its client zealously in accord with direction from Mr. O'Hare. However, due to additional disclosures, the Plaintiff made an emergency motion to stay the proceeding (attached hereto as Exhibit 2 and incorporated by reference). The Court held a preliminary hearing, and then a final hearing, and stated in its order on the final hearing, dated May 12, 2023, that it believed Mr. O'Hare and his web programmer, Mr. Malosev, were not candid with the court, and were continuing to withhold evidence from their counsel and the Court. The Court thus terminated the case. Court's Order May 12, 2023, attached hereto as Exhibit 3 and incorporated by reference.

7. During the Claim 9 Period, 273.4 hours out of 394.5 billed by Cohen were spent on the numerous discovery disputes which the state court found that Mr. O'Hare caused as a result of his mendacity and repeated attempts at hiding discoverable information. See Exhibits 1 & 3. 18.7 hours were spent on expert discovery.

8. Cohen represented the Debtor through extensive motion practice, discovery, expert discovery, and trial preparation in highly complex commercial litigation involving claims exceeding $2.8 million. During the Claim Period Cohen billed the Debtor for a total of 394.5 hours, 273.4 of which were spent on discovery disputes, related hearings, and dealing with the fallout of the discovery sanctions. See Claim 9-1 Parts 4-7. Cohen even gave the Debtor a 20% discount on its services. See Claim 9-1 Part 4.

9. Throughout the engagement, Cohen provided detailed billing statements to the Debtor, which were not disputed contemporaneously. The Debtor made substantial payments exceeding $300,000, acknowledging the value and legitimacy of Cohen's services, but left $71,274.29 unpaid, forming the basis of Claim 9. The Claim also included interest of eight percent per

annum pursuant to the Retention Agreement which amounts to $12,622.38 as of September 16, 2025.

10. In July 2024, Cohen commenced collection efforts and estimated at the time that collection efforts would cost approximately $124,000, as they had not yet begun. See Claim 9-1 Part 2. To date, Cohen has incurred $69,116 in collection costs. See Invoice from Cohen LLC, attached and incorporated herein as Exhibit 4. Interest on the $28,512.50 in collection fees incurred in 2024 at eight percent per annum equals $1,612.32 as of September 16, 2025.

### III. ARGUMENT

#### A. CLAIM 9 IS PRIMA FACIE VALID UNDER RULE 3001(F)

11. Claim No. 9 was filed in accordance with Fed. R. Bankr. P. 3001(c)(1), with the Retention Agreement and invoices attached. As such, claim 9 constitutes prima facie evidence of the validity and amount of the claim (Fed. R. Bankr. P. 3001(f)), shifting the burden to the Debtor to provide competent evidence to the contrary. See *In re Friedman*, 436 F. Supp. 234 (D. Md. 1977). Mere assertions that fees are "excessive" or "duplicative" do not meet this burden of production, and Debtor has not attached any affidavits or other evidence to support its objection.

#### B. DEBTOR HAS FAILED TO JOIN A NECESSARY PARTY

12. The objection is defective because it fails to include a necessary party whose rights and obligations are directly implicated by the dispute, and Cohen LLC is asking for Mr. O'Hare to be joined. While Federal Rule of Civil Procedure 19 does not apply here, under Federal Rule of Bankruptcy Procedure 9014(c), Rule 7021 applies to contested matters, such as objections to claims. Federal Rule of Civil Procedure 21, made applicable to this bankruptcy

proceeding by Federal Rule of Bankruptcy Procedure 7021, states that "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party."

13. Here, Mr. O'Hare is a necessary party and must be added. Mr. O'Hare personally guaranteed the fees of Cohen LLC and is therefore personally liable for the attorney's fees claimed in this proceeding. Any adjudication of the Objection without Mr. O'Hare's participation would substantially impair his interests and the interests of Cohen LLC.

14. Because Mr. O'Hare's legal obligations are directly intertwined with the claim, and because his absence prevents the Court from granting complete relief, this objection should not be resolved without his joinder.

### C. COHEN'S ADVICE WAS NOT SELF-INTERESTED

15. The Objector's unreasonable and illogical argument in paragraph 21 of the Objection that Cohen LLC acted out of "self-interest" is unfounded. The recommendation to continue litigating was not motivated by any improper financial gain but was based on a careful assessment of the merits of the case, the likelihood of recovery on the remaining trade secrets claim, the potential benefits to the Debtor including the statutory provision for attorney's fees, and the Debtor's preference not to settle the case. Attorneys are obligated to advise clients based on their professional judgment, not hindsight. Furthermore, at all times, the Debtor maintained the ultimate authority to decide whether to settle or continue litigation. Cohen LLC provided advice, but the decision rested with the Debtor, who exercised its own business judgment. Reliance on counsel does not equate to abdication of independent decision-making. The attempt to shift responsibility for business decisions onto counsel improperly disregards the Debtor's role in approving its litigation strategy.

16. The Objector misconstrues the reference to litigation costs. Recognizing sunk costs and weighing them against potential recovery is a standard component of risk-benefit analysis. This analysis was presented to the Debtor to assist in its decision-making; it was not, as the Objector suggests, an act of coercion or self-interest.

