

1700 Lincoln Street, Suite 2700
Denver, Colorado 80203
p 303.592.5900
f 303.592.5910
omtrial.com

*Jason B. Wesoky*
*Jason.Wesoky@OMTrial.com*
*Admitted in Colorado and Maryland*

December 10, 2025

**SENT VIA EMAIL**
Jeffrey Cohen
Cohen, LLC
1600 Broadway
Suite 1660
303-524-3636
jcohen@cohentrial.com

> RE:     *In re DNC and TCPA List Sanitizer, LLC*, Bankruptcy Case No
> 24-12624-KHT - Proof of Claim for Fees and Costs – Claim No. 9 -
> Underlying Case: *TCPA Litigator List v. Ringba*, Case No.
> 2021cv31668

Dear Mr. Cohen,

Pursuant to your request, the following report was prepared summarizing my opinions and observations in the above referenced case. A curriculum vitae is attached hereto which outlines my professional background.

Briefly, I am a licensed Colorado attorney with the law firm of Ogborn Mihm, LLP. I am also licensed in Maryland. I am a member of the Colorado Trial Lawyers Association (CTLA), the American Board of Trial Attorneys (ABOTA), the American Association for Justice, the American Bar Association, and local Colorado Bar Associations. I am the current President of CTLA.

My educational background includes a Bachelor of Arts from Miami University, obtained in 1998. I have a juris doctorate from the Catholic University of America, Columbus School of Law, located in Washington, D.C. I graduated in the top 10 of my law school class in 2001. I have completed ongoing professional studies in law since 2001.

I have been a licensed attorney since 2001. I have been practicing civil litigation for approximately 24 years. I spent most of the first 10 years of my career in large, national firms practicing commercial litigation and federal appellate work. In the past 14 years, I have continued my commercial and appellate practices and have also worked on a wide variety of other civil litigation matters, including

employment, personal injury, real estate, contracts, shareholder derivate matters, legal malpractice, and discrimination cases. ABOTA has certified I have conducted at least 20 jury trials. I have handled numerous other bench trials, preliminary injunction hearings, and evidentiary hearings. Further, I have argued at least 25 times before the Colorado Court of Appeals, the Tenth Circuit Court of Appeals, and the Colorado Supreme Court.

I have evaluated the above-mentioned claim concerning the reasonableness of the attorneys' fees and costs charged by Cohen, LLC (Cohen Law Firm) and the quality of services in the underlying case, *TCPA Litigator List v. Ringba LLC, et al.*, Case No. 21cv31668, El Paso County District Court, Colorado ("Underlying Case"), as it relates to Claim No. 9 in the bankruptcy. I have not evaluated the reasonableness of all fees and costs charged by the Cohen Law Firm because all fees and costs, other than those contained in Claim No. 9, have been paid by TCPA Litigator List ("TCPA") or are otherwise not being challenged. I reserve the right to evaluate and analyze all fees charged if fees outside of those set forth in Claim No. 9 are challenged. I have considered much of the pleadings, filings, and orders in the Underlying Case to put the fees and costs in Claim No. 9 in context.

## Materials Considered

I have reviewed the materials set forth below for the preparation of this report as listed and described below. The depth of my review of these materials varies. For example, I have reviewed and read parts of the transcripts from the April 17 and April 18 hearings. If additional facts or materials become available, I will review them as well. I reserve the right to modify my opinions based on any subsequently provided materials or if I am asked for a detailed analysis of certain materials previously reviewed.

## Brief Case Background

The plaintiff in the underlying case, TCPA owned and operated a website that sold a list of people who had previously filed claims or sued telecommunication companies. TCPA sued Ringba, LLC and others for, essentially, stealing the list and using it for their own financial gain in violation of TCPA's user agreements and terms and conditions. TCPA initiated the Underlying Litigation by suing Ringba, LLC and Adam Young in El Paso County District Court in 2021 asserting various claims.

TCPA filed the lawsuit in October 2021 through its then-counsel, Gary Tucker. TCPA, after it amended the complaint in December 2021, alleged defendants breached a contract with TCPA, were unjustly enriched, committed fraud, violated Colorado's trade secrets law, and were engaged in a conspiracy. The first several

2

months of the lawsuit were uneventful with an answer, protective order, and scheduling orders being filed. In the fall of 2022, written discovery was served and responded to, TCPA's experts were disclosed, and some depositions were conducted. In October 2022, defendants changed attorneys, hiring Wheeler Trigg O'Donell and the trial – originally set for January 2023 – was moved to April 2023. Further, in this timeframe, Mr. Tucker hired a computer expert, Mr. Frankovitz, who disclosed his written report.

After a few more depositions and some discovery, the Cohen Law Firm entered its appearance on December 29, 2022.

## Cohen Law Firm

The Cohen Law Firm is a Colorado-based law firm founded by attorney Jeffrey Cohen. Mr. Cohen has practiced law in Colorado and across the nation for more than 40 years. He handles a broad range of complex commercial litigation cases. Most of his cases are billed pursuant to an hourly fee agreement and involve sophisticated businesses.

Jeffrey Cohen (JC in invoices) is the partner and owner of the Cohen Law Firm. Chris Yost (CY) was an associate, as was Chase Tavernier (CT). Mr. Yost did most of the associate work. The paralegal that worked on TCPA's case was Nolana McChristian (NM).

Mr. Cohen has nearly 45-years of experience as a litigator in commercial litigation, bankruptcy, and municipal bond defaults. He has litigated more than 150 cases to verdict. In his litigation work, he has served as national franchise counsel in, what was in effect, a class action for plaintiffs. In bankruptcy, his work includes a $250 million Chapter 11 bankruptcy in New York, and he negotiated a $14 million settlement. He was the lead advisor for one of the world's largest hedge funds to help it with a $1.1 billion acquisition. He has myriad publications in local and national journals, newspapers, and various legal publications. He has been an adjunct professor at DU law school. He was a litigation partner at Patton Boggs and was an equity partner at Ballard Spahr. He opened the Cohen Law Firm in 2016. He is a Chambers USA rated attorney in Colorado, which is an international ranking of attorneys that large Fortune 500 companies, among others, rely on to vet and hire outside and general counsel.

Mr. Yost was hired by the Cohen Law Firm straight out of law school. He graduated from George Washington law school in Washington, D.C. in 2019. He was an editor for the *George Washington Law Review*, and worked at the SEC. He is now employed by Adams and Reese and is a commercial litigator.

3

Mr. Tavernier graduated from law school in 2022 from the University of Miami. He worked at various law firms during law school doing typical summer associate and associate work such as research and drafting. He also worked as an intern at a community court in Oregon to assist low-income people with various matters.

Ms. McChristian has a B.S. from CU in business administration and was a certified paralegal at the time of the Underlying Case. She has served in accounting roles and HR roles at a Colorado maintenance company that required reconciliation of bank accounts, handling vendor accounts, and coordinate hiring and termination of employees. Simultaneously, she worked as a consultant for another company to prepare monthly tax documents and similar accounting/bookkeeping services. Based on her resume, she has decades of experience organizing and running back offices, which is a critical skill set that is key to successful litigation.

*The numbered paragraphs below form the basis for and/or contain my opinions.*

## Cohen Law Firm Retention

1.      TCPA originally retained Gary Tucker to represent it in the Underlying Litigation. Mr. Tucker performed all litigation related to the Underlying Litigation from October 2021 until about December 29, 2022 when TCPA and Mr. O'Hare retained Cohen Law Firm. Cohen Law Firm entered its appearance in the Underlying Litigation on December 29, 2022.

2.      TCPA and Mr. O'Hare came to Cohen Law Firm based on a referral by Mr. Tucker in mid-December 2022. Mr. O'Hare requested Cohen Law Firm research the claims in the Underlying Litigation and evaluate the case. Cohen Law Firm performed this work, which TCPA and Mr. O'Hare agreed to pay for, invoiced for it, and that invoice was paid. Prior to issuing the invoice, TCPA and Mr. O'Hare retained Cohen Law Firm to represent it in the Underlying Litigation.

3.      The December 22, 2022 Fee Agreement ("Fee Agreement") was duly executed by TCPA and Mr. O'Hare (as guarantor). It clearly set forth the rates that would be charged, the retainer required, and included specific language that informed TCPA and Mr. O'Hare how costs would be charged, what could happened in the event the attorney-client relationship ended, and that any unpaid fees would incur interest and Cohen Law Firm may incur and charge costs and fees associated with collecting any unpaid balance.

