UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| IN RE: ) | |
| ) | Case No. 24-12624-KHT |
| DNC AND TCPA LIST SANITIZER, LLC ) | |
| EIN: 83-3868704 ) | Chapter 11 |
| ) | Sub-Chapter V |
| Debtor ) | |

## OBJECTION AND REQUEST FOR HEARING AND REQUEST FOR DISCOVERY ON APPLICATION TO APPOINT PAUL GORDON AS BANKRUPTCY COUNSEL

Creditor Cohen, LLC ("Cohen"), by and through undersigned counsel, hereby objects to the application for employment filed by Paul Gordon ("Gordon") on December 18, 2025 (Doc. 448) (the "Application"), and states as follows:

### I. THE POINTS OF DECISION

Gordon appeared and undertook purported representation of the Debtor and now asks to be employed without following the disclosure rules and substantive requirements of 11 U.S.C. §§ 327 and 329, Fed. R. Bankr. P. 2014, and L.B.R. 2014-1. He applied for employment without stating required specific facts about his retainer agreement or fee agreement, or complying with state law, without a verified statement of the Debtor, and asks for impermissible *nunc pro tunc* approval.

Gordon's Application fails to establish that he is a "disinterested person" as required by § 327(a). On the contrary, it reveals, and obscures, facts indicating that Gordon was paid by Michael O'Hare, a third-party insider and guarantor of Cohen's fees and ongoing collection costs in this matter. Any amount that Cohen cannot collect from the Debtor, it will seek to collect from O'Hare. Thus, O'Hare has a materially adverse interest in making sure that the Estate pays Cohen's fees and ongoing collection costs. This conflict are not waivable, and they strike at the core fiduciary duties of loyalty and independent judgment owed by Gordon. *See In re Project Orange Assocs., LLC*, 431 B.R. 363, 372-73 (Bankr. S.D.N.Y. 2010) ("an agreement between [counsel] and [a creditor], i.e., the Conflicts Waiver, cannot trump the requirements of section 327(a)"); *In re*

Page 1 of 13

*Wheatfield Bus. Park LLC*, 286 B.R. 412, 422-26 (Bankr. C.D. Cal. 2002) ("the chapter 11 debtor cannot waive a conflict of interest because the ultimate parties in interest are the creditors").

Compounding these substantive conflicts, the Application lacks the specific factual disclosures regarding the source, terms, and disposition of the retainer; fails to attach or describe any governing retainer or fee agreements in violation of state law specifically RPC 1.5; omits the verified statement of the Debtor required when an insider funds counsel's retention; and seeks retroactive approval without pleading or proving extraordinary circumstances under controlling Tenth Circuit law. *See In re Kearney*, 581 B.R. 644, 649 (Bankr. D.N.M. 2018). These omissions prevent the Court and Creditors from conducting the strict scrutiny mandated for estate professionals and compensation arrangements.

Given the nature and extent of these deficiencies, this Court should deny Gordon's Application. Should Gordon wish to pursue employment in this Court, discovery including production of documents and deposition is warranted to determine the full scope of Gordon's financial arrangements, connections, payments from December 3 to December 18, 2025, asserted security interests, and decision-making authority, all of which bear directly on disinterestedness, adverse interests, and compliance with the Bankruptcy Code and Rules. Until those facts are fully disclosed and tested, the Court cannot lawfully approve Gordon's employment. The application should therefore be denied or stricken, and any unauthorized appearance or services rendered should not be sanctioned or compensated.

### III. LEGAL STANDARDS

The Conditions for employment of professional persons, including attorneys, by the trustee are applicable to employment of professional persons by a debtor-in-possession. 11 U.S.C.A. §§ 1107(a), 1203. The Court must approve both the employment of a professional person, **and the services to be rendered prior to the performance of those services**. *In re Yeisley*, 64 B.R. 360, 362 (Bankr. S.D. Tex. 1986). The scrutiny of conflicts of interest are "strict" and "attorneys engaged in the conduct of a bankruptcy case 'should be free of the slightest personal interest which might be reflected in their decisions concerning matters of the debtor's estate or which might impair the high degree of impartiality and detached judgment expected of them during the course of administration.' *In re Am. Int'l Refinery, Inc.*, 676 F.3d 455, 462 (5th Cir. 2012) (quoting *In re West Delta Oil Co.*, 432 F.3d 347, 355 (5th Cir. 2005).

