| | |
|---|---|
| DISTRICT COURT, DENVER COUNTY<br>STATE OF COLORADO<br>1437 Bannock Street<br>Denver, Colorado 80202<br>(303) 606-2300 | |
| Plaintiff: **DNC AND TCPA LIST SANITIZER, LLC**<br><br>Defendants: **GARY TUCKER**; **GLEGAL, LLC**; **JEFFREY COHEN**; **COHEN, LLC**; **JOSHUA L. THOMAS**; and, **LAW OFFICE OF JOSHUA L. THOMAS PLLC** | ▲ COURT USE ONLY ▲ |
| Paul Gordon #21860<br>Gordon Legal Malpractice PLLC<br>Post Office Box 460395<br>Denver, Colorado 80246<br>720-505-0536<br>paul@legal-mal.com | Case Number:<br><br>Division/Courtroom: |
| **CIVIL CASE COVER SHEET** | |

1. This cover sheet shall be filed with each pleading of a complaint, counterclaim, cross-claim or third party complaint in every district court civil (CV) case. It shall not be filed in Domestic Relations (DR), Probate (PR), Water (CW), Juvenile (JA, JR, JD, JV), or Mental Health (MH) cases. Failure to file this cover sheet is not a jurisdictional defect in the pleading but may result in a clerk's show cause order requiring its filing.

2. Check one of the following:

    ❑ This case is governed by C.R.C.P. 16.1 because:

    - The case is not a class action, domestic relations case, juvenile case, mental health case, probate case, water law case, forcible entry and detainer, C.R.C.P. 106, C.R.C.P. 120, or other similar expedited proceeding; *AND*

    - A monetary judgment over $100,000 is not sought by any party against any other single party. This amount includes attorney

fees, penalties, and punitive damages; it excludes interest and costs, as well as the value of any equitable relief sought.

X   This case is not governed by C.R.C.P. 16.1 (check one box below if this party asserts that C.R.C.P. 16.1 does not apply):

❑   The is a class action, forcible entry and detainer, Rule 106, Rule 120, or other similar expedited proceeding, or

X   The party is seeking a monetary judgment against another party for more than $100,000, including any penalties or punitive damages, but excluding attorney fees, interest and costs, as supported by the following certification:

"By my signature below and in compliance with C.R.C.P. 11, based upon information reasonably available to me at this time, I certify that the value of this party's claims against one of the other parties is reasonably believed to exceed $100,000."

or

❑   Another party has previously filed a cover sheet stating that C.R.C.P. 16.1 does not apply to this case.

3.   X   This party makes a Jury Demand at this time and pays the requisite fee. See C.R.C.P. 38. (Checking this box is optional.)

RESPECTFULLY submitted this 9th day of February 2026.

Gordon Legal Malpractice PLLC

By:   */s/Paul Gordon*
         Paul Gordon

*NOTICE: This cover sheet must be served on all other parties along with the initial pleading of a complaint, counterclaim, cross-claim, or third party complaint.*

2

| | |
|---|---|
| DISTRICT COURT, DENVER COUNTY<br>STATE OF COLORADO<br>1437 Bannock Street<br>Denver, Colorado 80202<br>(303) 606-2300 | |
| Plaintiff: **DNC AND TCPA LIST SANITIZER, LLC**<br><br>Defendants: **GARY TUCKER**; **GLEGAL, LLC**; **JEFFREY COHEN**; **COHEN, LLC**; **JOSHUA L. THOMAS**; and, **LAW OFFICE OF JOSHUA L. THOMAS PLLC** | ▲ COURT USE ONLY ▲ |
| Paul Gordon #21860<br>Gordon Legal Malpractice PLLC<br>Post Office Box 460395<br>Denver, Colorado 80246<br>720-505-0536<br>paul@legal-mal.com | Case Number:<br><br>Division/Courtroom: |
| **COMPLAINT, JURY DEMAND, AND CERTIFICATE OF REVIEW** | |

Plaintiff, DNC and TCPA List Sanitizer, LLC, through counsel, for its claims against Defendants, alleges as follows:

PARTIES AND VENUE

1. Plaintiff is a limited liability company doing business in the State of Colorado.
2. Defendant Gary Tucker is an attorney practicing law in the State of Colorado.
3. Defendant GLegal, LLC is a law firm doing business in the State of Colorado.
4. Defendant Jeffrey Cohen is an attorney practicing law in the State of Colorado.
5. Defendant Cohen, LLC is a law firm doing business in the State of Colorado.
6. Defendant Joshua L. Thomas is an individual who held himself out as an attorney qualified to be admitted and was admitted *pro hac vice* in the underlying action in the State of Colorado.[1]

---

[1] When Defendant Thomas purported to represent Plaintiff, his license had been suspended in the State of Pennsylvania, and his licenses were subject to imminent

7. Defendant Law Office of Joshua L. Thomas PLLC is a law firm that did business in the State of Colorado at all times pertinent.
8. Venue is proper in the City and County of Denver, State of Colorado, because Defendants maintain offices in Denver or were sponsored for admission *pro hac vice* by Denver counsel.