17. Additionally, Cohen is unaware of any settlement offer existing at the time and Debtor has provided no evidence to suggest that there was one. Therefore, Debtor's assertion that "Cohen LLC advised the Debtor to continue litigating, not to execute a settlement" is erroneous.

### D. COHEN'S FEES WERE REASONABLE AND CONTRACTUALLY AUTHORIZED

18. The Colo. RPC 1.5(a) analysis that the Debtor conducts in the objection from paragraphs 22 through 24 is irrelevant to this case. The Adjusted Lodestar Method is the baseline for determining reasonable attorney's fees in bankruptcy cases, as affirmed by the Tenth Circuit, which is absent from Debtor's objection. See *In re Reynolds*, No. 2:18CV398 DAK, 2019 WL 4645385 (D. Utah Sept. 24, 2019), *aff'd*, 835 F. App'x 395 (10th Cir. 2021) (citing *In re Mkt. Ctr. E. Retail Prop., Inc.*, 730 F.3d 1239 (10th Cir. 2013); *In re Com. Fin. Servs., Inc.*, 427 F.3d 804 (10th Cir. 2005). Bankruptcy courts modify the Lodestar method using the factors listed in 11 U.S.C. § 330(a)(3) to evaluate the reasonableness of attorney's fees by considering the nature, extent, and value of the services provided. The statute provides a non-exhaustive list of factors, including the time spent, rates charged, and whether the services were necessary or beneficial to the case. 11 U.S.C. § 330. The Tenth Circuit has integrated these statutory factors with the Johnson factors to ensure a comprehensive assessment of fee reasonableness. *In re Com. Fin. Servs., Inc.*, 427 F.3d 804 (10th Cir. 2005); *In re Morreale*, 626 B.R. 571 (Bankr. D. Colo. 2020).

19. However, Cohen contends with the Colo. RPC 1.5(a) analysis in the interest of providing a complete response, as follows:

20. *Complexity of the Case:* The Debtor concedes that this case involved complex commercial litigation. Obj, ¶ 23A.

21. *Preclusion of Other Employment:* The Debtor makes no argument that Cohen LLC was not precluded from engaging in other employment due to its acceptance of employment by the Debtor. Obj. ¶ 23B.

22. *Customary Billing Practices:* The Debtor concedes the rates themselves were reasonable. Obj. ¶ 23C.

23. *The Amount Involved and the Results Obtained:* The Debtor makes no argument concerning this factor of the reasonableness analysis but simply states the facts of the case as if they speak for themselves, which they do not. Obj. ¶ 23D.

24. *Billing Entries:*

    (a) The Debtor highlights billing entries from May 9, 2023 and May 12, 2023, claiming they constitute "excessive" time because they have identical descriptions or multiple professionals reviewed the dismissal order, conferred internally, and advised the client regarding next steps. Obj. ¶ 19c. The Debtor's selective criticisms of time entries ignore the reality of litigation practice, where multiple attorneys confer and divide tasks to ensure effective representation. Further, the objection offers no analysis, legal authority, or factual basis to show that these entries were unreasonable.

    (b) Conversely, the combined time of approximately 10.5 hours is well within a reasonable range for the tasks performed. Preparing for trial, reviewing a dismissal order, conferring internally to align on strategy, and conducting a client call are

discrete and necessary services. The fact that more than one attorney participated does not make the time duplicative or excessive; it reflects the division of labor and the need to coordinate among the attorneys responsible for different aspects of the litigation.

    **(c)** While a Creditor bears the ultimate burden of proof on his claim, an objector bears the burden of production of evidence that the claim is improper or unreasonable. Merely listing hours and labeling them "excessive" does not satisfy this burden. The objection fails to explain how Cohen's fees were unnecessary, duplicative, or outside the bounds of reasonableness. Without such a showing, the Court should reject this Objection.

25. **Alleged Pre-engagement Work:** the Debtor in paragraph 19(e) of the Objection discusses fees that were not included in Claim 9, provides no documentary basis for their discussion of those fees in their Objection, and does not ask for disgorgement of these fees. The attorney–client relationship between Cohen and the Debtor commenced prior to the formal execution of the written Retention Agreement. Courts have long recognized that an attorney–client relationship may arise from conduct and communications, not merely from a signed contract. See *Westinghouse Elec. Corp. v. Kerr-McGee Corp.*, 580 F.2d 1311, 1319 (7th Cir. 1978); see also Restatement (Third) of the Law Governing Lawyers § 14, comment c, e (2000); CO ST RPC RULE 1.5(b) (implying that representation can begin before a retainer agreement is signed by mandating that a lawyer's fees must be communicated to the client within "a reasonable time after commencing representation"). Here, Mr. O'Hare affirmatively sought legal advice from Cohen, LLC on behalf of the Debtor, provided confidential information in furtherance of obtaining that advice, and received substantive legal services before signing the written agreement. These actions are sufficient to establish the existence

of an attorney–client relationship, regardless of whether a formal retainer was executed at that moment.