4.      Because neither TCPA nor Mr. O'Hare are challenging the reasonableness of the rates charged by the Cohen Law Firm, and thus it is not necessary for me to render an opinion on the rates charged, based on my nearly 25-years of experience with hourly rates charged in the Denver market, the Cohen Law Firm's rates are

eminently reasonable. A rate of $450 per hour for an attorney with Mr. Cohen's experience is well within market rates and, in my opinion, on the lower end of such rates for civil litigators. For example, at my prior firm – a small firm of less than 10 attorneys (Darling Milligan PC) – the most senior attorneys charged $550 per hour for complex work such as multi-million-dollar transactional work, securities work, and complex commercial litigation. At larger firms, such as Brownstein Hyatt Farber Shreck, where I worked as an associate more than 15 years ago, mid-level associate rates back then exceeded $450 per hour. Indeed, at large AmLaw 100 Firms with Denver offices, I have personal knowledge that *paralegals* are billed out a $450 per hour or more.

5.      After formally retaining the Cohen Law Firm, Mr. Cohen entered his appearance in the Underlying Litigation on December 29, 2022. Throughout the firm's representation, TCPA's case was primarily handled by Mr. Cohen. The legal team was further supported by an associate attorney, Chris Yost, and staff, including a paralegal who handled docketing, filing, basic research, exhibit preparation, and related tasks. In total, two attorneys collaborated with one support staff member who collectively managed and worked on all aspects of TCPA's case.

## The Representation

6.      Extensive documents have been provided concerning the representation of TCPA. As stated above, because most of the representation and fees are not part of Claim No. 9, I have not reviewed every document, pleading, filing, etc. in detail. There are over 345 documents that were filed with the court and more than 70 disclosure/discovery documents were served.

7.      The Cohen Law Firm represented TCPA from December 29, 2022 to approximately July 27, 2023. When the Cohen Law Firm entered its appearance, the court had already vacated the original trial date, set to begin January 23, 2023, and had rescheduled it to begin April 17, 2023. Thus, TCPA effectively retained the Cohen Law Firm to parachute in and do the pre-trial and trial work in the Underlying Case. TCPA ultimately retained new counsel (Allen Vellone Wolf Helfrich & Factor P.C.) to prosecute the appeal of the Underlying Case.

8.      Based on both personal experience and my knowledge of the Denver market of civil litigators, coming into a case at the end to do the pre-trial and trial work requires significant skill and a tremendous amount of work to get up to speed in the case – without duplicating too much of the prior counsel's work. Often, such litigators will charge a premium on their hourly rate or build in a "success" or contingent fee into their hourly fee agreements because parachuting in to do only the trial work, by definition, requires the attorney to put many other cases on hold or defer deadlines in other cases (where possible) to clear enough time on one's

calendar and day-to-day schedule to devote the attention needed to get up to speed, develop a viable (and hopefully winning) litigation strategy, while simultaneously fending off the inevitable crush of motions that opposing counsel will file to try and distract the new trial counsel from the important work of getting ready for trial. Here, it appears the Cohen Law Firm did not increase its standard hourly fees or build in a success or contingent fee into the fee agreement even though it would have been quite reasonable to do so.

9.      While the Cohen Law Firm represented TCPA, the case presented complex legal and factual issues, including liability, complicated technological issues, myriad discovery/disclosure disputes, and detailed expert work. Further, opposing counsel was Wheeler Trigg, with whom I am familiar. Wheeler Trigg is a well-known law firm that has a strong reputation for extensively and thoroughly litigating cases – they leave no stone unturned – particularly as it relates to discovery, disclosure, and privilege issues.

10.     The Cohen Law Firm undertook substantial efforts to investigate, consult extensively with experts, litigate the case, engage in myriad discovery disputes, brief and argue substantive legal issues, and prepare for trial. Because the Cohen Law Firm came into the case just before trial – long after litigation had been ongoing for more than 12 months – several of the issues that ultimately had material impact on the case were already "baked in." In other words, nearly all discovery and expert disclosures had been performed prior to the Cohen Law Firm entering its appearance and it had no input or involvement in most of the discovery and expert disclosures. This includes what would eventually become the case-deciding expert disclosures, which were provided about six months before TCPA retained the Cohen Law Firm.

11.     The complexity of the case is evident in several key factors:

- It involved allegations of fraud, which require particularity and proof of intent;

- Web development and digital/web forensic experts were needed to recreate websites and recreate conditions of websites from when the defendants in the Underlying Case accessed data.

- Myriad discovery disputes and allegations regarding discovery violations were filed, briefed, and argued (including evidentiary hearings).

- Trial preparation proceeded parallel to the discovery violations hearings that required, in effect, preparing for two substantive evidentiary proceedings simultaneously.

- Trial was originally scheduled for January 2023, but was continued, twice, first to April 17, 2023, and then to May 15, 2023. This required at least two rounds of trial preparation or continuous trial preparation after the continuance from April to May 2023.

**Work Performed Prior to Disputed Invoices**

12.     As discussed *supra*, Claim No. 9 only disputes work the Cohen Law Firm performed reflected in the May through August 2023 invoices. Because, like most service providers, the Cohen Law Firm issues invoices in the month after work was performed, the disputed invoices reflect work performed between April 2, 2023 and July 20, 2023. Similarly, because costs are billed in arrears (billing occurs the month after the cost is incurred), Claim No. 9 only disputes costs from April 1, 2023 through July 31, 2023 as reflected on the Cohen Law Firm invoices.[1]

13.     Almost immediately after the Cohen Law Firm entered its appearance on December 29, 2022, defense counsel in the Underlying Case filed a motion to compel and sought a hearing a on discovery dispute. The Cohen Law Firm sought a protective order to prevent its client's proprietary information from being disclosed in the Underlying Case to the general public. At this point, it was clear there was nothing happening in the lawsuit without a substantial fight as the motion for a protective order was opposed. In my 24 years of civil litigation, I can count on one hand the number of times a protective order was opposed.

14.     While dealing with protective order issues and discovery disputes, the Cohen Law Firm also sought a preliminary injunction to prevent the defendant from further harming TCPA by selling/profiting off of TCPA's proprietary information. The motion for preliminary injunction is thorough and well supported by various exhibits (including affidavits) as well as cogent legal arguments. From December 30, 2022 through March 2023, a series of options, hearings, and discovery disputes required diligent attention and significant effort for the Cohen Law Firm to both battle from a defensive standpoint and seek opportunities for offensive action. In all, at least 49 briefs/motions were filed by the parties that, at a minimum required conferral (for unopposed motions for extension, as an example) and drafting or analysis. This does not include the orders issued by the trial judge and constitutes a new filing every 1.8 days. A few examples of the blizzard of filings in this ~90 day period include several motions in limine, motions for protective orders, motions to compel, motions to continue, motions for sanctions, and motions for summary judgment.

---

[1] However, because Claim No. 9 also seeks payment for costs associated with collecting the amounts reflected in the May through August 2023 invoices, collection costs not reflected in those invoices are sought as detailed *infra*.

15.     Thus, prior to April 2023, the Cohen Law Firm was extremely busy fighting for their client and battling an aggressive opponent. Because TCPA paid and does not request disgorgement of any fees incurred prior to the May 2023 invoice (for April work), I have not analyzed the work performed prior to April 2023 to determine if the hours were reasonable. However, because it appears TCPA is overall challenging the effectiveness of the time and fees incurred – claiming that because adverse rulings were issued by the court, fees and time subsequent to those rulings were unreasonable – I must analyze the effectiveness of the work prior to April 2023. I do so for each invoice attached to Claim No. 9 below.

**Work Performed During Disputed Period of April 2023 to July 2023**

16.     At the outset it is important to note that Cohen Law Firm provided a discount on all attorneys' fees for which it invoiced in April and May 2023. Thus, even if some of the fees assessed are deemed unreasonable as reflected on the invoice, one must take into account the  discount because that discount should result in all fees actually assessed as reasonable.

*April 1, 2023 through April 30, 2023 Legal Work – Exhibit C to Claim No. 9* [2]

17.     On April 2, 2023, the trial court issued six orders addressing many of the filings and motions that the parties had filed in the preceding few months. This was the beginning of about a month of work that would consume at least 184.3 hours of time at the Cohen Law Firm for which it billed TCPA $65,063.00 in fees. However, as noted above, those fees were discounted by 20%. Thus, the actual fees charged were only $52,050.40. Nothing in TCPA's objection to Claim No. 9 specifically objects to any work or time spent in April 2023. TCPA does generally assert the total hours/fees from April through July 2023 were excessive and that "the fees charged after April 17, 2023 should not be allowed." *See* ECF 410 pp.5-6. TCPA provides no basis as to why everything after April 17 should be disallowed other than to state "based upon the preceding."