Further, "an attorney's substantial failure to comply with the rules governing disclosure concerning his or her employment by a bankruptcy trustee or debtor-in-possession is grounds to deny that counsel's application for compensation." *In re Perez*, 389 B.R. 180, 184 (Bankr. D. Colo. 2008), aff'd, No. CIV.A. 08-CV-01333-C, 2009 WL 1975964 (D. Colo. July 7, 2009).

## IV. ARGUMENT

### A. Gordon Is Not a Disinterested Person under 11 U.S.C. § 327[1].

#### a. He is not Disinterested Because He Has Collected Fees from O'Hare Who Is a Guarantor of Cohen's Fees and Ongoing Collection Costs In This Matter, and apparently Gordon's Fees as Well.

A professional applying to be employed by a debtor-in-possession cannot "hold or represent an interest adverse to the estate." 11.U.S.C. § 327(a). To hold an adverse interest means "[t]o possess or assert any economic interest that would tend to lessen the value of the bankruptcy estate or that would create either an actual or potential dispute in which the estate is a rival claimant; or (2) [t]o possess a predisposition under circumstances that render such a bias against the estate. See *In re Roberts*, 46 B.R. 815, 827 (Bankr. D. Utah 1985). To represent an adverse interest means to "serve as agent or attorney for any individual or entity holding such an adverse interest." *Id.*

O'Hare has paid a $10,000 retainer to Gordon, whose anticipated role as counsel is apparently to represent the Estate as plaintiff on a contingent fee basis in a state court legal malpractice action. See Reply in Support of Extension of Time to Make expert Disclosures ¶ 4. Not only is Gordon's plan explicitly prohibited by 10.2 of the Amended Reorganization Plan, but this amounts to representing an interest adverse to the Estate. As general counsel to the bankruptcy Estate, Gordon owes the Estate an undivided duty of loyalty and independent judgment. See *Smith v. Mehaffy*, 30 P.3d 727, 733 (2000) ("We acknowledge that the attorney-client relationship involves a fiduciary relationship as a matter of law."). These duties are fundamentally incompatible with collecting payment from O'Hare individually, because O'Hare is a guarantor of Cohen's fees

---

[1] Gordon's Application does not indicate which rule he seeks appointment under leaving creditors to guess whether he is truly applying for employment as general bankruptcy counsel or as special counsel. Under either standard, this objection is made.

and ongoing collection costs, and also apparently a guarantor of Gordon's fees, although the Application dissembles on this point.

Any amount that Cohen cannot collect from the Debtor, it will seek to collect from O'Hare. Thus, O'Hare has a materially adverse interest in making sure that the Estate pays Cohen's fees and ongoing collection costs. The conflict is particularly acute given that the proposed malpractice claim is highly speculative and potentially frivolous, as discussed below. As bankruptcy counsel, Gordon has a duty to advise the Estate against pursuing meritless litigation that would waste Estate resources and prejudice creditors. However, he appears to be directed to investigate a malpractice action or defense by O'Hare, regardless of its lack of merit or its impact on the Estate. These competing interests create an untenable conflict that undermines counsel's ability to exercise independent judgment on behalf of the Estate. The Estate cannot waive this conflict, as it implicates not only the Estate's interests but also the interests of creditors. The Bankruptcy Code requires that estate professionals be "disinterested persons" who do not hold or represent interests adverse to the Estate. 11 U.S.C. § 327(e). Appointing conflicted counsel as bankruptcy counsel violates this fundamental principle and undermines the integrity of the bankruptcy process.