## VICARIOUS LIABILITY

9. At all times pertinent, Defendant Tucker was acting within the course and scope of his employment with either Defendant GLegal, LLC or Defendant Cohen, LLC, or both. Defendants GLegal, LLC and Cohen, LLC are vicariously liable for the acts and omissions of Defunant Tucker.
10. At all times pertinent, Defendant Cohen was acting within the course and scope of his employment with Defendant Cohen, LLC, which is vicariously liable for the acts and omissions of Defendant Cohen.
11. At all times pertinent, Defendant Thomas was acting within the course and scope of his employment with Defendant Law Office of Joshua L. Thomas PLLC, which is vicariously liable for the acts and omissions of Defendant Thomas.
12. Defendants formed a joint venture for the purpose of representing Plaintiff.
    (a) Defendants agreed to work together on the representation of Plaintiff.
    (b) Defendants agreed to share in the profits and losses of the representation.
    (c) Defendants agreed to shared or allocated control over the course of the representation.
13. Defendants are vicariously liable for the acts and omissions of the other Defendants in the course and scope of the joint venture.

## EVIDENTIARY FACTS

### Underlying Dispute

14. Individuals have long been liable for damage they cause by using computer information without authorization. The possible claims include theft, conversion, fraud, breach of contract, copyright infringement, misappropriate of trade secrets, and violation of the Computer Fraud and Abuse Act of 1986, 18 U. S. C. § 1030(g) (CFAA).

---

reciprocal suspensions in Delaware and New Jersey. After further proceedings, Defendant Thomas was disbarred.

15. The CFAA has provided for private rights of action since 1994, more than 25 years before Defendants promised to represent Plaintiff.[2]
16. In July 2018, Plaintiff began offering information that customers could use to minimize their risk of being sued under the Telephone Consumer Protection Act.
17. In October 2019, certain individuals and their business (collectively hereinafter "Ringba") began developing a competing product.
18. Ringba purchased a subscription to Plaintiff's product.
19. Plaintiff's website used a Github repository that tracked all source code changes made to the website, including the exact dates when any download restrictions were implemented.
20. On January 22, 2020, two of Plaintiff's employees recorded their internal phone call in which they discussed Plaintiff's website. The recording was relevant to Plaintiff's later claims against Ringba.
21. On April 5, 2020, in violation of Ringba's contract with Plaintiff, Ringba intentionally exploited Plaintiff's website and stole proprietary information belonging to Plaintiff.
22. The trade secrets were part of the database ordinarily not accessible to the public without specific expertise and intentional exploitation of the website.

---

[2] The elements of Plaintiff's civil CFAA claim are the following: (1) obtaining or using (2) computer information (3) by intentionally (4) accessing a computer (5) in excess of authority or without authority and (6) causing (7) damage or loss. *Triad Consultants, Inc. v. Wiggins*, 249 F. App'x 38 (10th Cir. 2007). Access to areas of a website was unauthorized when, even though an individual had authority to access some areas of the website, the individual lacked authority to access the other areas. *See Van Buren v. United States*, 141 S. Ct. 1648 (2021); *Moxie Pest Control (Utah) v. Nielsen*, Docket Number 24-4076 (10th Cir., Jan. 21, 2026); Orin S. Kerr, *Cybercrime's Scope: Interpreting "Access" and "Authorization" in Computer Misuse Statutes*, 78 N.Y.U. L. Rev. 1596, 1605–1613 (2003). Unlike a claim for misappropriation of trade secrets, a CFAA claim does **not** require proof that the plaintiff took steps to maintain the secrecy of the computer information or that obtaining access required manipulating or exploiting technological barriers. *See EF Cultural Travel BV v. Explorica, Inc.*, 274 F.3d 577 (1st Cir. 2001); *International Airport Centers, LLC v. Citrin*, 440 F.3d 418 (7th Cir. 2006); *United States v. Nosal*, 676 F.3d 854, 878 (9th Cir. 2012) ("Nosal challenges the [jury] instruction on the basis that the CFAA only criminalizes access where the party circumvents a technological access barrier. Not only is such a requirement missing from the statutory language, but it would make little sense because some § 1030 offenses do not require access to a computer at all.") (footnote omitted).