### E. INTEREST AND COLLECTION COSTS ARE PERMISSIBLE

26. The Retention Agreement expressly provides for the accrual of interest on unpaid balances of eight (8) percent per month, and for recovery of collection costs. Pre-and post-petition interest on Claim 9 is allowable in the amount prescribed in the Retention Agreement. See *In re LATAM Airlines Grp. S.A.*, 55 F.4th 377, 387 (2d Cir. 2022) (holding that the solvent-debtor exception allows interest to accrue post-petition for solvent estates in Chapter 11 bankruptcy); *In re Ultra Petroleum Corp.*, 51 F.4th 138, 150-155 (5th Cir. 2022); see also *Colfin Bulls Funding A v. Paloian* (*In re Dvorkin Holdings*), 547 B.R. 880 (N.D. Ill. 2016) (holding the contractual interest rate is the presumptively applicable interest rate for unsecured claims against solvent Chapter 11 debtors); *In re Carter*, 220 B.R. 411, 417 (Bankr. D.N.M. 1998) ("if the solvent estate produces a sufficient surplus from which to pay interest in full to all claimants at the rates prescribed any underlying agreements, contracts or judgments, then that is the interest rate that should be applied by the Court").

27. Post-petition interest on Claim 9 is also allowable under the "best interest of creditors" test. *In re Dow Corning Corp.*, 237 B.R. 380, 393-94 (Bankr. E.D. Mich. 1999) (holding under 11 U.S.C. § 1129(a)(7) the "best interest of creditors" test requires that creditors receive at least as much under a Chapter 11 plan as they would in a hypothetical Chapter 7 liquidation, which includes post-petition interest if the estate is solvent).

28. The $124,000 in collection charges is clearly labeled as an estimation in Claim 9 as collection efforts had not begun at that time. The estimation continues to appear reasonable.

### F. THE DEBTOR'S LITIGATION OUTCOME DOES NOT RENDER FEES UNREASONABLE

29. The Debtor's focus on the adverse result of the state court litigation is misplaced. Attorney fees are not judged by hindsight or outcome but by the reasonableness of services rendered at the time they were performed. See Colo. RPC 1.5(a). Cohen provided competent, diligent representation throughout, and the fact that the court ultimately ruled against the Debtor does not negate the obligation to pay for services rendered.

### G. THE DEBTOR'S ALLEGATIONS OF UNAUTHORIZED WORK ARE UNSUPPORTED

30. The claim that Cohen continued working "without authorization" (Obj. ¶ 24-28) is unsupported by any affidavits or documentary evidence. Thus, Debtor has failed to meet its burden of production on this issue.

### H. THE DEBTOR HAS WAIVED THE ATTORNEY-CLIENT PRIVILEGE

31. The Debtor has waived the attorney-client privilege by placing privileged communications directly at issue in this proceeding. While it is true that merely objecting to an attorney's fee claim does not automatically waive privilege, waiver occurs when a party affirmatively relies on the substance of attorney-client communications to advance their position.

32. In his objection, the debtor discussed the content of legal advice he received and incorporated those communications into his "reasonableness" analysis of counsel's fees. Obj. ¶¶ 19a, 21, 26, 27). By doing so, he affirmatively injected privileged information into the litigation. Courts consistently hold that when a client places communications with counsel at issue, privilege is waived. See *In re Wilkerson*, 393 B.R. 734, 737–38 (2007) (waiver occurred where debtor claimed she disclosed an asset to her attorney); *U.S. v. White*, 944 F. Supp. 2d 454, 457–59 (2013) (waiver occurred when debtor blamed attorney for omission in bankruptcy schedules).

33. The debtor cannot use privileged information selectively, relying on it to challenge the validity or amount of counsel's fees, while simultaneously invoking privilege to prevent full disclosure of those same communications. Courts have emphasized that such tactics are "manifestly unfair." *White*, 944 F. Supp. 2d at 459. As in *Wilkerson*, fairness requires that the privilege yield once the debtor made his communications with counsel a substantive element of his objection.

### I. THE DEBTOR'S ALLEGATIONS ABOUT THE TIMING AND INTENT OF CLAIM 9 ARE BASELESS AND DEFAMATORY

34. The Debtor's allegations in paragraphs 35-41 of the Objection are completely baseless, without evidentiary support and are intended to sully Cohen's reputation.

35. Creditors in bankruptcy can pursue any legitimate course of action to protect their rights

36. The course of action that Cohen has pursued is nothing but legitimate.

### IV. CONCLUSION

For the foregoing reasons, Cohen, LLC does not oppose the disallowance of Claim No. 8. However, Cohen respectfully requests that this Court overrule the Objection as to Claim No. 9, allow Claim No. 9 in full, set an evidentiary hearing on Claim 9, and grant such other relief as the Court deems just and proper.

Respectfully submitted this 17th day of September 2025,

**COHEN LLC**

By: /s/ *Jeffrey Cohen*
Jeffrey Cohen, #10876
1600 Broadway, Suite 1660
Denver, CO 80202
Phone: (303) 524-3636
Email: jcohen@cohentrial.com
*Attorney for Cohen LLC as Creditor*