---

[2] The May invoice includes work performed by all attorneys and staff from April 1, 2023 through April 30, 2023. It also includes time spent by all timekeepers except Mr. Cohen from May 1, 2023 to May 10, 2023. The June invoice captures all of Mr. Cohen's time for May 2023 and all other time keepers from May 11, 2023 through May 31, 2023. It is clear based on a review of the two invoices, there is no duplicate billing. To ensure clarity, I address all May time and all April time separately. I have thus excluded time spent in May in this subsection. All time spent in May is addressed in the following subsection. I have created an April invoice to show only April time. It is attached as **Exhibit 1**. I have also created a May invoice to show all May time. It is attached as **Exhibit 2**.

18.     To begin with, the April 17 date TCPA has chosen as the cut-off date seems quite arbitrary. While there was an evidentiary hearing – with testimony from various witnesses – on defendant's motions for sanctions and to compel, but arguments on those motions weren't held until the next day, April 18. There is no rational basis to preclude the Cohen Law Firm from being compensated for presenting argument on the motions. Critically, the outcome of the April 17 and April 18 hearing was that the court did not immediately terminate the case, and, in fact, granted TCPA's motion to compel in part for defendant's financial information.

19.     It seems TCPA has chosen April 17 as the cut-off date because it was the first hearing in which sanctions were discussed and considered related to discovery/ disclosure violations. But the court's order that resulted from the April 17 hearing did not terminate the case. The court's first order considering terminating the case came on April 25, 2023. The court did not terminate the case and found "that termination of the case in its entirety is too severe" of a sanction. Also, TCPA ignores a critical finding the court's order:

> "I find that the recklessness of Mr. O'Hare and Mr. Frankovitz and the gross negligence of Mr. Tucker warrant sanctions. Had they not engaged in the conduct described above, the litigation could have been narrowed considerably in the **fall of 2022**, leaving a singular focus on the terms and conditions box that plaintiff has alleged Mr. Young checked before he downloaded the list."

20.     In other words, **before TCPA retained (or likely even knew about) the Cohen Law Firm** much of the conduct that ultimately led to the case-ending sanctions had already occurred. TCPA provides no legal or factual basis – and I can think of none – for refusing to or objecting to the reasonableness of the Cohen Law Firm's fees between April 17 and April 25. Indeed, the fact that the court did not terminate the case at that time undermines TCPA's argument.

21.     The filings and transcripts reviewed demonstrate the Cohen Law Firm did everything in its power to try and prevent the worst outcome. It filed a motion for preliminary injunction; successfully sought to compel discovery from defendant; provided additional supplemental disclosures; and the court found that Mr. Cohen and defendant's counsel were "both good lawyers and certainly have been advocating for your clients as strenuously as possible." April 18, 2023 transcript at 101:22-23. Because the case continued forward, the Cohen Law Firm was obligated to continue to prepare for trial – if it had ceased doing so, it would have likely been in violation of Rule of Professional Conduct 1.3, which requires the attorney to act with reasonable diligence in representing the client.

22.     Turning to the specifics of the April fees, of the 184.3 hours spent in April 2023, 81.3 hours ($29,778.50) were incurred **prior** to April 17, 2023. Because TCPA explicitly does not challenge such fees, my analysis of the reasonableness of the fees and work performed does not include these fees and work. The fees and work TCPA challenges from April 2023 totals 103 hours and $35,284.50 before the discount, which is $28,227.60 after the discount.

23.     I've broken out the invoice into the general categories with each timekeeper's time allocated based on the categories. The categories are:

Trial Preparation: Entries explicitly mentioning "prepare for trial," "trial preparation," or "preparing for trial."

Court Hearings: Entries for attending or preparing for hearings or travel to court.

Motion Practice/Research: Entries for drafting motions, conducting legal research, or motion-related work.

Document Review/Production: Entries for reviewing documents, document production, privilege logs.

Client Communications: Entries for conferring with client, client calls, case status updates.

Expert Witnesses: Entries specifically mentioning expert witnesses or expert-related work.

Discovery/Depositions: Entries for deposition preparation, conducting depositions, or discovery work.

Administrative Tasks: Filing, administrative work, document preparation, binders, transcription.

| Category | CY Hours | CT Hours | JC Hours | NM Hours | Total Hours | Total Fees |
|---|---|---|---|---|---|---|
| Trial Preparation | 8.30 | 0.00 | 33.00 | 0.00 | 41.30 | $18,135.00 |
| Court Hearings | 16.80 | 3.50 | 8.40 | 0.00 | 28.70 | $9,282.50 |
| Motion Practice/Research | 25.80 | 7.60 | 6.50 | 0.00 | 39.90 | $13,465.50 |
| Document Review/Production | 11.40 | 1.00 | 8.40 | 0.00 | 20.80 | $6,552.50 |
| Client Communications | 7.70 | 1.80 | 0.00 | 0.00 | 9.50 | $2,957.50 |
| Expert Witnesses | 3.30 | 0.70 | 3.80 | 0.00 | 7.80 | $2,457.00 |
| Discovery/Depositions | 1.10 | 2.40 | 7.10 | 0.00 | 10.60 | $3,309.00 |
| Administrative Tasks | 6.90 | 0.00 | 1.10 | 8.50 | 16.50 | $8,904.00 |
| TOTALS | 81.30 | 17.00 | 68.30 | 8.50 | 184.30 | $65,063.00 |
| Fees after 20% discount | | | | | | $52,050.40 |

24.     The invoice reflects that Mr. Cohen spent very little time, if any, on non-core partner work. Mr. Cohen spent his time preparing for trial, hearings, and motions work. This reflects proper allocation of tasks based on experience and skill and demonstrates efficiencies rather than charging TCPA partner rates for non-partner work.

25.     As set forth *infra* ¶29, a few of the time entries identified as trial preparation were for hearing preparation. Thus, it is clear that much, but not all of the trial preparation time entries were for hearing preparation. However, because it was still clear in April that the case was going to trial in mid-May, it is not only reasonable to prepare for trial but also required. The time spent preparing for trial is quite reasonable based on the complexity of the case, the various issues that remained live in April, and the need to fully wrangle all of the evidence to prove the malfeasance by defendant. Typically, one can expect to spend as much as 50% of the total time on a case in the final 30-60 days before trial as one prepares for trial. Getting ready for trial requires an attorney to distill mountains of information into a simple and persuasive story that anyone can understand, regardless of prior knowledge or education. This involves reviewing depositions transcripts, thousands of pages of documents, and all of the arguments made by all parties (and court orders accepting or rejecting such arguments) to begin to develop the story for trial. It is quite common for attorneys to simply note "prepare for trial" in their time entries as Mr. Cohen did. This is because preparing for trial is not a set list of tasks and requires an attorney to jump from one thing to another as ideas form with each piece of information reviewed. It would likely be impossible to list with specificity

what was done during "trial prep" absent an audio recording of the attorney narrating what they were doing as they were doing it. For example, in a trial I co-lead in November 2024, I spent dozens and dozens of hours on "trial prep" that included everything from whiteboarding what we needed from each witness, to highlighting deposition transcripts, to creating PowerPoints for evidence, to asking paralegals to work with vendors to obtain demonstrative exhibits. Like Mr. Cohen, my time entry was simply "prepare for trial" because identifying specifics when they are so varied is simply not reasonable or expected within the industry based on my experience.

26.     The time spent on hearing prep and attending hearings is reasonable. The April 17 and 18 hearing was crucial to the case and there was a risk *at that hearing* the case could be dismissed. The Cohen Law Firm spent a reasonable amount of time preparing for an all-day hearing and next-day arguments that included various witnesses that needed to have direct and cross-examinations prepared. A review of the transcripts shows the attorneys were well prepared and the result demonstrates their advocacy was effective at avoiding dismissal and achieving positive rulings on TCPA's motion to compel.