  **b. Gordon's Application Raises Another Potential Conflict That Cannot Even Be Analyzed At This Time.**

The Bankruptcy Code defines "disinterested" person as, *inter alia*, one who "does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason." 11 U.S.C. § 101(14).

Gordon may have "an interest materially adverse to the interests of the estate… by reason of [his] interest in the Debtor." This potential conflict is raised by Gordon's application which states, "GLM asserts a security interest in the retainer. . . Any sums remaining at the close of the representation will be refunded to the Debtor." This statement is particularly confusing because Gordon states that the retainer was paid by O'Hare individually and not by the Debtor. So why would Gordon return "any sums remaining" from the retainer to the Debtor. It makes no sense. The creditors cannot even begin to analyze this potential conflict without clarity on this point.

 **B. Gordon's Application Is Fatally Deficient Because Gordon Did Not State Specific Facts Concerning His Arrangement For Compensation, Did Not Attach His Retainer**

**Agreement, Did Not Attach His Fee Agreement, Did Not State Specific Facts Concerning The Reasons For His Selection, Did Not Make A Separate Notice And Motion For Approval Of His Retainer, And Did Not Make A Showing Of Extraordinary Circumstances For *Nunc Pro Tunc* Approval.**

a. **The Application Lacks Specificity Required by Fed. R. Bankr. P. 2014(a)(2)(E).**

An attorney's application for employment in Chapter 11 must **"state specific facts"** showing "any proposed arrangement for compensation." Fed. R. Bankr. P. 2014(a)(2)(E). Gordon states almost no specific facts at all about his proposed arrangement for compensation, and even though he states that he received a $10,000 retainer from O'Hare he did not attach his retainer agreement with O'Hare to his application, or his fee agreement with the Debtor, if one exists. Courts in the 10th Circuit have consistently held that fee disclosures must be "direct and comprehensive" and that "coy or incomplete disclosures which leave the court to ferret out pertinent information from other sources are not sufficient" *In re Brown*, 371 B.R. 486, 498 (Bankr. N.D. Okla.), amended, 371 B.R. 505 (Bankr. N.D. Okla. 2007) (quoting In Re Woodward, 229 B.R. 468,474 (Bankr. N. D. Okla. 1999) (internal quotations omitted).

Gordon's retainer and fee agreement statements are coy, indirect, and non-comprehensive, leaving myriad questions unanswered. For instance, what is his agreement regarding the retainer? Can he pay his initial fees out of the retainer and then bill O'Hare? Is the retainer simply Third-Party collateral to be kept if O'Hare ceases payment like the Debtor did with Cohen LLC? Why did the Debtor not pay the retainer? Was the retainer deposited in Gordon's account? Which account was it deposited in? Has he drawn against the retainer already? If so, how much has he drawn? For what services has he drawn? All of these questions need to be answered in the Application for Employment or Verified Statements, which they are not.

Similarly, Gordon omits specific facts about his fee agreement and did not attach it to his Application. He states that he has agreed to a mixed fee arrangement consisting of both a $250 hourly fee and 20% contingent fee, and that he will apply to this Court for payment of his fees and expenses. But he did not attach his fee agreement to his application, if it even exists. Under Colorado Rule of Professional Conduct 1.5(b) and (c), all contingent fee agreements must be in writing and must be signed by both the lawyer and the client. Colo. RPC 1.5(c) further mandates that a contingent fee agreement state, at a minimum, the method by which the fee is to be

determined, including the percentage accruing to the lawyer, whether the percentage is calculated before or after expenses, which litigation and collection expenses are to be deducted, and when such deductions occur, along with a clear statement of the client's responsibility for expenses regardless of outcome. Absent a written, signed agreement containing these required terms, a contingent fee is unenforceable under Colorado law. Accordingly, Gordon's bare assertion that the debtor agreed to a "20% contingency of the gross amounts collected, if any" is legally insufficient because it fails to satisfy the express writing, signature, and disclosure requirements of RPC 1.5(c) and provides none of the mandatory detail necessary under Fed. R. Bankr. P. 2014(a)(2)(E).