3

23. When Ringba stole proprietary information from Plaintiff's website, the website did not have a date restriction on downloads.
24. On April 10, 2020, Ringba contacted Plaintiff to discuss purchasing Plaintiff's business.
25. In July 2020, Ringba launched a product competing with Plaintiff under the name "TCPA Shield," which included significant portions of the information in Plaintiff's database.
26. Plaintiff had general and special damages, including by way of illustration and without limitation, lost profits, loss of computer information, loss of trade secrets, lost business opportunities, statutory double or triple damages, punitive damages, and recoverable attorney fees and litigation costs.
27. In addition, Plaintiff had claims against Ringba for disgorgement of profits and injunctive relief.

Tucker Defendants

28. On October 13, 2021, Defendants Tucker, GLegal, LLC, Thomas, and Law Office of Joshua L. Thomas PLLC (collectively hereinafter "the Tucker Defendants") commenced El Paso County District Court Case Number 2021-cv-31668. The Tucker Defendants asserted claims for breach of contract, unjust enrichment, fraud, civil conspiracy, and violation of the Colorado Uniform Trade Secrets Act.
29. At no time did the Tucker Defendants explain to Plaintiff the requirements of disclosures under C.R.C.P. 26 and the consequences of failing to meet those requirements.
30. At no time did the Tucker Defendants talk to Plaintiff about Plaintiff's objectives in the litigation and whether Plaintiff had any concerns about production of its documents and things.
31. The Tucker Defendants embarked on an aggressively narrow interpretation of Plaintiff's discovery obligations, despite the plainly broad obligations of C.R.C.P. 26 in effect since 1993.
32. No later than April 2022, Plaintiff provided the Tucker Defendants with a copy of a January 22, 2020 recording, among other discoverable information, including 14 other recordings.
33. The Tucker Defendants concealed or failed to disclose the recordings and other evidence.
34. On May 18, 2022, the District Court entered a protective order limiting access to certain documents to attorney eyes only (AEO).
35. By June 2022, when Plaintiff's C.R.C.P. 26 disclosures came due, the Tucker Defendants should have already disclosed to Ringba everything the Tucker Defendants trickled to Ringba over the next year.

4

36. Throughout the litigation, Ringba made numerous requests for Plaintiff's computer information as it existed as of April 5, 2020. The Tucker Defendants should have disclosed such information pursuant to C.R.C.P. 26, *i.e.*, without the need for Ringba to request the information.
37. On October 11, 2022, the Tucker Defendants produced an expert report with erroneous opinions resulting from inadequate access and inadequate review of relevant information, such at the Github repository tracking changes to the website. The expert rendered an opinion about the structure of Plaintiff's website as of April 5, 2020. Not having reviewed the Github repository, the expert erroneously concluded that Ringba must have hacked through a date restriction on downloading from Plaintiff's website.[3]
38. On November 17, 2022, Ringba again asked for recordings and transcripts of Plaintiff's internal communications. The Tucker Defendants again ignored Ringba's request.
39. In December 2022, when the Tucker Defendants disclosed information from the Github repository, they disclosed only a small part of the repository, and the small part concerned the wrong day – August 5, 2020 instead of April 5, 2020. The disclosure totaled six lines of code out of hundreds of thousands of lines in the repository.

Tucker and Cohen Defendants

40. In late 2022, Defendant Tucker joined Defendant Cohen, LLC.
41. On December 29, 2022, Defendant Cohen entered his appearance on behalf of Plaintiff in El Paso County District Court Case Number 2021-cv-31668.
42. The Tucker Defendants stayed in the case.
43. On January 19, 2023, the District Court entered an order compelling Plaintiff to produce certain source code.
44. On February 10, 2023, Defendants produced a certain limited amount of source code, knowing that they were producing only a small portion of the existing source code and were failing to comply with the District Court's January 19, 2023 order. Defendants failed to produce the core application

---

[3] The dispute over whether Ringba hacked the website would have been irrelevant to a CFAA claim, which did not require proof that Ringba bypassed technological barriers. The failure to allege the CFAA claim misdirected the lawyers and the District Court to an issue that should not have been dispositive of Plaintiff's case against Ringba. Then, Defendants grossly mismanaged Plaintiff's discovery obligations concerning the minor issue and thereby caused Plaintiff to incur sanctions catastrophic to Plaintiff's claims against Ringba, including the valid CFAA claim that the Tucker Defendants missed in the first place.