27.     The time spent on motions is reasonable. TCPA filed a motion for sanctions/spoliation and responded to a motion for sanctions. There were massive, substantive motions that required myriad exhibits and complex legal arguments tied to the specific facts of the discovery/sanctionable conduct. In addition, the Cohen Law Firm was drafting a motion to reconsider the court's April 25, 2023 ruling which is heavy lift that requires careful drafting and research. The nearly 40 hours spent on this category is actually low considering the substantive nature of these motions.

28.     The time spent on document production was reasonable and necessary due to the requirements the court placed on TCPA in light of the April 17 hearing. The court mandated additional production and close coordination with opposing counsel to get it website data the court deemed necessary.

29.     All other hours in each category are similarly reasonable, with two exceptions. Based on discussions with the Cohen Law Firm, on April 4, 2023, legal research was erroneously billed for $354 for a Texas case and should be excluded, and on April 19, 2023 time was erroneously billed for "review FDDs and franchise agreements" of $1,260 that should be excluded. Also, based on discussions with the Cohen Law Firm, three time entries in April have incorrect descriptions but were correctly billed to TCPA:

- April 10, 2023 – entry stating "prepare for trial" should be "prepare for discovery dispute hearing."

- April 14, 2023 – entry stating "prepare for trial" should be "prepare for discovery dispute hearing."
- April 20, 2023 – entry stating "prepare for trial" should be "prepare for discovery dispute hearing."

30.    Client and expert communication and coordination was essential in the lead up to and after the April 17 hearing due to the requests defendant made in its sanctions motion and the court's orders during and after the hearing. Because the hearing resulted in the court ordering additional discovery and the lead up to the hearing involved coordinating the discovery needed and requested, the time spent in this category is reasonable. The time spent on administrative tasks is small and reasonable considering the significant amount of work needed to get exhibits and binders ready for the hearing, the exhibit and witness lists necessary and filings required.

31.    Because the Cohen Law Firm was efficient with their time, did not overbill for substantive tasks, performed core legal work that required substantial skill and preparation, the fees in April are reasonable and I would not discount it, particularly in light of the built-in 20% discount already applied.

32.    After excluding the erroneously billed time, $52,050.40 should be paid to the Cohen Law Firm for the April time.

*May 1, 2023 through May 31, 2023 Legal Work – Exhibit C and D to Claim No. 9* [3]

33.    A total of 163 hours and $57,590.50 was spent in May. A 20% discount was applied to May time invoiced on Exhibit C to Claim No. 9 and a 10% discount was applied to May time invoiced on Exhibit D to Claim No. 9. After the discount, $49,178.65 was charged. This is similar to the amount of time and fees charged in April. The consistency demonstrates that the Cohen Law Firm was not overbilling in either month because both months required significant preparation for trial and/or hearings. Further, both months had several substantive motions that included detailed briefing and exhibit preparation.

---

[3] *See* fn. 2. The recreated invoice for May differentiates time invoiced in Exhibit C to Claim No. 9 and time invoiced in Exhibit D to Claim No. 9 because the discount for the former is 20% and the latter is 10%. The amounts set forth in the summary table in this report reflect the various discounts.

| Category | CY | CT | JC | NM | Total Hours | Total Fees |
|---|---|---|---|---|---|---|
| Appeals/CAR 21 Motion | 18.40 | 15.90 | 0.00 | 0.00 | 34.30 | $10,481.50 |
| Trial Preparation | 6.30 | 0.00 | 28.20 | 0.00 | 34.50 | $12,690.00 |
| Court Hearings (and Depositions) | 9.70 | 2.10 | 7.20 | 0.00 | 19.00 | $8,109.50 |
| Motion Practice/Research | 7.90 | 0.30 | 9.20 | 0.00 | 17.40 | $6,631.50 |
| Document Review/Production | 8.60 | 0.00 | 0.00 | 3.00 | 11.60 | $3,234.00 |
| Client Communications | 4.40 | 1.70 | 1.10 | 0.00 | 7.20 | $2,448.50 |
| Expert Witnesses | 2.30 | 1.90 | 2.20 | 0.00 | 6.40 | $2,284.50 |
| Case Strategy/Conferences | 8.30 | 4.80 | 0.00 | 0.00 | 13.10 | $4,032.50 |
| Administrative | 10.30 | 0.80 | 7.00 | 1.40 | 19.50 | $5,734.50 |
| TOTALS | 76.20 | 27.50 | 54.90 | 4.40 | 163.00 | $57,590.50 |
| Fees after mixed 10%-20% discount | | | | | | $49,178.65 |

34.     The categories are nearly the same as April. I added a category for appeals/Rule 21 motion since it resulted in a Colorado Supreme Court case being opened and sought a stay of the trial. Further, the Cohen Law Firm initiated the direct appeal after the May 12 court order terminated the case. The fees for the Rule 21 petition and other preliminary appellate work are reasonable. I have drafted several of Rule 21 motions and assisted on several more. They require a great deal of attention to detail to ensure the best chance of the petition being granted. The drafting necessitates multiple rounds of revisions, often includes extensive legal research, and requires creative argument to find a way to convince the Court to agree that the petition fits into the narrow reason for Rule 21 review (e.g., no other remedy is available and standard appellate review is inadequate). Had the petition been granted, the district court's rulings would likely have been reversed and put TCPA on much better footing. The risk was worth it here to try and avoid a hostile ruling from the trial judge.

35.     I also replaced the April Discovery/Depositions category with a Case Strategy/Conferences category since discovery was basically over (other than the Ringba 30(b)(6) deposition) and numerous strategy meetings and conferences were performed in May in light of the court's orders, including the May 12 order terminating the case. The time spent on strategy and conferences was reasonable because it required coordination on messaging, strategy, and how to handle the lead up to the May 12 hearing (and the May 4 hearing) and how to respond to the termination of the case as well as developing appellate strategy.

36.     In Dkt 410, TCPA objects to several specific items and entries for May 2023. I address each one in turn:

*"On May 9, 2023, Mr. Cohen billed two separate entries for "prepare for trial" – one for 3.40 hours and another for 3.10 hours on the same day. Both entries have identical descriptions, totaling 6.5 hours for that day."*

37.     This does not reflect duplicative billing. As of May 9, trial was a week away and Mr. Cohen spending a total of 6.5 hours preparing for trial that day – over two sessions/time periods – is not excessive or unreasonable. That there are two different time entries is not unusual either. It is consistent with how the Cohen Law Firm bills as can be seen throughout the invoices. For example, on May 2 and May 3, CT and CY have multiple entries for the same day even though some of the descriptions are similar or overlap. Further, I discussed these specific entries with Mr. Cohen who confirmed they are not duplicative or in error.

*"On May 12, 2023 (the day the case was dismissed), three different timekeepers billed for discussions about the court's termination order and next steps. For example, C. Tavernier billed 0.30h and 0.20h for reviewing the order and conferring with J. Cohen, while C. Yarbrough billed 0.80h and 1.00h for similar discussions and conferrals, and J. Cohen billed 1.10h for a call with the client about strategy. In total, nearly 4 hours were billed on May 12 just for internal/client conferences regarding the case outcome."*

38.     A seismic event like the dismissal order on May 12 would require multiple communications internally and with the client to discuss what the order means, what possible legal strategies there are to overturn it, and how to best communicate the order to the client. TCPA's objection also misses the fact that the time entries include research on bad faith misappropriation issues and recoverability of attorneys' fees, which is not an internal/client communication. That research took .5 hours, so the actual interna/client communications were not "nearly 4 hours," but rather 3.4 hours. Again, because the fees are automatically discounted by 10% or 20%, even if it were unreasonable to charge for all internal/client communications, the Cohen Law Firm did not – it charged for only 80% or 90% of this work which eliminates any potential unreasonableness of multiple timekeepers' communication about this major event in the case.

*"There also appear to be charges to clients other than the Debtor. On May 22, 2023, a charge for "CO Courts E-Filing Case History 2022C40284 – Argote v. Ilevel." On July 17, 2023, an entry for "CO Courts E-Filing Case History 2020CV33803 – Beyond Broadway LLC v. John Lord" ($15.00) appeared on the final invoice. On April 4, 2023, Cohen billed the debtor $354.00 for another case Texas Business and Commerce."*

15

39.     The May 22 purchase from CCEF was erroneously billed to TCPA for $15. Similarly, the purchase of a case from CCEF July 17, 2023 for $15 was incorrectly billed to TCPA. Regarding the fee for the Texas Business and Commerce, it was incorrectly billed to TCPA.