Any fees paid to Gordon from any source, must be first approved by this Court. The court has a supervisory obligation to ensure that an attorney's services and expenses are actual and necessary to representing the Estate. *In re Brown*, 371 B.R. 486 (Bankr. N.D. Okla. 2007), *judgment amended on other grounds*, 371 B.R. 505 (Bankr. N.D. Okla. 2007); *In re Fibermark, Inc.*, 349 B.R. 385, 478 (Bankr. D. Vt. 2006). Payments to a debtor's attorney are subject to careful scrutiny, since such payments provide serious potential for evasion of creditor protection provisions of the bankruptcy laws. 1 Bankruptcy Desk Guide § 2:3 (*citing* H. Rept. No. 95-595, p. 329.).

Gordon's Application is fatally deficient because he has not provided the necessary specific facts that are statutorily mandated to allow this Court to apply careful scrutiny to his payments.

      b. **The Application Lacks Specificity Required by Fed. R. Bankr. P. 2014(a)(2)(C).**

An attorney's application for employment in Chapter 11 must **"state specific facts"** showing the reasons for his selection. Fed. R. Bankr. P. 2014(a)(2)(C). Gordon gives the vague reasons such as, "expertise and experience in the law of lawyering, which includes legal malpractice and fee dispute litigation as well as representing debtors-in-possession and trustees in litigation against attorneys." Application at 2. These are not specific facts. For instance, Gordon does not state how many bankruptcy cases he has been involved in, when he was involved in them or any other facts beyond the above statement. Furthermore, these qualifications listed by Gordon do not include representing a debtor-in-possession as general bankruptcy counsel.

      c. **The Application Lacks a Verified Statement by the Debtor Required by L.B.R. 2014-1(a)(2).**

Michael O'Hare ("O'Hare"), a third-party payor has paid the retainer for Gordon's services. Thus, Gordon's application must include a verified statement of the Debtor (DNC and TCPA Litigator List LLC) disclosing all transfers by it to O'Hare. L.B.R. 2014-1(a)(2). This includes any transfers made to entities owned by O'Hare, such as Cashyew Holdings, Inc, ("Cashyew") which holds a 99% equity interest in the Debtor and is wholly owned by O'Hare. This Court already dealt with this issue and determined that payments from the Debtor to Cashyew must be disclosed. *See also In re Perez*, 389 B.R. 180, 183 (Bankr. D. Colo. 2008), *aff'd*, No. CIV.A. 08-CV-01333-C, 2009 WL 1975964 (D. Colo. July 7, 2009) ("Bankruptcy Rule 2016(b) requires that section 329 and Rule 2014 disclosures be kept current.").

### d. The Application Lacks the Required Separate Motion for Approval of the Retainer.

Attorneys who receive a retainer for representation in a bankruptcy case must request approval of the retainer "**by separate motion and notice**," which must include 1) the amount of the retainer, source of the retainer, 3) statement of whether the professional's fees are paid by a principal, insider, or affiliate of the debtor. L.B.R. 2014-1(d). Gordon's application is not accompanied by separate motion and separate notice seeking approval of the retainer that he admits receiving in paragraph 10 of the Application. Gordon also has not attached his retainer agreement as an exhibit so it cannot be properly approved by the Court.

### e. The Application Seeks Impermissible Retroactive Approval.

Absent a showing of extraordinary circumstances, which has not been made here, *nunc pro tunc* approval is disallowed. L.B.R. 2014-1(c); See *In re Kearney*, 581 B.R. 644, 649 (Bankr. D.N.M. 2018) ("The Tenth Circuit falls squarely within the "extraordinary circumstances" camp") (citing *In re Land,* 943 F.2d 1265, 1267–68 (10th Cir. 1991)); *In re Schupbach Investments, L.L.C.*, 808 F.3d 1215, 1220 (10th Cir. 2015); accord *Halperin v. Occidental Fin. Group, Inc. (In re Occidental Fin. Group, Inc.),* 40 F.3d 1059, 1062 (9th Cir.1994).