5

45. code, the full Github repository history, the database schema, and the complete configurations.
46. In March 2023, Defendants finally produced the January 22, 2020 recording.
47. No later than March 27, 2023, Defendants knew that some of the information they had failed to disclose included documents and things exonerating Plaintiff from asserting frivolous and groundless theories against Ringba, but Defendants continued to withhold the exonerating documents and things. The additional undisclosed documents and things included the 14 more recordings of internal conversations and transcripts of those recordings. At least two of the undisclosed recordings would have provided context for the January 22, 2020 recording, and the context would have been exonerating.
48. On March 31, 2023, Ringba moved for dismissal of Plaintiff's claims as a sanction. Ringba did not yet know about the 14 recordings Defendants were withholding.
49. On April 17, 2023, the District Court began a two-day evidentiary hearing on Ringba's motion for sanctions. During the hearing, Defendants failed to offer the exonerating recordings and transcripts.
50. On April 25, 2023, the District Court excluded Plaintiff's expert testimony as a discovery sanction, holding in part that Defendants were at least "grossly negligent" in failing to produce the January 22, 2020 recording earlier.
51. On May 8, 2023, the District Court entered summary judgment against Plaintiff on all but the claim for violation of the Colorado Uniform Trade Secrets Act.
52. On May 12, 2023, the District Court dismissed Plaintiff's case against Ringba as a final discovery sanction. The order included the following:

> Plaintiff insists that all defendants had to do was ask for access to the back-end of the website using the right language and they would have had access to all of this information. As part of this argument, plaintiff asserts that defendants may have requested things similar to this information but didn't quite use the right words to make clear to plaintiff that that access to the back end is what defendants wanted.
> The court finds that from the beginning of discovery requests, defendants have used broad and all-inclusive terminology to make clear to plaintiff what they were seeking. The court finds that all of the disclosures by plaintiff in the last three weeks should have been turned over in response to the initial requests for production based on those broad requests. More important and much more broadly, plaintiff should have disclosed all of the database that was accessible through the back end of the original website and not just taken a handful of screenshots of that database on the eve of trial.
> . . . .
6

> The court fully understands Mr. O'Hare's grievance with Mr. Young's downloading Mr. O'Hare's significant collection of phone numbers and then using that list as part of a brand new, competing business. Nevertheless, in bringing suit, plaintiff was required by law to timely disclose any relevant evidence in its possession, even if that evidence would help the other side. Here, plaintiff **and its representatives have, until too late, disregarded that law completely**.

(Emphasis added.)

52. On January 12, 2024, the District Court held that Plaintiff's case against Ringba was "wholly bogus" and ordered Plaintiff to pay a $500,000 sanction to Ringba. The District Court's order stated in part the following:

> As my previous orders have made clear, had plaintiff disclosed this evidence in its sole possession at the beginning of the case rather than on the eve of the third trial setting, all parties could have started examining the viability of what plaintiff now insists was its second claim all along – that defendants breached the terms and conditions agreement that Mr. Young had explicitly agreed to.
>     The problem with plaintiff's insistence on this second theory is that **at no time during this litigation did plaintiff's first attorney or second set of attorneys amend the complaint to add this claim**. . . .
>     There was also the concealment until the 11th hour of the Richard Nixon-esque audio-recording of Mr. O'Hare and Mr. Malosev, in which Mr. Malosev explained to Mr. O'Hare how anyone could do what Mr. Young had done (in downloading the list) without doing anything unlawful to manipulate the software security of the list.
>     Because plaintiff deliberately concealed all of this evidence until the eve of the third jury trial setting in this case and because this evidence lay at the heart of the case (and the heart of the never-filed breach of contract claim), the only reasonable sanction was termination of the case.
>     Plaintiff argues that termination alone is a harsh enough sanction and that imposing attorney fees would be too harsh. The court disagrees. Were we talking about a modest number of hours and fees, the argument might be reasonable. But in a case where the defendants' attorneys spent hundreds of hours on the case and plaintiff paid all fees invoiced, I find that paying not all but at least a significant portion of those fees is warranted as an additional sanction **to make clear to**

plaintiff, **plaintiff's counsel**, and the community **that concealing critical evidence invites harsh sanctions.**

. . . .

I reject plaintiff's argument that all defendants had to do to inspect the source code was to look at plaintiff's somehow perfectly re-constructed website on the eve of trial. I found Ms. Cheng very credible when she testified that it was clear to her based on communications and pleadings from **plaintiff's counsel** around this time (and the perfectly re-constructed website) that plaintiff **had much more important source code that it was not disclosing**. She was also credible when she testified that **plaintiff's counsel never answered her questions as to why such critical source code evidence was only coming to light on the eve of trial**.