40.     TCPA does not specifically contest any of the other fees in May. Based on my review, the fees charged are reasonable and were necessary for this case. Trial preparation was required because, until the May 12 order terminating the case, which was just two days before trial, the case was going to trial and counsel needed to prepare. Spending less than 40 hours on trial prep in the two weeks before trial is well within reason based on my personal experience as well as my experience helping and observing many other attorneys prepare for trial. It is not uncommon for the two weeks before trial to consume 100 or more hours of trial prep time.

41.     The time spent on court hearings was reasonable. A May 4 status conference was held that discussed the ongoing disclosure violations and expert issues. Another hearing was requested by defendant and took place on May 11 that sought – and ultimately resulted in – case terminating sanctions for conduct and information that TCPA had obtained long before it retained the Cohen Law Firm. Thus, the time spent for hearings and preparation is reasonable.

42.     The time spent on motions is reasonable. There were at least six motions/briefs that were filed by TCPA or defendant that had to be reviewed and either responded to or researched to understand the implications, particularly in light of the hearings the court required and defendant demanded.

43.     The time spent on document and exhibit preparation was reasonable. Both trial and exhibit witness lists were prepared and filed. Lots of effort was required to pull together exhibits and documents related to expert documents. The fees for expert witness work was also reasonable. This entire case ended up boiling down to what the experts could and could not opine about, what they knew (or should have been provided) long before April/May 2023, and whether their opinions were necessary and reliable in light of various disclosure issues. Spending time with them was absolutely required in this case at this stage.

44.     The administrative time spent is reasonable. There were scores of filings in May, including the Rule 21 petition and related filings. Administrative time was needed to pull together and draft jury instructions as well.

45.     $49,178.65 is reasonable for time and fees billed in May 2023.

*June 1, 2023 to June 30, 2023 – Exhibit E to Claim No. 9*

16

| Category | CY Hours | CT Hours | JC Hours | NM Hours | Total Hours | Total Fees |
|---|---|---|---|---|---|---|
| Appeals | 4.40 | 0.30 | 1.20 | 0.00 | 5.90 | $2,014.50 |
| Trial Preparation | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | $0.00 |
| Court Hearings/Depositions | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | $0.00 |
| Motion Practice/Research | 25.20 | 0.00 | 11.10 | 0.00 | 36.30 | $12,933.00 |
| Jury Instructions/Trial Prep | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | $0.00 |
| Client Communications | 1.40 | 0.00 | 0.00 | 0.00 | 1.40 | $441.00 |
| Document/Exhibit Preparation | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | $0.00 |
| Case Strategy/Conferences | 3.60 | 0.00 | 0.00 | 0.00 | 3.60 | $1,134.00 |
| Expert Witness Issues | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | $0.00 |
| Administrative/Filing | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | $0.00 |
| TOTALS | 34.60 | 0.30 | 12.30 | 0.00 | 47.20 | $16,522.50 |

46.     The May 12 ruling terminating the case required a change in approach and the work performed. Instead of trial and post-trial motions, the Cohen Law Firm was grappling with how to best position TCPA in light of the May 12 ruling. This included continuing to work on the direct appeal and objecting to defendant's motions for attorneys' fees and the fees petition itself. As reflected in Exhibit E to Claim No. 9, nearly all time spent in June was on motions and research, which was really focused on the defendant's attorney's fees petition/motion. Spending 36.3 hours on that work is reasonable. The motion for fees sought from TCPA over $800,000, which was nearly $1,000,000 with costs. This amount of fees required a robust response, which was filed on June 26, 2023 and contained 22 pages. Ultimately, after a hearing on fees (the Cohen Law Firm's representation had ceased by then), the court did not award all fees and costs defendant requested and instead limited the award to $500,000. Thus, the less than 40 hours the Cohen Law Firm spent fighting the defendant's fees was well worth the investment and quite reasonable considering the massive amount of information defendant included in the fees petition and the arguments made in opposition.

47.     $16,522.50 is reasonable for time and fees billed in June 2023.

*July 1, 2023 to July 31, 2023 fees – Exhibit F to Claim No. 9*

48.     There are only three time entries for July 2023 and TCPA does not specifically contest any of them. They encompass only $560.50 and Mr. Cohen did not charge for time he clearly spent on the case. An associate spending .6 hours on July 18 to review defendant's reply in support of its fees petition and discussing appellate strategy is reasonable. Analyzing a reply brief, such as the one defendant's filed, requires at least half an hour to understand the arguments on something other than a cursory level. Further, discussing how to approach the appeal with an eye towards the judge's actual findings and legal conclusions is a discussion that warrants at least fifteen minutes.

49.     The July 19 time entry for 1 hour for going through previously produced recordings and transcripts to determine how that evidence impacted the court's rulings and how to position them for appeal is reasonable. The court terminated the case due to TCPA's principal having prior knowledge (long before the Cohen Law Firm was retained) about how its website could and could not be accessed and the failure to accurately disclose that information. Understanding that issue for appeal is essential and spending an hour to do so is well within reason.

50.     The July 20 time entry for .3 hours for a conference call about specific evidence and issues is reasonable. The associate only charged for the time he was on the call. There is nothing to suggest the call didn't happen.

51.     $560.50 is reasonable for fees and time spent in July 2023.

### *Interest Charged and Collection Costs*

52.     TCPA complains about the interest charged and the costs of collection. Both of these are clearly laid out in the fee agreement. The Cohen Law Firm assessed the interest and collection costs consistently through the invoicing process. The interest rate charged is reasonable and similar to other firms' interest rates I've worked with and evaluated. The collection costs are an estimate – not an actual cost. Because collection costs are clearly disclosed as part of what the firm will charge to TCPA if it does not timely make payment, they can be charged. The collection costs are not yet fully known, but would include my time/fees, costs of filing, and costs and fees of other attorneys involved. In a recent case I represented a client in, we pursued our fees against a third-party who repeatedly failed to show for depositions. The court awarded my fees (at my rate of $650 per hour) plus interest. Because the fees necessarily included the efforts involved to chase the third party to obtain sanctions and fees, the costs of collection were part of the award.

53.     Collection costs and fees reflected in the invoices at issue are reasonable and necessary. The Cohen Law Firm seeks payment for three invoices totaling $141,612.93: Invoice 4225 dated September 5, 2024 for $22,385.50 (**Exhibit 3**); Invoice 4739 dated September 16, 2025 for $46,730.50 (**Exhibit 4**); and Invoice

18

4844 dated December 8, 2025 for $72,496.93 (which includes $60,399.00 in attorney fees and $12,097.93 in expenses, including $12,082.93 for my fees paid through 12/1/2025) (**Exhibit 5**). The fees are generally broken out by month and key activity as follows:

| Month | Hours | Fees | Key Activities |
|-------|-------|------|----------------|
| Aug-24 | 50.3 | $22,385.50 | Cimino deposition & objections |
| Sep-24 | 35.1 | $15,492.50 | Hearings, plan objections |
| Oct-24 | 25.8 | $11,700.00 | Multiple hearings, plan review |
| Nov-24 | 3.7 | $1,665.00 | Monitoring bankruptcy proceedings |
| Jan-25 | 0.7 | $315.00 | Client communication |
| Feb-25 | 2.3 | $1,035.00 | Plan review, settlement discussions |
| Mar-25 | 1.7 | $765.00 | Plan assessment |
| Apr-25 | 10.5 | $4,725.00 | Confirmation hearing, objections |
| Jun-25 | 9 | $4,050.00 | Settlement negotiations, plan review |
| Jul-25 | 1.1 | $495.00 | Plan confirmation order review |
| Aug-25 | 3.6 | $1,583.00 | Research, objection review |
| Sep-25 | 64.6 | $27,275.00 | Major drafting (response to claims objection) |
| Oct-25 | 62.4 | $25,557.00 | Discovery responses, expert search |
| Nov-25 | 31.8 | $14,160.00 | Discovery finalization, motion drafting |
| Dec-25 | 11.8 | $4,920.00 | Summary judgment motion, expert report |
| TOTAL | 315.2 | $136,122.50 | |

54. These amounts represent work performed in the bankruptcy proceedings to defend and prosecute Claim No. 9, including responding to TCPA's objection to the claim, conducting substantial discovery, retaining and coordinating with an expert witness on fee reasonableness, researching complex res judicata and bankruptcy law issues, and drafting motions. The complexity of defending a claim in bankruptcy court after the underlying litigation has concluded requires significant legal skill and time. Indeed, bankruptcy practice is a different animal from regular litigation.