Gordon seeks *nunc pro tunc* approval in paragraph 14 of his Application. As Judge Brown stated in this Court when denying an application for *nunc pro tunc* employment, the applicant must satisfy a threshold two-part test. "First, the court must determine if it would have approved the application under § 327 had it been timely filed. This includes consideration of whether the applicant is disinterested, as defined by § 327(a). Second, courts consider whether the particular

circumstances are so extraordinary as to justify retroactive employment." *In re Novinda Corp.*, No. BR 16-13083 EEB, 2017 WL 1284715, at *2 (Bankr. D. Colo. Mar. 17, 2017).

The United States Bankruptcy Court for the District of New Mexico, after *In re Novinda Corp.*, adopted the *Arkansas* and *Novinda* tests with the addition of the second and ninth *Twinton Properties* factors (from the Ninth Circuit) to determine if extraordinary circumstances exist. *In re Kearney*, 581 B.R. at 650 (citing *In re Arkansas Co., Inc.*, 798 F.2d 645, 647-650 (3d Cir. 1986); *In re Novinda Corp.*, WL 1284715, at *2; *In re Twinton Properties Partnership,* 27 B.R. 817, 819–20 (Bankr. M.D. Tenn. 1983)).

So, under current Tenth Circuit bankruptcy jurisprudence, the applicable threshold test that Gordon must satisfy is: 1) would the court have granted Gordon's Application if timely filed on December 3, 2025; and 2) are there extraordinary circumstances for Gordon not filing on December 3, 2025. *Id.*

To determine whether Gordon has satisfied the second prong of that test, the Court will have to consider: 1) "[w]hether the applicant or some other person bore responsibility for applying for approval"; 2) "[w]hether the applicant was under time pressure to begin service without approval"; 3) the amount of delay after the applicant learned that initial approval had not been granted; 4) the extent to which compensation to the applicant will prejudice innocent third parties; 5) whether "the party for whom the work was performed approves the entry of the *nunc pro tunc* order"; 6) whether "the applicant exhibits no pattern of inattention or negligence in soliciting judicial approval for the employment of professionals". *In re Kearney*, 581 B.R. at 650; *In re Novinda Corp.*, 2017 WL 1284715, at *2; *In re Twinton Properties Partnership,* 27 B.R. at 819–20; *In re Schupbach Investments, L.L.C.*, 808 F.3d 1215, 1220 (10th Cir. 2015).

First, given the domenstrable lack of specific facts in the Application and Gordons' failure to attach his retainer and fee agreements and statement of the Debtor, it is highly unlikely that the Court would have approved the application if timely filed.

Second, Gordon has stated no facts in his application to address factors one (1), two (2), and five (5) of the extraordinary circumstances prong of the Tenth Circuit test. More importantly, Gordon cannot satisfy the sixth factor of the test because he has, in fact, exhibited a "pattern of inattention or negligence in soliciting judicial approval for the employment of professionals." *In re Kearney*, 581 B.R. at 650; *In re Twinton Properties Partnership,* 27 B.R. at 819–20.

Gordon filed an improper Entry of Appearance, December 8, 2025, which indicated that he was appearing for the Debtor as Bankruptcy Counsel but stated facts to suggest he was appearing as Special Counsel, and violated numerous federal and local rules. Then he filed an application for employment without notice, in violation of L.B.R. 9013-1 and Fed. R. Bankr. P. 9014-1. Then, he filed notice, but his current application for employment violates 11 U.S.C. § 327(e), Fed. R. Bankr. P. 2014(a)(2)(C) & (E), L.B.R. 2014-1(a)(2), (c), & (d), federal common law and Colorado law.

Weighing all the factors, this Court must deny Gordon's *nunc pro tunc* application. See *In re Kearney*, 581 B.R. at 650.