(Emphasis added.)

### Contempt Citation

53. Plaintiff petitioned for bankruptcy relief in the United States Bankruptcy Court for the District of Colorado, Case No. 24-12624-KHT.
54. On August 28, 2024, Plaintiff filed in the bankruptcy case a motion with certain AEO information that Defendant Cohen had given to Plaintiff in violation of the May 18, 2022 protective order.
55. Plaintiff did not know that its possession of the AEO information violated the May 18, 2022 protective order.
56. Plaintiff did not know that it would be violating the May 18, 2022 protective order by publicly disclosing the AEO information as part of a filing in the bankruptcy action.
57. On September 4, 2024, Plaintiff was held in contempt of court for violating the May 18, 2022 protective order.

### Damages

58. Plaintiff had general and special damages, including by way of illustration and without limitation, the following:
    (a) loss of claims against Ringba;
    (b) attorney fees and costs incurred in response to motions to compel and motions for sanctions;
    (c) attorney fees and costs as sanctions;
    (d) costs as a losing party;
    (e) attorney fees and costs paid for negligent legal services;
    (f) interest as damages;

8

    (g)    attorney fees and costs to mitigate damages, including fees and costs related to bankruptcy;
    (h)    expenses incurred defending against and responding to the contempt citation; and,
    (i)    loss of corporate reputation.

## FIRST CLAIM FOR RELIEF
### (Legal Malpractice)

59.    A reasonably careful attorney, having and using that degree of knowledge and skill of attorneys practicing law in the State of Colorado, would have done the following:

    (a)    Advised Plaintiff to hire an expert to preserve computer information for disclosures and discovery;
    (b)    Explained to Plaintiff all potential consequences of violating disclosure and discovery violations;
    (c)    Gathered all information, documents, recordings, and things that Plaintiff must disclose under C.R.C.P. 26 and related rules;
    (d)    Investigated the causes of Plaintiff's damages;
    (e)    Researched the law concerning potential claims arising from Plaintiff's damages;
    (f)    Explained to Plaintiff the strengths and weaknesses of Plaintiff's claims against Ringba considering the available evidence and the applicable law;
    (g)    Refrained from prosecuting claims and asserting theories and arguments that lack substantial justification considering the available evidence and applicable law;
    (h)    Prosecuted Plaintiff's claims against Ringba for violations of the Computer Fraud and Abuse Act of 1986 and all theories supporting Plaintiff's claims;
    (i)    Advised Plaintiff to hire an expert to help the attorney understand the evidence and to potentially testify about Plaintiff's website, database, and other computer information;
    (j)    Provided all potentially testifying experts with all information that is or might be relevant to the expert's opinions;
    (k)    Complied with the District Court's January 19, 2023 order;
    (l)    Timely disclosed available exonerating evidence in response to motions for sanctions;
    (m)    In the evidentiary hearing, offered available exonerating evidence in response to motions for sanctions;

    (n)    Explained to Plaintiff the strengths and weaknesses of Plaintiff's claims considering developments in the case, such as discovery violations and sanctions;

    (o)    Withdrawn claims, theories, and arguments that lack substantial justification considering evidence newly discovered as the case progressed; and,

    (p)    Complied with protective orders limiting access to information disclosed in the litigation.

60. Defendants were negligent, having failed to meet the standards of care set forth above.

61. Defendants' negligence was a cause of Plaintiff's damages.

FOR THESE REASONS, Plaintiff requests this Court to enter judgment in favor of Plaintiff and against Defendants for actual damages in an amount to be determined at trial and for interest, costs, and attorney fees allowed by law.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

## CERTIFICATE OF REVIEW

The undersigned certifies that Plaintiff, through counsel, pursuant to C.R.S. § 13-20-602, has consulted an expert in the area of the alleged conduct, that the person consulted is competent and qualified to opine as to the conduct alleged, that the expert has reviewed relevant information and the known facts the expert has found to be relevant to the allegations, including relevant documents and other materials, and that, based on the review of those facts, the expert has concluded the filing of the claims against Defendants, set forth in the Complaint, does not lack substantial justification within the meaning of C.R.S. § 13-17-102(4).

RESPECTFULLY submitted this 9th day of February 2026.

                        GORDON LEGAL MALPRACTICE PLLC

                        By: */s/Paul Gordon*
                            Paul Gordon

Plaintiff's Address:
405 Cherry Hills Way
Colorado Springs CO 80921