55. While my bankruptcy litigation experience is limited, my experience is that disputed claims in bankruptcy and bankruptcy litigation work is extremely difficult. Bankruptcy plans can be extremely complex and contentious. Local bankruptcy attorneys at large firms can charge over $800 an hour for their work. That the Cohen Law Firm did not have to hire outside counsel for this work, due to Mr. Cohen's extensive experience in bankruptcy, likely saved tens of thousands in fees.

56. The Cohen Law Firm's attorneys spent considerable hours reviewing the record, analyzing documents, preparing detailed briefs and arguments, conducting legal research on contested bankruptcy matters, and coordinating all aspects of the claims defense. *See generally* **Exhibit 3; Exhibit 4; Exhibit 5**. This work required the same level of diligence and expertise as the underlying representation itself. Based on my nearly 25 years of civil litigation experience, including complex commercial cases and fee disputes, the time spent and fees charged for collection efforts are well within industry standards.

57. Any assertion the fees incurred asserting and defending Claim No. 9 are unreasonable because they exceed the fees in dispute fails and would require attorneys whose fees aren't paid to simply give up on payment simply because the amount they're seeking to recover isn't in the several-hundred-thousand-dollar range. This would incentivize former clients to not pay fees. Attorneys routinely incur substantial costs and fees collecting unpaid fees, and those costs are properly recoverable when, as here, they are disclosed in the fee agreement and the client fails to timely pay invoices for services rendered. If TCPA wanted to avoid collection costs and fees, it could have paid the fees owed.

58. $141,612.93 is reasonable for fees and costs incurred to collect the fees that TCPA has failed to pay.

**Legal Analysis of Reasonableness of the Fee.**

59. I agree with TCPA that Colo. RPC 1.5(a) identifies factors to determine the reasonableness of an attorney's fees. "Colorado courts also apply a lodestar analysis

20

to fees, which calculates reasonable fees by multiplying the number of hours reasonably expended on a case by a reasonable hourly rate." *In re McGill*, 623 B.R. 876, 902 (D. Colo. 2020). "In calculating the lodestar amount, it is appropriate to make percentage reductions to the total hours billed if a court finds those hours to be excessive, redundant, unnecessary, lacking in complexity, or if the attorney has engaged in block billing in a manner that precludes effective review." *Id.* Courts "should not, become green-eyeshade accountants .… So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Id.* In bankruptcy, courts also look to 11 U.S.C. § 330 for reasonable of fees, which factors are similar to both Rule 1.5(a) and the lodestar factors.

### A. *The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly*

60.     TCPA does not dispute the case was a complex commercial lawsuit. TCPA claims the fees were excessive, pointing mainly to the fact the case did not go to trial and was dismissed by the court as a sanction for disclosure violations. But TCPA ignores the fact that the case did proceed to an all-day evidentiary hearing on April 17 and a half-day of arguments on April 18. Thus, in effect, the case went to trial for a day and a half. Further, as discussed *supra* ¶¶7-8, the Cohen Law Firm parachuted in with only three months before the April trial date (later pushed to May), which required a massive amount of work and time to understand the case, work it up, create a litigation strategy, and deal with the myriad motions – both offensive and defensive. This case also presented quite novel legal and factual issues related to the source code of TCPA's website and the various expert and non-expert disclosure issues that were done by prior counsel which ultimately led to the court sanctioning TCPA.

61.     TCPA points to the total hours spent by Mr. Cohen and his associate (706.1 hours, *see* Dkt. 410 p.5), but TCPA glosses over the fact that it is not disputing at all the vast majority of that time and associated fees. The objection is limited to approximately $71,000 of fees, which is a fraction of the total fees incurred and which TCPA paid without objection. It should not go unmentioned, however, that the fact 706.1 hours were spent by the attorneys on this matter in such a short time demonstrates the urgency and amount of work required. Because most of the time was spent between January and May, this amounts to about 140 hours per month of attorney time. A brief review of the number of filings, the fact that at least four hearings were held, and two appellate efforts were undertaken further highlights the complexity and amount of time and labor needed.

62.     To perform the legal work in this case properly required significant skill, which was demonstrated by the Cohen Law Firm throughout its representation.

The level of sophistication of the motions/briefs is high and demonstrates careful thought and research. The efforts were clearly not slap-dash or copy and paste jobs from prior cases. The witness examination and arguments performed at the April 17 and 18 hearings was also high-level. The court complemented the Cohen Law Firm's efforts, which a court does not always do.

63.     The Cohen Law Firm appropriately and quickly responded to the deluge of motions filed by the defense and even found opportunities to go on the offensive to try and get the court to see that TCPA was not a bad actor and, instead, the defendant was being unreasonable in deploying a litigation strategy that avoided the merits and focused on discovery disputes.

   *B. The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer*

64.     While TCPA cannot say for certain if the Cohen Law Firm was precluded from taking other cases because it represented TCPA, the answer to that question is an absolute "yes" and it should have been apparent to TCPA. It seems TCPA is not an unsophisticated client – its business is about finding people who are prone to litigation and warning telecommunications companies about them.

65.     As pointed out *supra*, the sheer volume of work required and the time spent (140 hours per month) demonstrates the Cohen Law Firm would necessarily have to turn other work away to focus on TCPA's case. Assuming a 40-hour billable work week, that's 160 hours a month for legal work, of which the TCPA case consumed nearly 100%.

66.     Having "parachuted" in to cases just before trial, my experience tells me that a lawyer absolutely ends up turning away other clients and cases as a result. In this particular instance, based on my conversation with Jeffrey Cohen, the same is true. When one parachutes in to do the trial work on a case, it requires almost myopic focus only on that case – to the exclusion of other cases and particularly to the exclusion of potential clients who may need immediate legal services.

   *C. The fee customarily charged in the locality for similar legal services*

67.     TCPA admits the hourly rate was not excessive, thus, the customary fees for similar legal services in the area need not be addressed. As set forth *supra*, the fees are reasonable. TCPA's claim that the time is excessive is not addressed in this subsection.

   *D. The amount involved and the results obtained*

22

68.     TCPA correctly points out the number of claims (five) and that it was seeking $2.8 million in damages. These damages were not pie-in-the-sky either. They were supported by actual data showing reductions in paying customers and the entrance of a new competitor (the defendant) that siphoned business from TCPA. Because the amount involved is – by all measures – large, the fees should be viewed through that prism. As a ratio of damages to fees, the fees incurred were approximately 13% of the damages sought. The fees that are in dispute represent a mere 2.5% of the damages sought.

69.     The results obtained are clear: the case was terminated by the court before trial resulting in TCPA losing and having a judgment entered against it that required it to file bankruptcy. The result is terrible for TCPA. However, what is patently clear from the court's orders and the appellate record is that none of the blame falls at the feet of the Cohen Law Firm. As set forth *supra*, the die was cast long before TCPA retained the Cohen Law Firm. Indeed, as the court pointed out, TCPA's principal, Mr. O'Hare, was largely to blame for his blatant failure to provide information in this case and his continued failure to do so even after the court warned TCPA. Thus, the fact that the results were bad should have zero impact on the reasonableness of the fees. (Of course, if the court had found the Cohen Law Firm failed to act reasonably or was "reckless", it is likely the Cohen Law Firm would not even be seeking to recover fees in this proceeding).

   *E. The time limitations imposed by the client or by the circumstances*

70.     There were no time limitations placed on the work by TCPA. The fact that TCPA retained the Cohen Law Firm very late in the litigation, by necessity, created circumstances that limited the amount of time that could be spent on the case. This limit-by-circumstance demonstrates the fees charged were reasonable. As set forth *supra*, the Cohen Law Firm could have insisted on a premium on its fee to do the later entry in the case. Further, because so much substantive work was done prior to the Cohen Law Firm entering its appearance, it did not have to do a lot of work that is otherwise seen in cases such as written discovery, motions to dismiss, case management issues, etc.

71.     Interestingly, though, because so much work was left to the end of the case (summary judgment, expert challenges, discovery disputes), in the short time-frame of the representation, the Cohen Law Firm did a massive amount of substantive work. It was more than reasonable for the Cohen Law Firm to spend a total of 706.1 hours (*see* Dkt. 410 p.5) in the short time it represented TCPA.