**C. The Application is Unintelligible and Contradictory regarding Gordon's Fee Arrangement.**

First, Gordon states that he received a $10,000 retainer from O'Hare, the principal of the Debtor (who is also a guarantor of Cohen LLC's fees and collection costs), and has agreed to a mixed fee of $250 per hour and 20% contingency of the "gross amounts collected[2], if any". Gordon goes on to state that the Debtor has no liability due to the retainer, and "is not indebted or otherwise obligated to any person or entity as a result of the payment of the retainer." This is directly contradicted by Gordon's later statement, "GLM asserts a security interest in the retainer. . . Any sums remaining at the close of the representation will be refunded to the Debtor." The language of the application makes no sense and further discovery is needed to understand how and by whom Gordon would be paid.

**D. The Application Does Not Facilitate an Informed Decision Since No Facts Regarding the Alleged Malpractice Are Recited and There Is No Staturily Mandated Independent Review of The Action Under Colo. Rev. Stat. § 13-20-602(1)(A).**

Gordon's Motion Application merely states in conclusory fashion that "a primary defense to a claim for unpaid attorney fees is legal malpractice. Under Colorado law, attorneys are not entitled to fees for negligent services and are liable for damages caused by legal malpractice." without providing any explanation of his plans regarding a malpractice defense or action. See

---

[2] Would the contingency apply to any reduction in fees in the Claim Objection Proceeding? We do not know.

Application at 1. The vague statements in the application fail to provide a rationale as to why the creditors should approve Gordon's appointment. These allusions to a future malpractice defense or action do not allow the Estate to determine if potential claims have any chance of success or if they would be a complete waste of Estate resources. Furthermore, Colorado law requires a plaintiff to obtain a review of any legal malpractice claim by a qualified expert under Colo. Rev. Stat. § 13-20-602(1)(a). The certificate must declare that the plaintiff or their counsel has consulted with an expert who has reviewed the relevant facts and concluded that the claim "does not lack substantial justification." *Id.* The purpose of this requirement is to demonstrate that the plaintiff has consulted with an expert who has determined that the claim has merit, thereby avoiding frivolous claims and promoting judicial economy. See *RMB Services, Inc. v. Truhlar*, 151 P.3d 673, 675 (2006). In this case, there is no indication that Gordon has obtained the requisite statutory review of the alluded-to malpractice claim before seeking appointment as special counsel to file suit.

### E. Any Malpractice Claim Gordon Wishes to Bring Would be a Futile Waste of Estate Resources.

The application to appoint Gordon as special counsel includes a court order finding that the Debtor through its principal Mr. O' Hare was reckless in the underlying case, leading to the case-ending sanctions. Under Colorado's comparative negligence statute, a plaintiff who is at least 50% at fault for their own damages is barred from any recovery. Colo. Rev. Stat. § 13-21-111. Colorado has recognized the defense of comparative negligence in legal malpractice claims. See *Scognamillo v. Olsen*, 795 P.2d 1357 (Colo. App. 1990). In this case, the court order finding O'Hare reckless in the underlying matter is tantamount to a determination that the Debtor was more than 50% at fault for their own alleged damages. This is especially true as reckless conduct is considered more blameworthy than mere negligence. *Coffman v. Godsoe*, 142 Colo. 575, 587 (1960) (noting that reckless misconduct requires a conscious choice of action with knowledge of serious risk and involves a risk substantially greater than negligence). Here, O'Hare, in his capacity as principal of DNC and TCPA Litigator List, was found reckless by the State Court. As a result, any legal malpractice claim against the undersigned would be barred under Colo. Rev. Stat. § 13-21-111. The application is completely devoid of any discussion as to how any state law malpractice claim can be brought under these circumstances. Appointing bankruptcy counsel to pursue such a futile

claim would be a waste of Estate resources and would only harm creditors. The Court should decline to authorize this facially deficient, and ill-conceived, application.