   *F. The nature and length of the professional relationship with the client*

23

72.     TCPA did not have a relationship with Mr. Cohen prior to the engagement. The professional relationship was short-lived because of the nature of the assignment, about six months. The brevity of the relationship should not impact the amount of fees charged and does not demonstrate that the fees are unreasonable. TCPA found a highly competent trial attorney on short notice (in December no less) who was capable and willing to go to trial in a few months at a very reasonable rate. If TCPA went to a much larger law firm, not only would the rates have been higher, but the case would have been worked on by at least six people to ensure leverage billing (whereby a law firm maximizes its profits by having more junior staff an attorneys do most of the work while senior attorneys merely supervise).

### G. The experience, reputation, and ability of the lawyer or lawyers performing the services

73.     While TCPA claims it has no knowledge of the experience, reputation and ability of the Cohen Law Firm, it is difficult to believe that TCPA blindly hired the firm based solely on its prior counsel's recommendation. At the very least, TCPA should have researched the firm on-line. Regardless, as set forth *supra* the firm and Mr. Cohen specifically are well regarded, and have extensive experience litigating cases like this one.

74.     TCPA complains that "the failed results in the State Court Litigation speak for themselves" as a reason not to pay the fees it incurred. Again, there is zero evidence in the record that the "failed results" have anything to do with the work the Cohen Law Firm performed. To the contrary, it seems that based on the lead up to the April 17 hearing, the court was keen on dismissing the case for TCPA's failure to disclose critical information. Due to the Cohen Law Firm's counter-offensive motions and its good work at the hearing, the case survived (though not unscathed). Had TCPA and its principal not have been found "reckless" by the court and had TCPA provided information in a timely fashion, perhaps the case would have gone to trial. It did not because the court found TCPA's continuing conduct after April 17 required dismissal as a sanction because it was the only way for the prejudice to defendant to be cured. According to the decisions of both the trial court and the appellate court, TCPA only has itself to blame for the "failed results."

75.     In Colorado, clients retain the right to terminate their attorney at any time and for any reason. This principle is well established. Where a client has terminated the attorney-client relationship but there is no misconduct warranting forfeiture of any fee, the attorney is entitled to compensation based on the reasonable value of services rendered prior to discharge, considering as factors the reasonable value of the benefits the client obtained as a result of the services rendered prior to discharge and the nature and gravity of the cause that led to the attorney's discharge. Courts also tend to enforce the written fee agreement when

the hourly rate, costs, etc. have been specifically negotiated and contracted for. Nothing in the fee agreement is ambiguous or imposes a limitation on the fees or work to be performed.

76.     TCPA claims that it did not "authorize" any work after May 12. However, nothing in its objection to Claim No. 9 includes an email or other documentation terminating the Cohen Law Firm's services. An attorney cannot simply "stop" working on a case that is in active litigation, particularly where there are tight, 14-day deadlines for post-order motions, a 49-day appellate deadline, and a pending motion for fees that requires a response within 21-days. *See* Colo. RPC 1.16(a)(3) and (d); C.R.C.P. 121 § 1-1(2)(b) (court approval for withdrawal required); *Sobol v. District Court of Arapahoe County,* 619 P.2d 765 (Colo. 1980). Further complicating issues here is the fact that TCPA is a company and thus cannot represent itself. *See, e.g. Bennie v. Triangle Ranch Co.*, 73 Colo. 586 (1923).

## Summary of Opinions

I have formed several opinions based on the materials reviewed and my training, background, education, and experience in the sub-specialty of plaintiff's personal injury cases. My opinions are set forth in detail *supra* but I summarize them briefly here for convenience.

- The Cohen Law Firm devoted substantial effort to TCPA's case, meticulously preparing and aggressively pursuing all available avenues, while pursuing a trial strategy and preparing for trial in the face of massive opposition that can only be described as a "scorched earth defense." The firm upheld the highest standards of professionalism, ensuring TCPA received the best chance of overcoming the defendant's scorched earth tactics that focused not on the merits of the case but rather on discovery and disclosure violations and sanctions that the Cohen Law Firm had no involvement in because such disclosures were completed long before the Cohen Law Firm even knew about this case, let alone was actively involved.

- The hourly rates are not disputed and are reasonable based on my personal experience.

- The total fees TCPA disputes, $71,274.29, are reasonable, minus $1,644 in erroneously billed fees and costs. Thus, the total fees and costs (before interest and collection costs) that should be awarded are $69,630.29. These fees and costs, for the work performed are within the range of industry standards and are fees for work performed that were necessary to the case and the work and fees charged are customarily charged in the area of complex commercial litigation. For the reasons above, this is a reasonable fee

25

considering the complexity of the case, the time spent, and the work undertaken.

- The interest charged and the $141,612.93 in fees and costs to collect TCPA's unpaid invoices are also reasonable and within market norms. Because they are explicitly disclosed in the fee agreement and TCPA was made aware of them, they can be assessed.

The above opinions are based upon the material I have reviewed to date. Further review of related materials or additional discovery may cause me to refine my opinions accordingly. I charge $650.00 per hour for my professional services.

Sincerely,

Jason Wesoky

C.V., Publications, and Testimony

# Jason Wesoky

**Ogborn Mihm, LLP**
**1700 Lincoln St., Suite 2700**
**Denver, CO 80203**
**303-592-5900**
**jason.wesoky@omtrial.com**

## Education

The Catholic University of America, Columbus School of Law, Washington, D.C.
  Juris Doctor, Magna Cum Laude, May 2001
  Rank: 7/210-top 4%
  Commencement Speaker, Law Review, Vernon X. Miller Scholarship

Miami University, Oxford, OH Bachelor of Arts, May 1998
  Double Major in History and Creative Writing
  Swim Team 1994-1998 (NCAA Div. I) – Captain, Academic All-Conference, Conference Champions

## Bar Membership

  Maryland - December 2001
  Colorado - October 2002 (Bar #34241)
  U.S. District Court for the District of Colorado - 2003
  The United States Court of Appeals for the Tenth Judicial Circuit - 2005
  U.S. Supreme Court - 2020

## Summary of Legal Experience

First or second chair of over 30 trials and dispositive/evidentiary hearings in all types of matters including complex business litigation, catastrophic personal injury, and employment.

Briefed and argued dozens of appeals in the Colorado Court of Appeals, Colorado Supreme Court, Tenth Circuit Court of Appeals, Third Circuit Court of Appeals, and United States Supreme Court. Appellate cases have involved a variety of issues from precedent-establishing cases on the Americans with Disabilities Act, to reversing trial court orders in catastrophic brain injury litigation, to indigent criminal matters involving jurisdictional and Fourth Amendment issues. A non-exclusive list of cases is below:

- *United States v. Lowe,* 117 F.4th 1253 (10th Cir. 2024)
- *In re SC SJ Holdings, LLC*, No. 23-1731, 2024 WL 1328233 (3d Cir. March 28, 2024)
- *Iconergy Ltd. v. Scharfenberger*, No. 22CA1807, 2024 WL 3762917 (Colo. App. Jan. 4, 2024)
- *Henck v. Sombrero Stables, LLC*, No. 21CA1305, 2023 WL 12056968 (Colo. App. Mar. 16, 2023), *cert. denied*, No. 23SC289, 2023 WL 5420058 (Colo. Aug.

21, 2023)
- *Keaten v. Terra Mgmt. Grp., LLC*, No. 21CA1856, 2023 WL 12047885 (Colo. App. Mar. 16, 2023), *cert. granted*, No. 23SC272, 2023 WL 8039214 (Colo. Nov. 20, 2023)
- *Exby-Stolley v. Bd. of Cnty. Commissioners*, 979 F.3d 784 (10th Cir. 2020)
- *Colorado Dep't of State v. Baca*, 591 U.S. 655 (2020)
- *Laura A. Newman, LLC v. Roberts*, 365 P.3d 972 (2016) (authored amicus curiae brief in support of Respondent)

## Legal Experience
**Ogborn Mihm, LLP**
　　　*Equity Partner, August 2021 – Present*
- Continuing robust litigation practice developed over the past 20+ years.
- In charge of myriad trial and appellate teams representing clients in a variety complex business, personal injury, and employment litigation.
- Co-chaired Denver District Court trial involving employment contract breach, resulting in $1,600,000 settlement for the client.
- First-chaired two trials in Summit County District Court involving an HOA/owner dispute and a $22,000,000 real estate transaction.
- Settled myriad personal injury cases totaling over $2.5 million in first 12 months of joining firm, with total recoveries to date exceeding $20,000,000.