### F. Gordon Did Not Disclose His Disciplinary History.

Gordon did not include an explanation of his disciplinary history with his Application. Gordon entered into a stipulation to discipline on July 15, 2021. 21PDJ048, Stipulation Summary attached as Exhibit A. Through the stipulation, the Presiding Disciplinary Judge approved a stipulation to discipline attorney Paul Gordon, suspending him for six months, with the suspension fully stayed pending successful completion of a two-year probation starting August 19, 2021. *Id.*

The discipline arose from Gordon's representation of clients in litigation against their former lawyer. Gordon failed to adequately communicate with his clients, changed litigation strategy without explanation, neglected discovery obligations, did not properly prepare for mediation, improperly advised clients not to attend a discovery hearing, and failed to advise them about attorney-client privilege implications of a malpractice claim. *Id.* In a related matter, Gordon missed a pretrial conference, stopped tracking the case without confirmation, and incorrectly assured clients no action was needed, resulting in judgment being entered against them. *Id.*

Gordon's conduct violated multiple Colorado Rules of Professional Conduct, including duties of diligence, communication, and conduct prejudicial to the administration of justice.

### G. Discovery is Necessary Due to the Omissions in Gordon's Application.

Discovery is warranted because the deficiencies and omissions in Gordon's application prevent the Court and parties in interest from performing the "strict" conflict and disinterestedness analysis mandated by 11 U.S.C. §§ 327 and 101(14), Fed. R. Bankr. P. 2014, and the Local Rules, and those omissions raise concrete, non-speculative questions of fact that cannot be resolved on the present record. As detailed in the objection, Gordon failed to disclose and document material facts concerning the source, terms, and treatment of the $10,000 retainer paid by an insider and guarantor; the existence, terms, and allocation of any retainer and fee agreements (including a mixed hourly/contingent structure); whether any draws have already been taken and for what services; whether the retainer is debtor property subject to a claimed security interest; and the full scope of connections and transfers requiring a verified debtor statement. These are not technical defects but go to whether Gordon is a creditor, holds or represents interests adverse to the estate, or otherwise lacks disinterestedness—issues that, under settled bankruptcy practice, require full

transparency and factual development. Limited discovery targeted to these undisclosed matters (including production of retainer and fee agreements, trust account records, communications regarding payment arrangements, and testimony regarding the scope of representation and decision-making authority) is therefore necessary to test compliance with Rule 2014, to assess conflicts and adverse interests, and to determine whether nunc pro tunc approval could ever be appropriate. Without such discovery, approval would risk insulating undisclosed conflicts and compensation arrangements from scrutiny, undermining creditor protections and the integrity of the estate administration.

## V. REQUEST FOR RELIEF

WHEREFORE, Cohen, LLC respectfully requests that the Court enter an order:

1. Granting this Cohen's request for a hearing on Gordon's Application;

2. Granting discovery, in the form of requests for production of documents and a deposition of Paul Gordon, on the issues raised in this Objection; and

3. Granting such other and further relief as the Court deems just and proper.

Respectfully submitted this 23rd day of December 2025,

COHEN LLC

By: /s/ *Jeffrey Cohen*
Jeffrey Cohen, #10876
1600 Broadway, Suite 1660
Denver, CO 80202
Phone: (303) 524-3636
Email: jcohen@cohentrial.com
***Attorney for Cohen LLC as Creditor***

**L.B.R. 9013-1 CERTIFICATE OF SERVICE OF OBJECTION**

 I certify that on December 23, 2025, I served a complete copy of Cohen LLC's OBJECTION AND REQUEST FOR HEARING AND DISCOVERY ON APPLICATION TO APPOINT PAUL GORDON AS BANKRUPTCY COUNSEL on all parties of record in compliance with the Federal Rules of Bankruptcy Procedure and the Court's local Rules via CM/ECF.

                   **COHEN LLC**

                   By: /s/ *Jeffrey Cohen*
                   Jeffrey Cohen, #10876