**Darling Milligan P.C., Denver, CO**
　　　*Partner, January 2016 – July 2021*
　　　*Associate, July 2011 – December 2015*
- First-chaired more than 30 arbitrations and jury/bench trials for both plaintiffs and defendants involving real estate, business disputes, breach of contract, employment, personal injury, first-party insurance, and landlord-tenant issues. (List of example cases available upon request).
- Brief and argue state and federal appeals, including civil and criminal appeals; recent published cases include Exby-Stolley v. Board of County Comm'rs, 979 F.3d 784 (10th Cir 2020) (*en banc*), Deines v. Atlas Energy, et al., 2021 COA 24 (Colo. App. Feb. 25, 2021), United States v. Ray, 899 F.3d 852 (10th Cir. 2018), Morales-Guervara v. Koren, 405 P.3d 262 (Colo. App. 2014)
- Draft briefs and argue appellate issues in the Colorado Supreme Court as a member of CTLA Amicus Committee in Newman, LLC v. Roberts, , 365 P.3d 972 (Colo. 2016), Johnson v. Schonlaw, No. 16SC114 (cert. granted April 25, 2016), People v. Clemens, __ P.3d ___, No. 14SC49 (September 11, 2017), Austin v. People, 14SC529 (cert. improvidently granted January 27, 2017).
- Co-head of litigation for Hamilton Defenders Organization challenging Colorado's Elector binding statute; argued motion in federal district court; drafted briefs in district court and Tenth Circuit; assisted with SCOTUS briefing and argument preparation.

**Franklin D. Azar & Associates, P.C.,** Aurora, CO
　　　*Associate, May 2009 – May 2011*
- First-chaired, multi-million-dollar real estate trial; responsible for all pleadings, motions, discovery, strategy, expert work, and trial work in six-day jury trial.

- Part of small, four-person team litigating massive class action litigation against Hewlett Packard related to failure to pay wages.
- Co-head of class action litigation against Rose Medical Center related to Hepatitis C outbreak; drafted pleadings, argued motions, in charge of client contact, and led settlement negotiations.
- Drafted all briefs and presented oral argument to Tenth Circuit in Bethurum v. Zavaras, No. 08-1267 (Nov. 3, 2009).

**Brownstein Hyatt Farber Schreck, LLP,** Denver, CO
*Associate, August 2005 – April 2009*
- Successfully petitioned the United States Supreme Court for certiorari and obtained reversal of Tenth Circuit Decision in Kittredge v. U.S., No. 07-8859 (May 12,2008) (United States v. Kittredge, No. 07-1028 (l0th Cir. October 18, 2007)).
- Drafted Tenth Circuit appellate brief, presented oral argument, and obtained reversal of summary judgment in Protocols v. Leavitt, et al., 549 F.3d 1294 (10th Cir. 2008), which involved complex Medicare and standing issues.
- Successfully represented plaintiff in Boulder trial involving breach of contract and conversion issues; conducted direct and cross examination on several witnesses, developed trial strategy, and assisted in settlement negotiations.
- Successfully represented large developer in arbitration hearing involving breach of contract.
- Helped lead litigation team for two years in $20+ million contract dispute resulting in favorable settlement; took and defended depositions, led discovery efforts, drafted motions, expert preparation.

**The United States Court of Appeals for the Tenth Judicial Circuit,** Denver, CO
*Law Clerk to the Honorable Timothy M. Tymkovich, July 2004 - August 2005*
- Prepared judge for oral argument by researching and drafting memoranda of law and drafting opinions to be reviewed and edited by the judge on wide range of criminal and civil issues, including, La Resolana Architects PA v. Clay Realtors Angel Fire, 416 F.3d 1195 (10th Cir. 2005) and United States v. Perez-Vargas, 414 F.3d 1282 (10th Cir. 2005).
- Worked with judge and co-clerks to implement contemporary developments in criminal and civil arenas, including Tenth Circuit resentencing issues created by United States v. Booker, 543 U.S. 220 (2005).

**Perkins Coie LLP, Denver,** CO
*Associate, April 2002 - July 2004*
- Managed various cases, including breach of contract, malpractice, and shareholder disputes.
- Drafted successful motion to dismiss and motion for summary judgment in legal malpractice case.
- Argued motions, drafted pleadings, conducted discovery, participated in arbitration, and assisted in trial preparation by conducting depositions and preparing witnesses in a variety of civil litigation.

**Mallon & McCool LLC, Baltimore, MD and Washington,** D.C.
*Associate, August 2001 - April 2002*
- Tried cases in Workers Compensation Commission; examined witnesses in EEOC investigative hearing; defended depositions; and participated in EEOC mediation.
- Drafted successful petition for writ of certiorari to Maryland Court of Appeals addressing standing issues in Mehrling v. Nationwide Ins. Co., 371 Md. 40 (2002).

**The Catholic University of America, Columbus School of Law, Washington,** D.C.
*Research Assistant for Dean Robert Destro, June 1999 - December 2000*

- Aided in amicus curiae brief preparation and oral argument for <u>Boy Scouts of America v. Dale</u>, 530 U.S. 640 (2000).
- Analyzed First Amendment with the goal of reorganizing and rewriting the textbook, <u>Religious Liberty in a Pluralistic Society</u>; researched First Amendment issues paying specific attention to the Test Clause in Article VI of the Constitution.

## Publications

"Proposals for a More Effective Bar Exam," The Colorado Lawyer, November 2009

"To Bill or Not to Bill (by Hour)," The Colorado Lawyer, August 2010

"The Future of Big Law Firms," The Colorado Lawyer, February 2011

"Jurors Asking Questions - Verbal vs. Written," The Colorado Lawyer, 2012

## Presentations

"How to Tell Your Client's Story From Intake to the Complaint," Denver Bar Association, October 23, 2024

"Voir Dire After Novotny and Newman," CTLA, May 12, 2016

"New Challenges in Jury Selection," Colorado PELA, August 26, 2016

"Never Ever Give Up:  Appeals as a necessary part of your practice," CTLA Convention, August 10, 2018

"Becoming a Judge," CTLA August 2021

## Awards, Honors, and Leadership

CTLA Officer 2021-Present (Currently President)
CTLA Board Member
Co-Chair of CTLA's Judiciary Committee
CTLA Outstanding Service Award 2021
CTLA's Case of the Year Winner 2021
CBA Appellate Committee Member
Super Lawyer and Rising Star – 2015 to present

## Prior Expert Testimony

None

## Documents Received and/or Reviewed

**(As of December 10, 2025)**

The documents listed specifically below were reviewed in some level of detail. In addition to these listed documents, I downloaded from CCEF the entire case file from the Underlying Litigation and the appeal. I generally reviewed all documents filed in the Underlying Case and all appellate files.

1. Complaint filed 10/13/2021
2. Amended Complaint filed 12/20/2021
3. Answer to amended complaint filed 2/7/2022
4. Cohen Law Firm engagement/fee agreement with TCPA
5. Cohen Law Firm invoices for April, May, June, July, and August 2023
6. Motion to compel filed 1/4/2023 as well as the response and reply
7. Motion for protective order filed 1/4/2023
8. Motion for preliminary injunction filed 1/18/2024 as well as the response and reply.
9. Orders on extensions of expert witness and other deadlines filed 2/13/2023 and 2/22/2023 and 4/2/2023
10. Motion to compel filed 2/15/2023 as well as response and reply
11. Motion to compel filed 2/28/2023 as well as response and reply
12. Order continuing trial date entered 3/5/2023
13. Motion for summary judgment filed 3/17/2023, as well as response and reply
14. Transcript of 3/27/2023 hearing
15. Motion for terminating sanctions dated 3/31/2023 as well as response and reply
16. Order on preliminary injunction dated 4/2/2023
17. Order on plaintiff's motion compel dated 4/2/2023
18. Transcript of 4/17/2023 and 4/18/2023 hearing
19. Order regarding motion to terminate dated 4/25/2023
20. CAR 21 petition and motion to stay filed 5/3/2023
21. Transcript of 5/4/2023 hearing
22. Forthwith request for hearing filed 5/9/2023, response, and order granting hearing.
23. Transcript of May 11, 2023 hearing
24. Motion for attorneys' fees filed 6/3/2023 as well as response and reply

25. Order on motion for attorneys' fees dated 1/12/2024
26. Claim No. 9 in bankruptcy case and all exhibits
27. Objection to claim No. 9
28. Response to objection to claim No. 9